## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| TRIAD BANK,<br>    a Missouri chartered bank, | )<br>)<br>) | |
| Plaintiff, | )<br>) | Case No. _____ |
| vs. | )<br>) | |
| COLORADO CAPITAL BANK,<br>    A Colorado chartered bank, | )<br>)<br>) | |
| Defendant. | )<br>) | |

### COMPLAINT SEEKING DECLARATORY JUDGMENT
### AND OTHER RELIEF

Plaintiff Triad Bank ("Triad"), for its cause of action seeking declaratory relief against defendant Colorado Capital Bank ("CCB"), states:

### NATURE OF THIS ACTION

1.      Triad is a participant in real estate loans to two different borrowers in which CCB is the lead or agent bank.  Pursuant to 28 U.S.C. § 2201, Triad seeks a declaratory judgment from this Court holding that Triad is entitled, whether by repayment or enforcement of the collateral, to be paid first for its purchase price and accrued interest, and not pro rata, under the terms of the applicable participation agreements.

### THE PARTIES

2.      Plaintiff Triad is a Missouri state chartered bank, in good standing, with its principal place of business located at 10375 Clayton Road, Frontenac, Missouri 63131.  Triad is a citizen of the State of Missouri.

3.      Defendant CCB is a Colorado state chartered bank with its principal place of business located at 7505 Village Square Drive, #101, Castle Rock, Colorado 80108, and having as its Registered Agent for Service of Process, Donna L. Vance, at the same address.  CCB is a citizen of the State of Colorado.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 based on diversity of citizenship of the parties, because Triad is a citizen of the State of Missouri and CCB is a citizen of the State of Colorado and because the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.      Venue is proper in this Court pursuant to a forum selection clause in the subject agreements and pursuant to 28 U.S.C. §§ 1391(a)(3) and 1391(c).

## COUNT I
## (Maxwell Place Participation)

6.      Triad realleges and incorporates herein by reference the allegations of paragraphs 1 through 5 hereof as if fully set forth in this Count I.

7.      On or about October 17, 2008, Triad and CCB entered into a Participation Agreement, a true and correct copy of which is attached hereto as Exhibit 1, under which Triad agreed to purchase a $2,000,000 participating interest in a $2,700,000 million loan from CCB to Chanin-Maxwell, LLC for a residential development in Longmont, Colorado ("Chanin-Maxwell Participation Agreement").

8.      Only $1,855,000 of the loan was ever funded, with Triad funding a $1,150,000 share.

9.      Exhibit A to the Chanin-Maxwell Participation Agreement was a form which contained a provision called "Method of Advances and Repayments" and provided three

alternatives for the participant's purchase and repayment on a "Pro Rata," "LIFO" or "FIFO"

basis, with a blank space for selecting one of these alternatives.  In the case of the Chanin-

Maxwell Participation Agreement, the "LIFO" provision was checked.  It provided as follows:

> LIFO.  Participant shall be required to pay the purchase price for the
> Participation only after Seller has advanced all of Seller's share of the
> principal of the Loan.  Repayments of the Loan (by repayment or by
> enforcement of collateral) shall be first paid to Participant until all of
> Participant's purchase price, and accrued interest, and repayment of
> contributions to fees and expenses have been paid in full, whereupon
> Participant will have no further interest in the Loan.

10.     Sometime before March 31, 2010, Chanin-Maxwell, the original borrower under

the loan transferred its interest in the residential development to Maxwell Place, LLC, which

assumed the loan obligations and undertook to complete the residential development.

11.     As part of the transfer, Maxwell Place, LLC requested additional loan amounts of

$1,245,000 in order to complete the residential development.

12.     CCB agreed to extend such additional loan amounts and to subordinate those new

loan amounts to the original $1,855,000 loan, providing Triad would agree to convert its LIFO

status to a pro rata status.

13.     Triad agreed to convert its LIFO status to a pro rata status conditioned on CCB's

agreement to fund the additional $1,245,000 loan to complete the residential development and

conditioned on that loan being subordinate to the original loan.

