## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil No. 11-cv-01220-MSK-BNB

TRIAD BANK,
A Missouri chartered bank

      Plaintiff,

vs.

FIRST-CITIZENS BANK & TRUST COMPANY,
a North Carolina chartered commercial bank,

      Defendant.

## FIRST AMENDED COMPLAINT FOR
## DECLARATORY JUDGMENT, SPECIFIC PERFORMANCE AND MONEY DAMAGES

      Plaintiff Triad Bank ("Triad"), for its cause of action seeking declaratory relief, specific performance and money damages against defendant First-Citizens Bank & Trust Company ("Citizens"), as successor in interest to Colorado Capital Bank ("CCB"), states:

### NATURE OF THIS ACTION

      1.      Triad is a participant in real estate loans to two different borrowers in which CCB was the lead or agent bank, and of which Citizens assumed all rights, title, liabilities and obligations by virtue of an agreement with the Federal Deposit Insurance Corporation ("FDIC"). In Counts I and II, brought pursuant to 28 U.S.C. § 2201, Triad seeks a declaratory judgment from this Court holding that Triad is entitled, whether by repayment or enforcement of the collateral, to be paid first for its purchase price and accrued interest, and not pro rata, under the terms of the applicable participation agreements. In Count III, Triad seeks specific performance of CCB's and, by virtue of the agreement with the FDIC, Citizen's commitment to fund a

1699332.8

subordinated loan to the borrower which commitment served as consideration for the modification of Triad's repayment arrangement under a participation agreement with defendant. In Count IV, as an alternative to Count III, Triad seeks money damages for breach of contract for the failure to honor the commitment to fund a subordinated loan.

## THE PARTIES

2.      Plaintiff Triad Bank ("Triad") is a Missouri state chartered bank, in good standing, with its principal place of business located at 10375 Clayton Road, Frontenac, Missouri 63131. Triad is a citizen of the State of Missouri.

3.      At all times relevant prior to July 8, 2011, Colorado Capital Bank ("CCB") was a Colorado state chartered bank with its principal place of business located at 7505 Village Square Drive, #101, Castle Rock, Colorado 80108. CCB is a citizen of the State of Colorado.

4.      On July 8, 2011, Colorado Capital Bank was closed by the Colorado Division of Banking, which appointed the Federal Deposit Insurance Corporation ("FDIC") as receiver. Immediately thereafter, First Citizens Bank ("Citizens"), a North Carolina-chartered commercial bank, acquired most of the assets and assumed most of the liabilities of Colorado Capital Bank pursuant to a "Purchase and Assumption Agreement" (the "Assumption Agreement") between Citizens and the FDIC in its corporate capacity and as receiver for CCB. The assets purchased by Citizens include the loans which are the subject of this proceeding and all asset-based litigation and proceedings relating thereto. As a consequence, Citizens is the successor-in-interest to CCB and is the real party in interest in this proceeding in the place and stead of CCB. Further Citizens has assumed all right, title and liabilities related to the loans and participation agreements which are at issue in this litigation.

5.  Citizens is a North Carolina state chartered commercial bank, having its principal place of business in Raleigh, North Carolina, and is a citizen of the State of North Carolina.

6.  On August 30, 2011, this Court entered its Order substituting Citizens as defendant in place of CCB in this action (Doc. 19-1).

## JURISDICTION AND VENUE

7.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 based on diversity of citizenship of the parties. Triad is a citizen of the State of Missouri, CCB was a citizen of the State of Colorado, and Citizens is a citizen of the State of North Carolina. Further, the amount in controversy exceeds $75,000, exclusive of interest and costs, in that the value of Triad's interest in the loans and participations at issue well exceed $75,000 and accordingly the right or viability of the legal claim to be declared is in excess of $75,000.

8.  Venue is proper in this Court pursuant to a forum selection clause in the subject agreements and pursuant to 28 U.S.C. §§ 1391(a)(3) and 1391(c).

## COUNT I
### (Declaratory Judgment -- Maxwell Place Participation)

For Count I of its First Amended Complaint, Triad states:

9.  Triad realleges and incorporates herein by reference the allegations of paragraphs 1 through 8 hereof as if fully set forth in this Count I.

10.  On or about October 17, 2008, Triad and CCB entered into a Participation Agreement, a true and correct copy of which is attached hereto as Exhibit 1, under which Triad agreed to purchase a $2,000,000 participating interest in a $2,700,000 million loan from CCB to Chanin-Maxwell, LLC for a residential development in Longmont, Colorado ("Chanin-Maxwell Participation Agreement").

11.     Only $1,855,000 of the loan was ever funded, with Triad funding a $1,150,000 share.

12.     Exhibit A to the Chanin-Maxwell Participation Agreement was a form which contained a provision called "Method of Advances and Repayments" and provided three alternatives for the participant's purchase and repayment on a "Pro Rata," "LIFO" or "FIFO" basis, with a blank space for selecting one of these alternatives.   In the case of the Chanin-Maxwell Participation Agreement, the "LIFO" provision was checked.  It provided as follows:

> LIFO.  Participant shall be required to pay the purchase price for the Participation only after Seller has advanced all of Seller's share of the principal of the Loan.  Repayments of the Loan (by repayment or by enforcement of collateral) shall be first paid to Participant until all of Participant's purchase price, and accrued interest, and repayment of contributions to fees and expenses have been paid in full, whereupon Participant will have no further interest in the Loan.

13.     Sometime before March 31, 2010, Chanin-Maxwell, the original borrower under the loan, transferred its interest in the residential development to Maxwell Place, LLC, which assumed the loan obligations and undertook to complete the residential development.

14.     As part of the transfer, Maxwell Place, LLC requested additional loan amounts of $1,245,000 in order to complete the residential development.

15.     CCB agreed to extend such additional loan amounts and to subordinate those new loan amounts to the original $1,855,000 loan, providing Triad would agree to convert its LIFO status under the participation arrangement to a pro rata status.

16.     Triad agreed to convert its LIFO status to a pro rata status conditioned on CCB's agreement to fund the additional $1,245,000 loan to complete the residential development and conditioned on that loan being subordinate to the original loan.

4

17.     On or about March 31, 2010, in reliance on and based on CCB's agreement to extend the additional subordinated loan ("Subordinated Loan"), Triad and CCB entered into a new participation agreement ("Maxwell Participation Agreement"), a true and correct copy of which is attached hereto as Exhibit 2.

18.     The Maxwell Participation Agreement specifically referenced CCB's agreement to fund the additional $1,245,000 Subordinated Loan to Maxwell Place, LLC and that such loan would be subordinate.

19.     Like the Chanin-Maxwell Participation Agreement, Exhibit A to the Maxwell Participation Agreement was a form which contained a provision called "Method of Advances and Repayments" and provided three alternatives for the participant's purchase and repayment on a "Pro Rata," "LIFO" or "FIFO" basis, with a blank space for selecting one of these alternatives.   In the case of the Maxwell Participation Agreement, however, the "Pro Rata" provision was checked.  It provided as follows:

> Pro Rata.  Participant shall make payments pro rata with Seller's advances of principal on the Loan.  Payments on the Loan (including accrued interest, and repayment of contributions to fees and expenses) shall be distributed pro rata between Seller and Participant.

20.     CCB's agreement to fund the additional $1,245,000 Subordinated Loan to Maxwell Place, LLC formed the only consideration for Triad's agreement to alter and modify the repayment provisions under the original Chanin-Maxwell Participation Agreement, and Triad entered into the modified Maxwell Participation Agreement in reliance on CCB's agreement to extend that Subordinated Loan.

21.     On February 23, 2011, CCB told Maxwell Place, LLC and Triad that it would not fund the $1,245,000 Subordinated Loan.

22.     As of August 31, 2011, neither CCB nor Citizens have funded the $1,245,000 Subordinated Loan.

23.     Based on the failure of consideration resulting from CCB and Citizen's failure to fund the $1,245,000 Subordinated Loan needed to complete the residential development, Triad demanded that CCB acknowledge that Triad's repayment rights under the participation arrangement are on a LIFO and not pro rata basis and that the Maxwell Participation Agreement is void, but CCB has refused such demand and has said it intends to allocate repayment on a pro rata basis. Upon information and belief, Citizens intends to do the same.

