IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 11-CV-1220-MSK-BNB

TRIAD BANK, a Missouri chartered bank,

    Plaintiff,

v.

FIRST-CITIZENS BANK & TRUST COMPANY, a North Carolina chartered commercial bank,

    Defendant.

---

### PLAINTIFF TRIAD BANK'S RESPONSE TO MOTION FOR PARTIAL SUMMARY JUDGMENT OF DEFENDANT FIRST-CITIZENS BANK & TRUST COMPANY

---

Plaintiff Triad Bank ("Triad"), in opposition to Defendant's Motion for Summary Judgment (Doc. 36), states that triable issues of fact exist with respect to the claim in Count II of the First Amended Complaint upon which Defendant First-Citizens Bank & Trust Company ("FCB") seeks summary judgment:

**A.**    **Defendant is not entitled to summary judgment on Count II.**

    **1.**    **Burden of Proof and Elements**

Triad agrees with defendant that the interpretation of a written contract is a question of law for the Court where the language is clear and unambiguous. However, this is not true where, as here, the language is (a) ambiguous or conflicting; or (b) where the parties by their statements and conduct subsequent to execution have placed an interpretation on the contract which is inconsistent with the interpretation being asserted.

1822987.7

a. "Where . . . it is impossible to reconcile conflicting clauses of a contract, it is proper to receive extrinsic evidence for the purpose of determining the intent of the parties." *Ryan v. Fitzpatrick Drilling Co.*, 342 P.2d 1040, 1043 (Colo. 1959).

b. Further, Colorado courts have found that, even in the case of unambiguous contracts, evidence of subsequent oral statements pertinent to a written agreement may be admissible to show modification or waiver. Indeed, "Colorado law provides that a subsequent oral agreement between the parties *may* modify a provision of an earlier written contract, even in the face of a provision in the original contract that modifications must be in writing." *Rich Floors, LLC v. Jaylon, Inc.*, No. 08-cv-02291-LTB-BNB, 2010 U.S. Dist. LEXIS 42652 at *10-11 (D. Colo. Apr. 5, 2010); *see also Discovery Land & Dev. Co. v. Colorado-Aspen Dev. Corp*, 577 P.2d 1101, 1102 (Colo. App. 1977); *Ziegler v. Hendrickson*, 528 P.2d 400 (Colo. App. 1974); *Glover v. Innis*, 252 P.3d 1204, 1208-09 (Colo. App. 2011) (defendants could introduce parol evidence of conversations with decedent occurring after execution of notes to prove decedent had waived his right to enforce its terms).

c. The Court may also conditionally admit extrinsic evidence for the purpose of determining whether a contract is ambiguous. In *D.C. Concrete Mgmt., Inc. v. Mid-Century Ins. Co.*, 39 P.3d 1205, 1208 (Colo. App. 2001), the court considered who an intended insured was under an insurance policy. The court stated that:

> In determining whether a contract is ambiguous, the trial court may conditionally admit extrinsic evidence. If, after considering such evidence, the court finds that the language of the contract unambiguously reflects the intentions of the parties, the court should disregard the extrinsic evidence and give effect to the language of the contract. If, however, the court finds

2

>the contract's terms to be ambiguous, the extrinsic evidence can serve as a useful starting point in determining the actual intentions of the parties.

*Id.* at 1207-08; s*ee also Pepcol Mfg. Co. v. Denver Union Corp.*, 687 P.2d 1310, 1314 n.3 (Colo. 1984); *Lazy Dog Ranch v. Telluray Ranch Corp.*, 965 P.2d 1229, 1235 (Colo. 1998) (looking to extrinsic evidence to determine if a deed was ambiguous and referencing "principles of contract law, according to which 'courts frequently admit extrinsic evidence provisionally, not for the purpose of 'varying or contradicting' the writing, but to determine the fact that it is indeed unambiguous'").

### 2. Disputed Issues of Material Fact

a. <u>The subject Participation Agreements are Ambiguous</u>. Here, the conflicting provisions in the Participation Agreements regarding whether repayments are to be distributed pro rata or LIFO create an ambiguity.

(i) Specifically, the Participation Agreements contain conflicting and ambiguous provisions regarding the rights of Triad to repayment as a participant after default. While paragraph 8 of the agreements would appear to result in a pro rata distribution of repayments whether obtained through legal proceedings or an action on collateral, the more specific Exhibit A, by stating that repayment is to be on a LIFO basis whether by repayment or enforcement of collateral would require repayment to the participant on a LIFO basis because absent a default there would be no need to secure repayment through enforcement of collateral. These two provisions are entirely inconsistent, and as a result the contracts are ambiguous.

(ii) Thus, here, as in *Ryan v. Fitzpatrick Drilling Co.*, 342 P.2d at 1043, paragraph 8's provision for pro rata distribution of repayments cannot be

3

reconciled with Exhibit A's statement that repayments are to be on a LIFO basis. Accordingly, the Court may and should look beyond the four corners of the agreement and consider extrinsic evidence to determine the true intent of Triad and Defendants.

(iii) In *Ryan v. Fitzpatrick Drilling Co.*, 342 P.2d 1040, a drilling contractor and an oil company entered into a contract which called for the drilling company to a "total depth of 4300 feet" or a depth "sufficient" to reach specified sand. *Id.* at 1043. A separate clause, however, provided for the splitting of costs between plaintiffs and defendants for any work performed after specified goals were reached. *Id.* The drilling company drilled a total of 4775 feet, but the defendants refused to pay for any drilling occurring over 4300 feet. *Id.* The court found that, as the two clauses were irreconcilable, extrinsic evidence could be considered to determine the true intent of the parties to the contract. *Id.*

(iv) Moreover, the Participation Agreements were form agreements prepared by FCB's predecessor in interest, Colorado Capital Bank ("CCB") and as such any ambiguities must be construed against it.[1] *Green Shoe Mfg. Co. v. Farber*, 712 P.2d 1014, 1016 (Colo. 1986).

b. <u>There is evidence supporting a LIFO interpretation</u>: Prior to this dispute, it was understood by and between the parties that Triad was in a LIFO position regardless of whether the loans were repaid according to their terms or were in default.