14.     On or about March 31, 2010, in reliance on and based on CCB's agreement to

extend the additional loan, Triad and CCB entered into a new participation agreement ("Maxwell

Participation Agreement"), a true and correct copy of which is attached hereto as Exhibit 2.

15.     The Maxwell Participation Agreement specifically referenced CCB's agreement to fund the additional $1,245,000 loan to Maxwell Place, LLC and that such loan would be subordinate.

16.     Like the Chanin-Maxwell Participation Agreement, Exhibit A to the Maxwell Participation Agreement was a form which contained a provision called "Method of Advances and Repayments" and provided three alternatives for the participant's purchase and repayment on a "Pro Rata," "LIFO" or "FIFO" basis, with a blank space for selecting one of these alternatives. In the case of the Maxwell Participation Agreement, however, the "Pro Rata" provision was checked. It provided as follows:

> Pro Rata. Participant shall make payments pro rata with Seller's advances of principal on the Loan. Payments on the Loan (including accrued interest, and repayment of contributions to fees and expenses) shall be distributed pro rata between Seller and Participant.

17.     CCB's agreement to fund the additional $1,245,000 loan to Maxwell Place, LLC formed the only consideration for Triad's agreement to alter and modify the repayment provisions under the original Chanin-Maxwell Participation Agreement, and Triad entered into the modified Maxwell Participation Agreement in reliance on CCB's agreement to extend that loan.

18.     On February 23, 2011, CCB told Maxwell Place, LLC and Triad that it would not fund the $1,245,000 million loan.

19.     Based on the failure of consideration resulting from CCB's refusal to fund the $1,245,000 million loan needed to complete the residential development, Triad demanded that CCB acknowledge that Triad's repayment rights under the participation arrangement are on a LIFO and not pro rata basis and that the Maxwell Participation Agreement is void, but CCB has refused such demand and has said that it intends to allocate repayment on a pro rata basis.

4

20.     Additionally, Triad has requested that approximately $250,000 in funds held in escrow by CCB for satisfaction of the loan be paid to it, but CCB has failed and refused such payment.

21.     CCB has not provided any notice to Triad that the loan underlying the Maxwell Participation Agreement is in default, and upon information and belief, the loan is not in default.

22.     An actual controversy exists by and between Triad and CCB as to the parties' respective rights under the Chanin-Maxwell Participation Agreement and the Maxwell Participation Agreement.

WHEREFORE, plaintiff Triad Bank prays that this Court enter an Order and Judgment as follows:

A.     Declaring that Triad Bank is entitled to repayment of its participation interest, including principal, interest and any contribution to fees and/or expenses, whether by repayment or by enforcement of collateral, in full before any repayment to Colorado Capital Bank.

B.     Ordering the immediate disbursement to Triad Bank of all funds held in escrow for satisfaction of the loan underlying the participation.

C.     For its costs incurred herein, including attorney's fees.

D.     For such other and further relief as the Court deems proper in the premises.

## COUNT II
## (Right Sky Participation)

23.    Triad realleges and incorporates herein by reference the allegations of paragraphs 1 through 5 hereof as if fully set forth in this Count II.

24.    On or about September 29, 2008, Triad and CCB entered into a Participation Agreement, a true and correct copy of which is attached hereto as Exhibit 3, under which Triad agreed to purchase a $783,328.00 participating interest in a loan totaling $1,293,186.00 from CCB to Right Sky Properties, LLC for a retail development ("First Right Sky Participation Agreement").

25.    On or about October 2, 2008, Triad and CCB entered into a second Participation Agreement, a true and correct copy of which is attached hereto as Exhibit 4, under which Triad agreed to purchase a $1,216,672.00 participating interest in a second loan totaling $2,008,588.00 from CCB to Right Sky Properties, LLC for the same retail development  ("Second Right Sky Participation Agreement").

26.    Both the First and Second Right Sky Participation Agreements included an Exhibit A, which was a form which contained a provision called "Method of Advances and Repayments" and provided three alternatives for the participant's purchase and repayment on a "Pro Rata," "LIFO" or "FIFO" basis with a blank space for selecting one of those alternatives. In the case of the both the First and Second Right Sky Participation Agreements, the "LIFO" provision was checked.  It provided as follows:

> LIFO.  Participant shall be required to pay the purchase price for the Participation only after Seller has advanced all of Seller's share of the principal of the Loan.  Repayments of the Loan (by repayment or *by enforcement of collateral*) shall be first paid to Participant until all of Participant's purchase price, and accrued interest, and repayment of contributions to fees and expenses have been paid in full, whereupon Participant will have no further interest in the Loan. [Emphasis added.]