24.     Additionally, Triad has requested that approximately $250,000 in funds received on behalf of the borrower for satisfaction of the loan be paid to it based on the LIFO arrangement, but CCB and Citizens have failed and refused such payment. Upon information and belief, such funds are currently being maintained in an escrow account.

25.     Neither CCB nor Citizens have provided any notice to Triad that the loan underlying the Maxwell Participation Agreement is in default, and upon information an belief, the loan is not in default.

26.     An actual controversy exists by and between Triad and CCB and Citizens as to the parties' respective rights under the Chanin-Maxwell Participation Agreement and the Maxwell Participation Agreement.

WHEREFORE, plaintiff Triad Bank prays that this Court enter an Order and Judgment against defendant First-Citizens Bank & Trust Company as follows:

A.     Declaring that Triad Bank is entitled to repayment of its participation interest, including principal, interest and any contribution to fees and/or expenses,

whether by repayment or by enforcement of collateral, in full before any repayment to First-Citizens Bank & Trust Company.

     B.    Ordering the immediate disbursement to Triad Bank of all funds held in escrow for satisfaction of the loan underlying the participation.

     C.    For its costs incurred herein, including attorney's fees.

     D.    For such other and further relief as the Court deems proper in the premises.

## COUNT II
### (Declaratory Judgment -- Right Sky Participation)

For Count II of its First Amended Complaint, Triad states:

27.    Triad realleges and incorporates herein by reference the allegations of paragraphs 1 through 8 hereof as if fully set forth in this Count II.

28.    On or about September 29, 2008, Triad and CCB entered into a Participation Agreement, a true and correct copy of which is attached hereto as Exhibit 3, under which Triad agreed to purchase a $783,328.00 participating interest in a loan totaling $1,293,186.00 from CCB to Right Sky Properties, LLC for a retail development ("First Right Sky Participation Agreement").

29.    On or about October 2, 2008, Triad and CCB entered into a second Participation Agreement, a true and correct copy of which is attached hereto as Exhibit 4, under which Triad agreed to purchase a $1,216,672.00 participating interest in a second loan totaling $2,008,588.00 from CCB to Right Sky Properties, LLC for the same retail development ("Second Right Sky Participation Agreement").

30.    Both the First and Second Right Sky Participation Agreements included an Exhibit A, which was a form which contained a provision called "Method of Advances and

Repayments" and provided three alternatives for the participant's purchase and repayment on a "Pro Rata," "LIFO" or "FIFO" basis with a blank space for selecting one of those alternatives. In the case of the both the First and Second Right Sky Participation Agreements, the "LIFO" provision was checked. It provided as follows:

> LIFO. Participant shall be required to pay the purchase price for the Participation only after Seller has advanced all of Seller's share of the principal of the Loan. Repayments of the Loan (by repayment or *by enforcement of collateral*) shall be first paid to Participant until all of Participant's purchase price, and accrued interest, and repayment of contributions to fees and expenses have been paid in full, whereupon Participant will have no further interest in the Loan. [Emphasis added.]

31.     Paragraph 3 of the both the First and Second Right Sky Participation Agreements provided:

> Except as provided in paragraph 8, any payments made on the Loan, and any proceeds of any Collateral for the Loan shall be … divided between Sellers and Participants as set out in Exhibit A.

32.     Paragraph 8 of both the First and Second Right Sky Participation Agreements provided:

> Notwithstanding any other provision herein to the contrary, if the Seller receives a payment after default of the Loans, and whether pursuant to a demand for payment or as a result of a legal proceeding against the Borrower(s) or through payment by or action against any other person in any way liable on account of the indebtedness evidenced by such Loans, or from realization upon any security for the Loans, or from any source whatever, such payment shall be applied in the following order:
>
> (a)     To the costs and expenses, including attorney's fees, incurred in effecting such recovery or in enforcing any right or remedy under the Loan Documents or in realizing upon any security for the Loans;
>
> (b)     To accrued interest payable of which an amount represents its pro rata share at the time of default shall be paid to the Participant; and

   (c) To the unpaid principal amount of the Loans, of which an amount representing its pro rata share at the time of default shall be paid to the Participant.

33. The Right Sky loans are in default.

34. Both the First and Second Right Sky Participation Agreements contain conflicting and ambiguous provisions regarding the rights of Triad to repayment as a participant after default. While paragraph 8 of the agreements would appear to result in a pro rata distribution of repayments whether obtained through legal proceedings or an action on collateral, the more specific Exhibit A, by stating that repayment is to be on a LIFO basis whether by repayment or enforcement of collateral would require repayment to the participant on a LIFO basis because absent a default there would be no need to secure repayment through enforcement of collateral.

35. Triad believed that Exhibit A, which was specific as to the loan participation terms, would override any contrary provisions in the body of the document.

36. Both the First and Second Right Sky Participation Agreements were form agreements prepared by CCB and as such any ambiguities must be construed against it, and by virtue of the Assumption Agreement, against Citizens as well.

37. Further, it was always understood by and between Triad and CCB, at least prior to this dispute, that Triad was in a LIFO position regardless of whether the loans were repaid or were in default.

38. Triad has demanded that CCB acknowledge that Triad's repayment rights under the participation arrangement are on a LIFO and not pro rata basis, but CCB has refused such demand and has said that it intends to allocate repayment on a pro rata basis. Upon information and belief, Citizen's intends to do the same.

39.     An actual controversy exists by and between Triad and CCB and Citizens to the parties' respective rights under the First and Second Right Sky Participation Agreements.

WHEREFORE, plaintiff Triad Bank prays that this Court enter an Order and Judgment against defendant First-Citizens Bank & Trust Company as follows:

A.     Declaring that Triad Bank is entitled to repayment of its participation interest, including principal, interest and any contribution to fees and/or expenses, whether by repayment or by enforcement of collateral, in full before any repayment to First-Citizens Bank & Trust Company.

B.     For its costs incurred herein, including attorney's fees.

C.     For such other and further relief as the Court deems proper in the premises.

## COUNT III
### (Specific Performance -- Maxwell Place Participation)

For Count III of its First Amended Complaint, Triad states:

40.     Triad realleges and incorporates herein by reference the allegations of paragraphs 1 through 5 and 10 through 25 hereof as if fully set forth in this Count III.

41.     CCB entered into a contractual arrangement with Triad wherein in exchange for Triad's modification of the Maxwell Place Participation arrangement from a LIFO to a pro rata pay-back arrangement, CCB would fund the $1,245,000 Subordinated Loan to the borrower.

42.     By virtue of the Assumption Agreement, Citizens assumed all obligations and commitments of CCB to fund the Subordinated Loan referenced in the Maxwell Place Participation.

43.     Specifically, Section 2.1 of the Assumption Agreement provides:

**2.1.**   **Liabilities Assumed by Assuming Institution**. The Assuming Institution [Citizens] expressly assumes at Book Value (subject to adjustment pursuant to Article VIII) and agrees to pay, perform and discharge, all of the following liabilities of the Failed Bank [CCB] as of the Bank Closing Date, except as otherwise provided in this Agreement (such liabilities referred to as "**Liabilities Assumed**"):  . . .

(j)   liabilities, if any, for Commitments.

44.   Section 1.3 of the Assumption Agreement provides:

"**Commitment**" means the unfunded portion of a line of credit or other commitment reflected on the books and records of [CCB] to make an extension of credit (or additional advances with respect to a Loan) that was legally binding on [CCB] as of the Bank Closing Date, other than extensions of credit pursuant to the credit card business and overdraft protection plans of [CCB], if any.

45.   CCB failed and refused to fund the Subordinated Loan, and Citizens continues to fail to fund the Subordinated Loan despite its assumption of the obligation to do so under the Assumption Agreement.