---

[1] In its ¶4 of its Answer, FCB admitted that it "has assumed all right, title and liabilities related to the loans and participation agreements which are at issue in this litigation."

4

(i) Specifically, on or about March 4, 2010, while the parties were conferring on a modification of the loan with the borrower, Allison Krausen, a CCB Vice-President and the loan officer who signed the Participation Agreements, acknowledged to Thomas C. Anstey of Triad that her interpretation of the Participation Agreements was that Triad would be repaid on a LIFO basis, both in repayment and in the event of default based on the language in Exhibit A of the Participation Agreement. (*See* ¶¶ 2-4 to the Declaration of Thomas C. Anstey, attached hereto as Exhibit C; Interrogatory Answers attested to under oath on February 10, 2012, No. 2 at p. 6, attached hereto as Exhibit D).

(ii) Furthermore, in agreeing to the participation, it was always Triad's interpretation that it was in a LIFO position both in repayment and in the event of default, and during that conversation Ms. Krausen confirmed that interpretation. (Ex. C, ¶5).[2]

(iii) Based on his conversation with Ms. Krausen, Mr. Anstey referenced that "Triad is in a LIFO (Last-In, First-Out) position, both in repayment and in the event of default" – in a write-up approving the loan modification dated 3/3/10. (*See* Ex. C, ¶*5* and Ex. 1).

(iv) Therefore, per Colorado law, the Parol Evidence Rule would not be applicable to the evidence of such statements, and the Court should consider this extrinsic evidence in interpreting the contract and deny summary judgment.

---

[2] Within a couple weeks of that conversation, CCB reversed itself and contended that because the loan was in default, repayment would be on a pro rata basis, consistent with the dispute now existing between the parties.

c. <u>There is evidence supporting modification or waiver of any provision providing for pro rata repayment in the event of default</u>: The statement by the CCB loan officer made while seeking Triad's approval of a loan modification and relied upon by Triad constitutes a modification or waiver of any provision limiting repayment to a pro rata distribution.

(i) In *Discovery Land & Dev. Co. v. Colorado-Aspen Dev. Corp*, 577 P.2d at 1102, the plaintiffs and defendants entered into a written "joint venture agreement" to construct commercial properties. One term of the agreement specified that the defendants would have full discretion to approve or disapprove of a commitment letter from a mortgage lender obtained by plaintiffs. *Id.* At trial in support of their claim for breach after the defendants disapproved of their loan commitment, the plaintiffs attempted to introduce evidence of an oral conversation following the execution of the agreement wherein the defendants specified what loan terms they would accept. *Id.* at 1104. The court of appeals found that the oral evidence would be admissible, as "[a] written contract may be *subsequently amended* by an oral agreement, and the parol evidence rule has no applicability under these circumstances." *Id.* at 1105 (emphasis added).

(ii) In *Ziegler v. Hendrickson*, 528 P.2d 400, a tenant plaintiff sued his landlord over a dispute regarding crops planted by the plaintiff which matured after his lease expired. The plaintiff introduced testimony regarding oral conversations he had with defendant following the signing of his lease regarding clarification of the lease's terms in the case of a crop "blow out." *Id.* at 403.

6

Plaintiff claimed that in those conversations he was informed by the defendant that his interpretation of the lease's terms was that the defendant would "protect" the plaintiff in the case of crops maturing after the lease expired. *Id.* Plaintiff brought suit to recover the value of his crops. *Id.* at 402. The court found that "[t]he quoted testimony did not violate the parol evidence rule. The parol evidence rule does not exclude testimony of conversations between parties occurring *after* execution of a written agreement offered to show waiver of the terms of an agreement or estoppel to enforce certain items." *Id.* at 403. *See also Glover*, 252 P.3d at 1208-09 (defendants could introduce parol evidence of conversations with decedent occurring after execution of notes to prove decedent had waived his right to enforce its terms).

WHEREFORE, for the foregoing reasons, plaintiff has presented sufficient evidence, taken in the light most favorable to plaintiff, to establish the challenged elements of its claim and to show that triable issues remain. Accordingly, defendant's motion for summary judgment should be denied.

Respectfully submitted

By: /s/ Joseph E. Martineau
Joseph E. Martineau
LEWIS, RICE & FINGERSH, L.C.
600 Washington, Suite 2500
St. Louis, Missouri 63101
Telephone: 314/444-7729
Facsimile: 314/612-7729
E-mail: jmartineau@lewisrice.com

Geraldine A. Brimmer
HOLLAND & HART, LLP
One Boulder Plaza
1800 Broadway, Suite 300
Boulder, Colorado 80302
Telephone: 303/473-2733
Facsimile: 303/473-2720
E-mail: gbrimmer@hollandhart.com

**CERTIFICATE OF SERVICE**

I hereby certify that on April 19, 2012, a true and correct copy of the foregoing Plaintiff's Unopposed Motion for Extension of Time was electronically filed and served on the following:

Perry L. Glantz
**JONES & KELLER, P.C.**
1999 Broadway, Suite 3150
Denver, Colorado 80202
Telephone: 303/376-8410
E-mail: pglantz@joneskeller.com

/s/ Joseph E. Martineau

8