27.     Paragraph 3 of the both the First and Second Right Sky Participation Agreements

provided:

> Except as provided in paragraph 8, any payments made on the Loan, and
> any proceeds of any Collateral for the Loan shall be  ... divided between
> Sellers and Participants as set out in <u>Exhibit A</u>.

28.     Paragraph 8 of both the First and Second Right Sky Participation Agreements

provided:

> Notwithstanding any other provision herein to the contrary, if the Seller
> receives a payment after default of the Loans, and whether pursuant to a
> demand for payment or as a result of a legal proceeding against the
> Borrower(s) or through payment by or action against any other person in
> any way liable on account of the indebtedness evidenced by such Loans,
> or from realization upon any security for the Loans, or from any source
> whatever, such payment shall be applied in the following order:
>
> > (a)   To the costs and expenses, including attorney's fees,
> > incurred in effecting such recovery or in enforcing any
> > right or remedy under the Loan Documents or in realizing
> > upon any security for the Loans;
> >
> > (b)   To accrued interest payable of which an amount represents
> > its pro rata share at the time of default shall be paid to the
> > Participant; and
> >
> > (c)   To the unpaid principal amount of the Loans, of which an
> > amount representing its pro rata share at the time of default
> > shall be paid to the Participant.

29.     The Right Sky loans are in default.

30.     Both the First and Second Right Sky Participation Agreements contain conflicting

and ambiguous provisions regarding the rights of Triad to repayment as a participant after

default.  While paragraph 8 of the agreements would appear to result in a pro rata distribution of

repayments whether obtained through legal proceedings or an action on collateral, the more

specific Exhibit A, by stating that repayment is to be on a LIFO basis whether by repayment or

enforcement of collateral would require repayment to the participant on a LIFO basis because absent a default there would be no need to secure repayment through enforcement of collateral.

31.     Triad believed that Exhibit A, which was specific as to the loan participation terms, would override any contrary provisions in the body of the document.

32.     Both the First and Second Right Sky Participation Agreements were form agreements prepared by CCB and as such any ambiguities must be construed against it.

33.     Further, it was always understood by and between Triad and CCB, at least prior to this dispute, that Triad was in a LIFO position regardless of whether the loans were repaid or were in default.

34.     Triad has demanded that CCB acknowledge that Triad's repayment rights under the participation arrangement are on a LIFO and not pro rata basis, but CCB has refused such demand and has said that it intends to allocate repayment on a pro rata basis.

35.     An actual controversy exists by and between Triad and CCB as to the parties' respective rights under the First and Second Right Sky Participation Agreements.

WHEREFORE, plaintiff Triad Bank prays that this Court enter an Order and Judgment as follows:

A.      Declaring that Triad Bank is entitled to repayment of its participation interest, including principal, interest and any contribution to fees and/or expenses, whether by repayment or by enforcement of collateral, in full before any repayment to Colorado Capital Bank.

B.      For its costs incurred herein, including attorney's fees.

C.      For such other and further relief as the Court deems proper in the premises.

8

Dated:  May 6, 2011

By: *s/ Geraldine A. Brimmer*
Geraldine A. Brimmer
HOLLAND & HART, LLP
1800 Broadway, Suite 300
Boulder, Colorado  80302
Telephone: 303/473-2733
Facsimile: 303/473-2720
E-mail: gbrimmer@hollandhart.com


Joseph E. Martineau
LEWIS, RICE & FINGERSH, L.C.
600 Washington, Suite 2600
St. Louis, Missouri  63101
Telephone:  314/444-7729
Facsimile:  314/612-7729
E-mail: jmartineau@lewisrice.com

*Application for Admission Pending*

ATTORNEYS FOR PLAINTIFF
TRIAD BANK

5102015_1.DOCX