46.   Citizens has breached the Maxwell Participation Agreement by failing to fund the Subordinated Loan.

47.   Triad is being damaged by Citizens' failure to fund the Subordinated Loan because such failure is hindering the completion of the development project underlying the loans and participation and thereby preventing repayment of the loans and the repayment of Triad's interest as participant in the loans under the Maxwell Participation Agreement.

48.   The amount of such damages incurred by Triad are and will likely be uncertain and extremely difficult to compute. Accordingly, Triad has no adequate remedy at law.

49.   Enforcement of the commitment to fund the Subordinated Loan would not be impractical or difficult, and funding the Subordinated Loan requires no special expertise or judgment.

50.     Any order requiring Citizens to fund the Subordinated Loan would not require the Court's continued monitoring or supervision.

51.     Accordingly, Triad is entitled to an order of specific performance enforcing Citizen's assumption of liability under the commitment to fund the Subordinated Loan.

WHEREFORE, plaintiff Triad Bank prays that this Court enter an Order and Judgment against defendant First-Citizens Bank & Trust Company as follows:

A.     Ordering defendant First-Citizens Bank & Trust Company to specifically perform under the commitment to fund the subordinated loan.

B.     Ordering the immediate disbursement to Triad Bank of all funds held in escrow for satisfaction of the loan underlying the participation.

C.     For its costs incurred herein, including attorney's fees.

D.     For such other and further relief as the Court deems proper in the premises.

## COUNT IV
### (Money Damages for Breach of Contract -- Maxwell Place Participation)

For Count IV of its First Amended Complaint, and alternatively to Count III hereof, Triad states:

52.     Triad realleges and incorporates herein by reference the allegations of paragraphs 1 through 5, 10 through 25, and 41 through 47 hereof as if fully set forth in this Count IV.

53.     To the extent this Court denies an order of specific performance and to the extent Triad suffers monetary loss as a result of the failure to fund the Subordinated Loan, Triad is entitled to recover money damages from First-Citizens Bank & Trust Company for the losses incurred.

WHEREFORE, plaintiff Triad Bank prays for judgment against defendant First-Citizens Bank & Trust Company for all losses incurred as a result of Citizens' failure to fund the Subordinated Loan in an amount to be determined at trial, for its costs incurred herein, including attorney's fees, and for such other and further relief as the Court deems proper in the premises.

By: _____
    Joseph E. Martineau
    LEWIS, RICE & FINGERSH, L.C.
    600 Washington, Suite 2500
    St. Louis, Missouri 63101
    Telephone: 314/444-7729
    Facsimile: 314/612-7729
    E-mail: jmartineau@lewisrice.com

Geraldine A. Brimmer
HOLLAND & HART, LLP
One Boulder Plaza
1800 Broadway, Suite 300
Boulder, Colorado 80302
Telephone: 303/473-2733
Facsimile: 303/473-2720
E-mail: gbrimmer@hollandhart.com

ATTORNEYS FOR PLAINTIFF
TRIAD BANK

# EXHIBIT 1

11068-5

## PARTICIPATION AGREEMENT

THIS PARTICIPATION AGREEMENT (this "Agreement") made as of October 17, 2008 Between Colorado Capital Bank having its principal offices at 7505 Village Square Dr., Castle Rock, CO 80108 ("Seller") and Triad Bank ("Participant"). Seller has or intends to make a loan to Chanin-Maxwell, LLC. ("Borrower") as described in Exhibit A hereto (the "Loan"). A copy of the promissory notes, guaranties, security agreements and other documents evidencing or securing the Loan (the "Loan Documents") have been delivered to the Participant. Subject to the terms and conditions of this Agreement, Seller and Participant agree as follows with respect to the sale of an interest in the Loan by Seller to Participant.

1.     Seller hereby sells and Participant hereby purchases an undivided interest in the Loan (the "Participation"). Participant shall pay to Seller the purchase price for the Participation as set out in Exhibit A. The purchase price shall be paid in cash or by wire transfer of funds to the Seller no later than the next business day after the Seller requests payment therefor. If the Loan is a line of credit or will otherwise be disbursed in multiple advances, Participant shall be required to make advances as required from time-to-time by Seller up to aggregate of Participant's purchase price at any time. Earnings on the Participation shall not accrue until payment for the Participation has been received by Seller in collected funds.

2.     Seller's sale of the Participation is without recourse and without any warranties or representations expressed or implied except as specifically set forth in this Agreement. Participant represents that it has examined each of the Loan Documents and has made an independent review and judgement concerning the Loan, including the credit risk involved therein and the adequacy of the security therefor. Seller shall not be responsible to the Participant, with respect to any recitals, statements, covenants, warranties or representations contained in the Loan Documents or any financial statement or data furnished by the Borrower nor shall the Seller be required to inquire as to the truth or accuracy of any such items. The Seller shall not be responsible to the Participant for any fraud or misrepresentation on the part of the Borrower or its agent regarding the execution, genuineness, validity, enforceability, or effectiveness of the Loan Documents. Notwithstanding any of the foregoing, in the event the Loan is in default, the Seller shall provide the Participant prior notice of any scheduled meeting with the borrower, and provide the Participant a reasonable opportunity to attend and participate in such meeting.

3.     Except as provided in paragraph 8, any payments made on the Loan, and any proceeds of any collateral for the Loan shall be applied in the order identified in the Loan Documents and divided between Seller and Participant as set out in Exhibit A.   If, at any time, repayment of the loan, as determined in the Sellers reasonable opinion is impaired, or if, at the time the last expected payment from the Borrower is received, there are not sufficient funds to repay Participant's interest in full, all payments shall be first applied to advances of principal, then to accrued interest, and then to repayment of advances made to pay fees and expenses, and Participant shall have no claim against Seller for any remaining balance. Seller shall receive all payments of principal, interest, default penalties, collateral proceeds, and other amounts payable on the Loan. Seller shall, within five (5) business days after receipt, report and remit to the Participant its share of such payments. Participant shall apply payments as instructed by the Seller as of the effective date the payment was received by the Borrower.

4.     Seller shall hold in its name and have title to and retain possession or control of, the Loan Documents and all other security documents, papers and other items provided for or required under the Loan Documents. Seller shall maintain records reflecting the Participation, any advances made to the Borrower, and all payments received on the Loan and disposition thereof. With reasonable advance notice, Participant and the examining regulatory authority of Participant or Seller shall have the right during the normal business hours of Seller to inspect Seller's books, records and documents relating to the Loan. Seller will provide Participant with copies of all records, and any and all documents including insurance policies which evidence, secure or support the Loan.

5.     Seller shall be entitled to rely on any document or statement believed by it to be genuine and correct. Neither the Seller nor any of its officers, directors, agents, representatives or employees shall be liable for any action or omission in connection with this Agreement or the Loan Documents except for its gross negligence or willful misconduct. Seller shall be entitled to the advice and assistance of legal counsel and to rely on any opinions of counsel with respect to the Loan Documents, this Agreement, and all matters incident thereto. Seller shall not be liable for any action taken or omitted in good faith in reliance on such legal opinions. Errors in judgment shall not be considered gross negligence or willful misconduct for purposes of this Agreement.

6.     Seller may, with notice to, but without any necessity of securing the consent of, Participant: (a) declare a default, accelerate the maturity of the Loan, and demand payment of the Loan; (b) institute legal

EXHIBIT 1

proceedings to enforce the Loan; (c) compromise and accept any condemnation or casualty, award relating to any collateral; (d) foreclose upon the collateral securing the Loan; and (e) accept additional collateral; (f) release any existing collateral for the Loan. Either Seller or Participant may purchase the collateral at any foreclosure sale, and the proceeds of such purchase shall be distributed between Purchaser and Seller as set out herein. Seller and Participant agree that, in any dealings or negotiations between Seller and parties other than Participant, Seller shall be considered to be the sole owner and holder of the Loan, and such other parties may look to Seller as the sole owner and holder thereof without inquiry as to whether Participant has concurred in such dealings or negotiations. .

7.       If the Loan is declared in default and payment is accelerated as a result thereof, Seller at its option, but without any obligation to do so, may repurchase Participant's share of the balance of principal and accrued interest then owing on such Loan.

8.       Notwithstanding any other provision herein to the contrary, if the Seller receives a payment after default of the Loans, and whether pursuant to a demand for payment or as a result of a legal proceeding against the Borrower(s) or through payment by or action against any other person in any way liable on account of the indebtedness evidenced by such Loans, or from realization upon any security for the Loans, or from any source whatever, such payment shall be applied in the following order:

(a)      To the costs and expenses, including attorney's fees, incurred in effecting such recovery or in enforcing any right or remedy under the Loan Documents or in realizing upon any security for the Loans;

(b)      To accrued interest payable of which an amount represents its pro rata share at the time of default shall be paid to the Participant; and

(c)      To the unpaid principal amount of the Loans, of which an amount representing its pro rata share at the time of default shall be paid to the Participant.

Notwithstanding all foregoing provisions, it is expressly understood and agreed that any losses sustained with respect to the Loans shall be borne by the Participant in accordance with its pro rata share at the time of maturity or default.

9.       Participant shall reimburse Seller for Participant's share of all expenses incurred by Seller (including without limitation attorney fees and liabilities to third parties) in the enforcement and administration of the Loan and this Agreement, and for all payments or advances made by Seller pursuant to the terms of any Loan Documents for the purpose of protecting the security of the Loan within thirty (30) days after request by Seller. The amount of reimbursement required from Participant shall be equal to the percentage of Participant's interest in the principal amount of the Loan at the time such expense is incurred. If the Loan is declared in default, the amount of reimbursement from the Participant shall be equal to the percentage of Participant's interest in the principal amount of the Loan at the time the default is declared, and such percentage shall not reduce if any amounts are recovered on the loan.

10.      If Participant receives payment on the Loan from any source in greater amount than provided in Exhibit A, Participant shall pay to the Seller such sums as shall be necessary to cause such payment to be divided between Seller and Participant in accordance with their rights under Exhibit A. Participant subordinates any other claims it may have against Seller or Seller's property to the Loan until the Loan is paid in full.

11.      Nothing herein shall constitute either party the agent for the other, nor render the relationship between the Seller and Participant as one of joint venture or partnership. Participant has purchased hereunder an undivided interest in the Loan. Neither Seller nor Participant makes any expressed or implied representation or warranty of any kind other than those specifically set out herein.

12.      Neither Seller nor Participant may assign or transfer all or any portion of its interest in the Loan without first delivering to the other party written notice ("Transfer Notice") offering to the other party the right to purchase (or repurchase, as the case may be) all or a portion of the transferring party's interest in the Loan. The Transfer Notice shall set forth the amount of the Loan that will be transferred ("Transferred Amount"). In the event the Participant is the transferring party, the Participant shall provide to the Seller a written agreement from a proposed purchaser, containing terms substantially like those set forth herein, evidencing such third party's intent to purchase all or any portion of the Participation. The non-transferring party shall have 10 days from the receipt of such Transfer Notice to purchase the Transferred Amount. Any assignment in contravention of the provisions set forth herein shall be void.

13.      This Agreement contains the entire agreement between the parties and shall not be modified in any respect except by an amendment in writing signed by both parties. The invalidity of any portion of this Agreement shall in no way affect the balance thereof. This Agreement shall remain in effect until the Loan is fully paid. This Participation Agreement is executed under and shall be governed and construed in accordance with the laws of the

State of Colorado, and the parties hereto submit to the jurisdiction of the courts of Colorado. This Agreement shall inure to the benefit of and be binding on the successors and permitted assigns to the parties hereto.

PARTICIPANT

By: _____

Print Name:   Thomas Anstey

Title:   Assistant Vice President

Colorado Capital Bank ("Seller")

By: _____

Print Name: Jeff Stiffler

Title: Senior Vice President

## EXHIBIT A – PARTICIPATION AGREEMENT

Seller:                Colorado Capital Bank

Participant:           Triad Bank

Borrower:              Chanin-Maxwell, LLC

Loan Amount:           $2,700,000.00        Participation   $2,000,000.00
                                            Participation Rate:  CCB Base +1.5%
                                            Rate Change Frequency:  Daily
                                            Loan Fees Paid to Participant: $5,000.00

Type of Advances:      ____X Single Advance _____ Multiple Advance _____ Line of Credit

Special Terms
Regarding Interest :   _____ If this box is checked, then notwithstanding any provisions in the Loan
                       Documents, the interest payable to the Participant with respect to the Loan shall be the
                       following amount based on the amount that Participant has advanced toward the
                       principal of the Loan: _____

Method of Advances and Repayments (check applicable method):

_____   Pro Rata.  Participant shall make payments pro rata with Seller's advances of principal on
          the Loan.  Payments on the Loan (including accrued interest, and repayment of contributions to
          fees and expenses) shall be distributed pro rata between Seller and Participant.

X         LIFO.  Participant shall be required to pay the purchase price for the Participation only after
          Seller has advanced all of Seller's share of the principal of the Loan.  Repayments of the Loan
          (by repayment or by enforcement of collateral) shall be first paid to Participant until all of
          Participant's purchase price, and accrued interest, and repayment of contributions to fees and
          expenses have been paid in full, whereupon Participant will have no further interest in the Loan.

_____   FIFO.  Participant shall be required to pay the purchase price for the Participation immediately, or
          as otherwise required by paragraph 1 of the Participation Agreement.  Repayments of the loan (by
          repayment or by enforcement of collateral) shall be first paid to Seller until all of Seller's portion
          and accrued interest are satisfied.

_____   Other. (Describe)

Colorado Capital Bank                          PARTICIPANT

By: _____                    By: _____

Jeff Stauffer,  Senior Vice President          Thomas Anstey, Assistant Vice President

## EXHIBIT 2

11445-5

## PARTICIPATION AGREEMENT

THIS PARTICIPATION AGREEMENT (this "Agreement") made as of March 31, 2010 between Colorado Capital Bank having its principal offices at 7505 Village Square Dr., Castle Rock, CO 80108 ("Seller") and Triad Bank ("Participant"). Seller has or intends to make a loan to Maxwell Place, LLC ("Borrower") as described in Exhibit A hereto (the "Loan"). A copy of the promissory notes, guaranties, security agreements and other documents evidencing or securing the Loan (the "Loan Documents") have been delivered to the Participant, and a completed list of all Loan Documents delivered by the Seller to the Participant are attached hereto and incorporated herein as Exhibit B. Subject to the terms and conditions of this Agreement, Seller and Participant agree as follows with respect to the sale of an interest in the Loan by Seller to Participant.

This Agreement is for one loan that is a part of the credit facility extended by the Seller to the Borrower. The aggregate commitment is for $3,100,000.00. The Loan sold hereunder is superior to a loan made or to be made by the Seller to the Borrower in the original principal amount of $1,245,000.00 (the "Subordinate Loan" or sometimes referred to in the loan documents as "Note 2"). The payments to be received on the Subordinate Loan, the proceeds (whether cash or non-cash) of all the collateral pledged to secure the Loan and Subordinate Loan must first be applied to the Loan before any principal reduction payment is made to the Subordinate Loan. Notwithstanding the foregoing, nothing herein shall prevent Seller from monthly interest payments for the Subordinate Loan.

1.     Seller hereby sells and Participant hereby purchases an undivided interest in the Loan (the "Participation"). Participant shall pay to Seller the purchase price for the Participation as set out in Exhibit A. The purchase price shall be paid in cash or by wire transfer of funds to the Seller no later than the next business day after the Seller requests payment therefor. If the Loan is a line of credit or will otherwise be disbursed in multiple advances, Participant shall be required to make advances as required from time-to-time by Seller up to aggregate of Participant's purchase price at any time. Earnings on the Participation shall not accrue until payment for the Participation has been received by Seller in collected funds.

2.     Seller's sale of the Participation is without recourse and without any warranties or representations expressed or implied except as specifically set forth in this Agreement. Participant represents that it has examined each of the Loan Documents and has made an independent review and judgement concerning the Loan, including the credit risk involved therein and the adequacy of the security therefor. Seller shall not be responsible to the Participant, with respect to any recitals, statements, covenants, warranties or representations contained in the Loan Documents or any financial statement or data furnished by the Borrower nor shall the Seller be required to inquire as to the truth or accuracy of any such items. The Seller shall not be responsible to the Participant for any fraud or misrepresentation on the part of the Borrower or its agent regarding the execution, genuineness, validity, enforceability, or effectiveness of the Loan Documents. Notwithstanding any of the foregoing, in the event the Loan is in default, the Seller shall provide the Participant prior notice of any scheduled meeting with the borrower, and provide the Participant a reasonable opportunity to attend and participate in such meeting.

3.     Except as provided in paragraph 8, any payments made on the Loan, and any proceeds of any collateral for the Loan shall be applied in the order identified in the Loan Documents and divided between Seller and Participant as set out in Exhibit A.   If, at any time, repayment of the loan, as determined in the Sellers reasonable opinion is impaired, or if, at the time the last expected payment from the Borrower is received, there are not sufficient funds to repay Participant's interest in full, all payments shall be first applied to advances of principal, then to accrued interest, and then to repayment of advances made to pay fees and expenses, and Participant shall have no claim against Seller for any remaining balance. Seller shall receive all payments of principal, interest, default penalties, collateral proceeds, and other amounts payable on the Loan. Seller shall, within five (5) business days after receipt, report and remit to the Participant its share of such payments. Participant shall apply payments as instructed by the Seller as of the effective date the payment was received by the Borrower.

4.     Seller shall hold in its name and have title to and retain possession or control of, the Loan Documents and all other security documents, papers and other items provided for or required under the Loan Documents. Seller

446496.2

EXHIBIT 2

shall maintain records reflecting the Participation, any advances made to the Borrower, and all payments received on the Loan and disposition thereof. With reasonable advance notice, Participant and the examining regulatory authority of Participant or Seller shall have the right during the normal business hours of Seller to inspect Seller's books, records and documents relating to the Loan. Seller will provide Participant with copies of all records, and any and all documents including insurance policies which evidence, secure or support the Loan.

5.      Seller shall be entitled to rely on any document or statement believed by it to be genuine and correct. Neither the Seller nor any of its officers, directors, agents, representatives or employees shall be liable for any action or omission in connection with this Agreement or the Loan Documents except for its gross negligence or willful misconduct. Seller shall be entitled to the advice and assistance of legal counsel and to rely on any opinions of counsel with respect to the Loan Documents, this Agreement, and all matters incident thereto. Seller shall not be liable for any action taken or omitted in good faith in reliance on such legal opinions. Errors in judgment shall not be considered gross negligence or willful misconduct for purposes of this Agreement.

6.      Seller may, with notice to, but without any necessity of securing the consent of, Participant: (a) declare a default, accelerate the maturity of the Loan, and demand payment of the Loan; (b) institute legal proceedings to enforce the Loan; (c) compromise and accept any condemnation or casualty award relating to any collateral; (d) foreclose upon the collateral securing the Loan; and (e) accept additional collateral; (f) release any existing collateral for the Loan. Either Seller or Participant may purchase the collateral at any foreclosure sale, and the proceeds of such purchase shall be distributed between Purchaser and Seller as set out herein. Seller and Participant agree that, in any dealings or negotiations between Seller and parties other than Participant, Seller shall be considered to be the sole owner and holder of the Loan, and such other parties may look to Seller as the sole owner and holder thereof without inquiry as to whether Participant has concurred in such dealings or negotiations. Not withstanding the forgoing, Seller will keep participant informed of all material developments affecting the Borrower, the Loan, and the collateral.

7.      If the Loan is declared in default and payment is accelerated as a result thereof, Seller at its option, but without any obligation to do so, may repurchase Participant's share of the balance of principal and accrued interest then owing on such Loan.

8.      Notwithstanding any other provision herein to the contrary, if the Seller receives a payment after default of the Loans, and whether pursuant to a demand for payment or as a result of a legal proceeding against the Borrower(s) or through payment by or action against any other person in any way liable on account of the indebtedness evidenced by such Loans, or from realization upon any security for the Loans, or from any source whatever, such payment shall be applied in the following order:

(a)      To the costs and expenses, including attorney's fees, incurred in effecting such recovery or in enforcing any right or remedy under the Loan Documents or in realizing upon any security for the Loans;

(b)      To accrued interest payable of which an amount represents its pro rata share at the time of default shall be paid to the Participant; and

(c)      To the unpaid principal amount of the Loans, of which an amount representing its pro rata share at the time of default shall be paid to the Participant.

Notwithstanding all foregoing provisions, it is expressly understood and agreed that any losses sustained with respect to the Loans shall be borne by the Participant in accordance with its pro rata share at the time of maturity or default.

9.      Participant shall reimburse Seller for Participant's share of all expenses incurred by Seller (including without limitation attorney fees and liabilities to third parties) in the enforcement and administration of the Loan and this Agreement, and for all payments or advances made by Seller pursuant to the terms of any Loan Documents for the purpose of protecting the security of the Loan within thirty (30) days after request by Seller. The amount of reimbursement required from Participant shall be equal to the percentage of Participant's interest in the principal amount of the Loan at the time such expense is incurred. If the Loan is declared in default, the amount of reimbursement from the Participant shall be equal to the percentage of Participant's interest in the principal amount

of the Loan at the time the default is declared, and such percentage shall not reduce if any amounts are recovered on the loan.

10.     If Participant receives payment on the Loan from any source in greater amount than provided in Exhibit A, Participant shall pay to the Seller such sums as shall be necessary to cause such payment to be divided between Seller and Participant in accordance with their rights under Exhibit A. Participant subordinates any other claims it may have against Seller or Seller's property to the Loan until the Loan is paid in full.

11.     Nothing herein shall constitute either party the agent for the other, nor render the relationship between the Seller and Participant as one of joint venture or partnership. Participant has purchased hereunder an undivided interest in the Loan. Neither Seller nor Participant makes any expressed or implied representation or warranty of any kind other than those specifically set out herein.

12.     Neither Seller nor Participant may assign or transfer all or any portion of its interest in the Loan without first delivering to the other party written notice ("Transfer Notice") offering to the other party the right to purchase (or repurchase, as the balance may be) all or a portion of the transferring party's interest in the Loan. The Transfer Notice shall set forth the amount of the Loan that will be transferred ("Transferred Amount"). In the event the Participant is the transferring party, the Participant shall provide to the Seller a written agreement from a proposed purchaser, containing terms substantially like those set forth herein, evidencing such third party's intent to purchase all or any portion of the Participation. The non-transferring party shall have 10 days from the receipt of such Transfer Notice to purchase the Transferred Amount. Any assignment in contravention of the provisions set forth herein shall be void.

13.     This Agreement contains the entire agreement between the parties and shall not be modified in any respect except by an amendment in writing signed by both parties. The invalidity of any portion of this Agreement shall in no way affect the balance thereof. This Agreement shall remain in effect until the Loan is fully paid. This Participation Agreement is executed under and shall be governed and construed in accordance with the laws of the State of Colorado, and the parties hereto submit to the jurisdiction of the courts of Colorado. This Agreement shall inure to the benefit of and be binding on the successors and permitted assigns to the parties hereto.

PARTICIPANT

By: _____

Print Name: Thomas C. Ainsley

Title: Asst. Vice President

Colorado Capital Bank ("Seller")

By: _____

Print Name: Robert Haas

Title: Vice President Loans

446496.2

## EXHIBIT A – PARTICIPATION AGREEMENT

Seller:            Colorado Capital Bank

Participant:       Triad Bank

Borrower:          Maxwell Place, LLC

Loan Amount: $1,855,000.00

| | |
|---|---|
| Participation: | $1,150,000.00  61.99 % |
| Participation Rate: | 5% Fixed |
| Rate Change Frequency: | N/A |
| Loan Fees Paid to Participant: | $0.00 |

Type of Advances:    __X__  Single Advance    _____ Multiple Advance    _____ Line of Credit

Special Terms
Regarding Interest :    _____ If this box is checked, then notwithstanding any provisions in the Loan Documents, the interest payable to the Participant with respect to the Loan shall be the following amount based on the amount that Participant has advanced toward the principal of the Loan: _____

Method of Advances and Repayments (check applicable method):

__X__   **Pro Rata.** Participant shall make payments pro rata with Seller's advances of principal on the Loan. Payments on the Loan (including accrued interest, and repayment of contributions to fees and expenses) shall be distributed pro rata between Seller and Participant.

_____   **LIFO.** Participant shall be required to pay the purchase price for the Participation only after Seller has advanced all of Seller's share of the principal of the Loan. Repayments of the Loan (by repayment or by enforcement of collateral) shall be first paid to Participant until all of Participant's purchase price, and accrued interest, and repayment of contributions to fees and expenses have been paid in full, whereupon Participant will have no further interest in the Loan.

_____   **FIFO.** Participant shall be required to pay the purchase price for the Participation immediately, or as otherwise required by paragraph 1 of the Participation Agreement. Repayments of the loan (by repayment or by enforcement of collateral) shall be first paid to Seller until all of Seller's portion and accrued interest are satisfied.

_____   **Other. (Describe)**

Colorado Capital Bank

By: _____

PARTICIPANT

By: _____

446496.2

## EXHIBIT B – LIST OF ALL LOAN DOCUMENTS

Bill of Sale

Collateral Assignment of Note and Deed of Trust dated April 7, 2010 (referencing the "Recording Information" as Reception No. 2950310)

Collateral Assignment of Note and Deed of Trust dated April 7, 2010 (referencing the "Recording Information" as Reception No. 2950312)

Assignment of Deed of Trust dated April 7, 2010 (referencing the "Recording Information" as Reception No 2950310)

Assignment of Deed of Trust dated April 7, 2010 (referencing the "Recording Information" as Reception No 2950312)

Loan Purchase and Collateral Security Agreement dated April 7, 2010 (with all "exhibits" attached and unsigned)

# EXHIBIT  3

10612-20

### COLORADO CAPITAL
—— B A N K ——
EDWARDS

## PARTICIPATION AGREEMENT

THIS PARTICIPATION AGREEMENT (this "Agreement") made as of September 29, 2008 between Colorado Capital Bank having its principal offices at 7505 Village Square Dr., Castle Rock, CO 80108 ("Seller") and Triad Bank having its principal offices at 10375 Clayton Road Frontenac, MO, 63131 ("Participant"). Seller has or intends to make two loans to Right Sky Properties, LLC ("Borrower") as described in Exhibit A hereto (the "Loan"). A copy of the promissory notes, guaranties, security agreements and other documents evidencing or securing the Loan (the "Loan Documents") have been delivered to the Participant. Subject to the terms and conditions of this Agreement, Seller and Participant agree as follows with respect to the sale of an interest in the Loan by Seller to Participant.

1.    Seller hereby sells and Participant hereby purchases an undivided interest in the Loan (the "Participation"). Participant shall pay to Seller the purchase price for the Participation as set out in Exhibit A. The purchase price shall be paid in cash or by wire transfer of funds to the Seller no later than the next business day after the Seller requests payment therefor. If the Loan is a line of credit or will otherwise be disbursed in multiple advances, Participant shall be required to make advances as required from time-to-time by Seller up to aggregate of Participant's purchase price at any time. Earnings on the Participation shall not accrue until payment for the Participation has been received by Seller in collected funds.

2.    Seller's sale of the Participation is without recourse and without any warranties or representations expressed or implied except as specifically set forth in this Agreement. Participant represents that it has examined each of the Loan Documents and has made an independent review and judgement concerning the Loan, including the credit risk involved therein and the adequacy of the security therefor. Seller shall not be responsible to the Participant, with respect to any recitals, statements, covenants, warranties or representations contained in the Loan Documents or any financial statement or data furnished by the Borrower nor shall the Seller be required to inquire as to the truth or accuracy of any such items. The Seller shall not be responsible to the Participant for any fraud or misrepresentation on the part of the Borrower or its agent regarding the execution, genuineness, validity, enforceability, or effectiveness of the Loan Documents. Notwithstanding any of the foregoing, in the event the Loan is in default, the Seller shall provide the Participant prior notice of any scheduled meeting with the borrower, and provide the Participant a reasonable opportunity to attend and participate in such meeting.

3.    Except as provided in paragraph 8, any payments made on the Loan, and any proceeds of any collateral for the Loan shall be applied in the order identified in the Loan Documents and divided between Seller and Participant as set out in Exhibit A. If, at any time, repayment of the loan, as determined in the Sellers reasonable opinion is impaired, or if, at the time the last expected payment from the Borrower is received, there are not sufficient funds to repay Participant's interest in full, all payments shall be first applied to advances of principal, then to accrued interest, and then to repayment of advances made to pay fees and expenses, and Participant shall have no claim against Seller for any remaining balance. Seller shall receive all payments of principal, interest, default penalties, collateral proceeds, and other amounts payable on the Loan. Seller shall, within five (5) business days after receipt, report and remit to the Participant its share of such payments. Participant shall apply payments as instructed by the Seller as of the effective date the payment was received by the Borrower.

4.    Seller shall hold in its name and have title to and retain possession or control of, the Loan Documents and all other security documents, papers and other items provided for or required under the Loan Documents. Seller shall maintain records reflecting the Participation, any advances made to the Borrower, and all payments received on the Loan and disposition thereof. With reasonable advance notice, Participant and the examining regulatory authority of Participant or Seller shall have the right during the normal business hours of Seller to inspect Seller's books, records and documents relating to the Loan. Seller will provide Participant with copies of all records, and any and all documents including insurance policies which evidence, secure or support the Loan.

EXHIBIT 3

5.      Seller shall be entitled to rely on any document or statement believed by it to be genuine and correct. Neither the Seller nor any of its officers, directors, agents, representatives or employees shall be liable for any action or omission in connection with this Agreement or the Loan Documents except for its gross negligence or willful misconduct. Seller shall be entitled to the advice and assistance of legal counsel and to rely on any opinions of counsel with respect to the Loan Documents, this Agreement, and all matters incident thereto. Seller shall not be liable for any action taken or omitted in good faith in reliance on such legal opinions. Errors in judgment shall not be considered gross negligence or willful misconduct for purposes of this Agreement.

6.      Seller may, with notice to, but without any necessity of securing the consent of, Participant: (a) declare a default, accelerate the maturity of the Loan, and demand payment of the Loan; (b) institute legal proceedings to enforce the Loan; (c) compromise and accept any condemnation or casualty award relating to any collateral; (d) foreclose upon the collateral securing the Loan; and (e) accept additional collateral; (f) release any existing collateral for the Loan. Either Seller or Participant may purchase the collateral at any foreclosure sale, and the proceeds of such purchase shall be distributed between Purchaser and Seller as set out herein. Seller and Participant agree that, in any dealings or negotiations between Seller and parties other than Participant, Seller shall be considered to be the sole owner and holder of the Loan, and such other parties may look to Seller as the sole owner and holder thereof without inquiry as to whether Participant has concurred in such dealings or negotiations.

7.      If the Loan is declared in default and payment is accelerated as a result thereof, Seller at its option, but without any obligation to do so, may repurchase Participant's share of the balance of principal and accrued interest then owing on such Loan.

8.      Notwithstanding any other provision herein to the contrary, if the Seller receives a payment after default of the Loans, and whether pursuant to a demand for payment or as a result of a legal proceeding against the Borrower(s) or through payment by or action against any other person in any way liable on account of the indebtedness evidenced by such Loans, or from realization upon any security for the Loans, or from any source whatever, such payment shall be applied in the following order:

(a)     To the costs and expenses, including attorney's fees, incurred in effecting such recovery or in enforcing any right or remedy under the Loan Documents or in realizing upon any security for the Loans;

(b)     To accrued interest payable of which an amount represents its pro rata share at the time of default shall be paid to the Participant; and

(c)     To the unpaid principal amount of the Loans, of which an amount representing its pro rata share at the time of default shall be paid to the Participant.

Notwithstanding all foregoing provisions, it is expressly understood and agreed that any losses sustained with respect to the Loans shall be borne by the Participant in accordance with its pro rata share at the time of maturity or default.

9.      Participant shall reimburse Seller for Participant's share of all expenses incurred by Seller (including without limitation attorney fees and liabilities to third parties) in the enforcement and administration of the Loan and this Agreement, and for all payments or advances made by Seller pursuant to the terms of any Loan Documents for the purpose of protecting the security of the Loan within thirty (30) days after request by Seller. The amount of reimbursement required from Participant shall be equal to the percentage of Participant's interest in the principal amount of the Loan at the time such expense is incurred. If the Loan is declared in default, the amount of reimbursement from the Participant shall be equal to the percentage of Participant's interest in the principal amount of the Loan at the time the default is declared, and such percentage shall not reduce if any amounts are recovered on the loan.

10.     If Participant receives payment on the Loan from any source in greater amount than provided in Exhibit A, Participant shall pay to the Seller such sums as shall be necessary to cause such payment to be divided between Seller and Participant in accordance with their rights under Exhibit A. Participant subordinates any other claims it may have against Seller or Seller's property to the Loan until the Loan is paid in full.

11.     Nothing herein shall constitute either party the agent for the other, nor render the relationship between the Seller and Participant as one of joint venture or partnership. Participant has purchased hereunder an

undivided interest in the Loan. Neither Seller nor Participant makes any expressed or implied representation or warranty of any kind other than those specifically set out herein.

12.     Neither Seller nor Participant may assign or transfer all or any portion of its interest in the Loan without first delivering to the other party written notice ("Transfer Notice") offering to the other party the right to purchase (or repurchase, as the case may be) all or a portion of the transferring party's interest in the Loan. The Transfer Notice shall set forth the amount of the Loan that will be transferred ("Transferred Amount"). In the event the Participant is the transferring party, the Participant shall provide to the Seller a written agreement from a proposed purchaser, containing terms substantially like those set forth herein, evidencing such third party's intent to purchase all or any portion of the Participation. The non-transferring party shall have 10 days from the receipt of such Transfer Notice to purchase the Transferred Amount. Any assignment in contravention of the provisions set forth herein shall be void.

13.     This Agreement contains the entire agreement between the parties and shall not be modified in any respect except by an amendment in writing signed by both parties. The invalidity of any portion of this Agreement shall in no way affect the balance thereof. This Agreement shall remain in effect until the Loan is fully paid. This Participation Agreement is executed under and shall be governed and construed in accordance with the laws of the State of Colorado, and the parties hereto submit to the jurisdiction of the courts of Colorado. This Agreement shall inure to the benefit of and be binding on the successors and permitted assigns to the parties hereto.

PARTICIPANT                                         Colorado Capital Bank ("Seller")

By: _T C Au_____                            By: _Allison Krausen_____

Print Name:  Thomas C. Anstey                       Print Name: Allison S. Krausen

Title:    Asst. Vice President                       Title: Vice President-Loan Officer

## EXHIBIT A -- PARTICIPATION AGREEMENT

Seller:              Colorado Capital Bank

Participant:         Triad Bank

Borrower:            Right Sky Properties, LLC (Building 6B)

Loan #:              11601027

Loan Amount:         $1,293,186.00

Participation:       $783,328

Participation Rate: CCB Base Rate + .75% (currently 5.75%)

Rate Change Frequency: Daily

Loan Fees Paid to Participant:      $5,875

Type of Advances:    _____ Single Advance    ____ Multiple Advance    x  Line of Credit

Terms of Advance:  . Once Colorado Capital Bank is fully advanced, subsequent funding will be requested from Triad Bank.

Method of Advances and Repayments (check applicable method):

_____      Pro Rata.  Participant shall make payments pro rata with Seller's advances of principal on the Loan.  Payments on the Loan (including accrued interest, and repayment of contributions to fees and expenses) shall be distributed pro rata between Seller and Participant.

x_____     LIFO.  Participant shall be required to pay the purchase price for the Participation only after Seller has advanced all of Seller's share of the principal of the Loan.  Repayments of the Loan (by repayment or by enforcement of collateral) shall be first paid to Participant until all of Participant's purchase price, and accrued interest, and repayment of contributions to fees and expenses have been paid in full, whereupon Participant will have no further interest in the Loan.

_____      FIFO.  Participant shall be required to pay the purchase price for the Participation immediately, or as otherwise required by paragraph 1 of the Participation Agreement.  Repayments of the loan (by repayment or by enforcement of collateral) shall be first paid to Seller until all of Seller's portion and accrued interest are satisfied.

Colorado Capital Bank                    PARTICIPANT

By: _Allison Thomsen_____            By: _T C Cau_____

# EXHIBIT  4

10612-15

COLORADO CAPITAL
—— BANK ——
EDWARDS

# PARTICIPATION AGREEMENT

THIS PARTICIPATION AGREEMENT (this "Agreement") made as of October 2, 2008 between Colorado Capital Bank having its principal offices at 7505 Village Square Dr., Castle Rock, CO 80108 ("Seller") and Triad Bank having its principal offices at 10375 Clayton Road Frontenac, MO, 63131 ("Participant"). Seller has or intends to make two loans to Right Sky Properties, LLC ("Borrower") as described in Exhibit A hereto (the "Loan"). A copy of the promissory notes, guaranties, security agreements and other documents evidencing or securing the Loan (the "Loan Documents") have been delivered to the Participant. Subject to the terms and conditions of this Agreement, Seller and Participant agree as follows with respect to the sale of an interest in the Loan by Seller to Participant.

1.      Seller hereby sells and Participant hereby purchases an undivided interest in the Loan (the "Participation"). Participant shall pay to Seller the purchase price for the Participation as set out in Exhibit A. The purchase price shall be paid in cash or by wire transfer of funds to the Seller no later than the next business day after the Seller requests payment therefor. If the Loan is a line of credit or will otherwise be disbursed in multiple advances, Participant shall be required to make advances as required from time-to-time by Seller up to aggregate of Participant's purchase price at any time. Earnings on the Participation shall not accrue until payment for the Participation has been received by Seller in collected funds.

2.      Seller's sale of the Participation is without recourse and without any warranties or representations expressed or implied except as specifically set forth in this Agreement. Participant represents that it has examined each of the Loan Documents and has made an independent review and judgement concerning the Loan, including the credit risk involved therein and the adequacy of the security therefor. Seller shall not be responsible to the Participant, with respect to any recitals, statements, covenants, warranties or representations contained in the Loan Documents or any financial statement or data furnished by the Borrower nor shall the Seller be required to inquire as to the truth or accuracy of any such items. The Seller shall not be responsible to the Participant for any fraud or misrepresentation on the part of the Borrower or its agent regarding the execution, genuineness, validity, enforceability, or effectiveness of the Loan Documents. Notwithstanding any of the foregoing, in the event the Loan is in default, the Seller shall provide the Participant prior notice of any scheduled meeting with the borrower, and provide the Participant a reasonable opportunity to attend and participate in such meeting.

3.      Except as provided in paragraph 8, any payments made on the Loan, and any proceeds of any collateral for the Loan shall be applied in the order identified in the Loan Documents and divided between Seller and Participant as set out in Exhibit A. If, at any time, repayment of the loan, as determined in the Sellers reasonable opinion is impaired, or if, at the time the last expected payment from the Borrower is received, there are not sufficient funds to repay Participant's interest in full, all payments shall be first applied to advances of principal, then to accrued interest, and then to repayment of advances made to pay fees and expenses, and Participant shall have no claim against Seller for any remaining balance. Seller shall receive all payments of principal, interest, default penalties, collateral proceeds, and other amounts payable on the Loan. Seller shall, within five (5) business days after receipt, report and remit to the Participant its share of such payments. Participant shall apply payments as instructed by the Seller as of the effective date the payment was received by the Borrower.

4.      Seller shall hold in its name and have title to and retain possession or control of, the Loan Documents and all other security documents, papers and other items provided for or required under the Loan Documents. Seller shall maintain records reflecting the Participation, any advances made to the Borrower, and all payments received on the Loan and disposition thereof. With reasonable advance notice, Participant and the examining regulatory authority of Participant or Seller shall have the right during the normal business hours of Seller to inspect Seller's books, records and documents relating to the Loan. Seller will provide Participant with copies of all records, and any and all documents including insurance policies which evidence, secure or support the Loan.

EXHIBIT 4

5.      Seller shall be entitled to rely on any document or statement believed by it to be genuine and correct. Neither the Seller nor any of its officers, directors, agents, representatives or employees shall be liable for any action or omission in connection with this Agreement or the Loan Documents except for its gross negligence or willful misconduct. Seller shall be entitled to the advice and assistance of legal counsel and to rely on any opinions of counsel with respect to the Loan Documents, this Agreement, and all matters incident thereto. Seller shall not be liable for any action taken or omitted in good faith in reliance on such legal opinions. Errors in judgment shall not be considered gross negligence or willful misconduct for purposes of this Agreement.

6.      Seller may, with notice to, but without any necessity of securing the consent of, Participant: (a) declare a default, accelerate the maturity of the Loan, and demand payment of the Loan; (b) institute legal proceedings to enforce the Loan; (c) compromise and accept any condemnation or casualty award relating to any collateral; (d) foreclose upon the collateral securing the Loan; and (e) accept additional collateral; (f) release any existing collateral for the Loan. Either Seller or Participant may purchase the collateral at any foreclosure sale, and the proceeds of such purchase shall be distributed between Purchaser and Seller as set out herein. Seller and Participant agree that, in any dealings or negotiations between Seller and parties other than Participant, Seller shall be considered to be the sole owner and holder of the Loan, and such other parties may look to Seller as the sole owner and holder thereof without inquiry as to whether Participant has concurred in such dealings or negotiations.

7.      If the Loan is declared in default and payment is accelerated as a result thereof, Seller at its option, but without any obligation to do so, may repurchase Participant's share of the balance of principal and accrued interest then owing on such Loan.

8.      Notwithstanding any other provision herein to the contrary, if the Seller receives a payment after default of the Loans, and whether pursuant to a demand for payment or as a result of a legal proceeding against the Borrower(s) or through payment by or action against any other person in any way liable on account of the indebtedness evidenced by such Loans, or from realization upon any security for the Loans, or from any source whatever, such payment shall be applied in the following order:

(a)      To the costs and expenses, including attorney's fees, incurred in effecting such recovery or in enforcing any right or remedy under the Loan Documents or in realizing upon any security for the Loans;

(b)      To accrued interest payable of which an amount represents its pro rata share at the time of default shall be paid to the Participant; and

(c)      To the unpaid principal amount of the Loans, of which an amount representing its pro rata share at the time of default shall be paid to the Participant.

Notwithstanding all foregoing provisions, it is expressly understood and agreed that any losses sustained with respect to the Loans shall be borne by the Participant in accordance with its pro rata share at the time of maturity or default.

9.      Participant shall reimburse Seller for Participant's share of all expenses incurred by Seller (including without limitation attorney fees and liabilities to third parties) in the enforcement and administration of the Loan and this Agreement, and for all payments or advances made by Seller pursuant to the terms of any Loan Documents for the purpose of protecting the security of the Loan within thirty (30) days after request by Seller. The amount of reimbursement required from Participant shall be equal to the percentage of Participant's interest in the principal amount of the Loan at the time such expense is incurred. If the Loan is declared in default, the amount of reimbursement from the Participant shall be equal to the percentage of Participant's interest in the principal amount of the Loan at the time the default is declared, and such percentage shall not reduce if any amounts are recovered on the loan.

10.      If Participant receives payment on the Loan from any source in greater amount than provided in Exhibit A, Participant shall pay to the Seller such sums as shall be necessary to cause such payment to be divided between Seller and Participant in accordance with their rights under Exhibit A. Participant subordinates any other claims it may have against Seller or Seller's property to the Loan until the Loan is paid in full.

11.      Nothing herein shall constitute either party the agent for the other, nor render the relationship between the Seller and Participant as one of joint venture or partnership. Participant has purchased hereunder an

undivided interest in the Loan. Neither Seller nor Participant makes any expressed or implied representation or warranty of any kind other than those specifically set out herein.

12.     Neither Seller nor Participant may assign or transfer all or any portion of its interest in the Loan without first delivering to the other party written notice ("Transfer Notice") offering to the other party the right to purchase (or repurchase, as the case may be) all or a portion of the transferring party's interest in the Loan. The Transfer Notice shall set forth the amount of the Loan that will be transferred ("Transferred Amount"). In the event the Participant is the transferring party, the Participant shall provide to the Seller a written agreement from a proposed purchaser, containing terms substantially like those set forth herein, evidencing such third party's intent to purchase all or any portion of the Participation. The non-transferring party shall have 10 days from the receipt of such Transfer Notice to purchase the Transferred Amount. Any assignment in contravention of the provisions set forth herein shall be void.

13.     This Agreement contains the entire agreement between the parties and shall not be modified in any respect except by an amendment in writing signed by both parties. The invalidity of any portion of this Agreement shall in no way affect the balance thereof. This Agreement shall remain in effect until the Loan is fully paid. This Participation Agreement is executed under and shall be governed and construed in accordance with the laws of the State of Colorado, and the parties hereto submit to the jurisdiction of the courts of Colorado. This Agreement shall inure to the benefit of and be binding on the successors and permitted assigns to the parties hereto.

PARTICIPANT

By: _T C Aw_____

Print Name: _Thomas C. Anstey_

Title: _Asst. Vice President_

Colorado Capital Bank ("Seller")

By: _Allison Krausen_____

Print Name: Allison S. Krausen

Title: Vice President-Loan Officer

## EXHIBIT A – PARTICIPATION AGREEMENT

Seller:          Colorado Capital Bank

Participant:     Triad Bank

Borrower:        Right Sky Properties, LLC (Building 6A)

Loan #:          11601059

Loan Amount:     $2,008,588

Participation:   $1,216,672

Participation Rate:  CCB Base Rate + .75% (currently 5.75%)

Rate Change Frequency:  Daily

Loan Fees Paid to Participant:   $9,125.04

Type of Advances:   _____ Single Advance   _____ Multiple Advance   x  Line of Credit

Terms of Advance:   Once Colorado Capital Bank is fully advanced, subsequent funding will be requested from Triad Bank.

Method of Advances and Repayments (check applicable method):

_____   **Pro Rata.** Participant shall make payments pro rata with Seller's advances of principal on the Loan. Payments on the Loan (including accrued interest, and repayment of contributions to fees and expenses) shall be distributed pro rata between Seller and Participant.

x_____   **LIFO.** Participant shall be required to pay the purchase price for the Participation only after Seller has advanced all of Seller's share of the principal of the Loan. Repayments of the Loan (by repayment or by enforcement of collateral) shall be first paid to Participant until all of Participant's purchase price, and accrued interest, and repayment of contributions to fees and expenses have been paid in full, whereupon Participant will have no further interest in the Loan.

_____   **FIFO.** Participant shall be required to pay the purchase price for the Participation immediately, or as otherwise required by paragraph 1 of the Participation Agreement. Repayments of the loan (by repayment or by enforcement of collateral) shall be first paid to Seller until all of Seller's portion and accrued interest are satisfied.

Colorado Capital Bank                          PARTICIPANT

By: _allison Mausu_                 By: _T-C Au B_