**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

**Civil Action No. 11-cv-01220-MSK-BNB**

**TRIAD BANK, a Missouri chartered bank,**

      **Plaintiff,**

**v.**

**FIRST-CITIZENS BANK & TRUST COMPANY, a North Carolina chartered commercial bank,**

      **Defendant.**

---

**ORDER AND OPINION GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

---

**THIS MATTER** comes before the Court on Defendant First-Citizens Bank & Trust Company's Motion for Summary Judgment **(#36)**, to which the Plaintiff Triad Bank Responded **(#39)**, and the Defendant Replied **(#42)**.

### I. Jurisdiction

The Court exercises jurisdiction under 28 U.S.C. § 1332.

### II. Issue Presented

In 2008, the Plaintiff, Triad Bank, purchased interests in several real estate loans that were made by Colorado Capital Bank (CCB) to two different borrowers. Triad purchased its interests directly from CCB, and the parties entered into various Participation Agreements, which set forth the terms of the sales. The Chanin-Maxwell Participation Agreement and the Maxwell Participation Agreement govern the sale of interests in loans that were made to Chanin-Maxwell, LLC. Similarly, the Right Sky Participation Agreements govern the sale of interests in loans that were made to Right Sky Properties, LLC.

1

Triad brings this action against the Defendant, First-Citizens Bank & Trust Company, as the successor-in-interest to CCB. Triad seeks declaratory relief, specific performance, and money damages under the various Participation Agreements entered into by Triad and CCB. The Amended Complaint **(#28)** asserts four claims for relief. Claims I, III, and IV relate to Triad's purchases under the Chanin-Maxwell and Maxwell Participation Agreements. In claim II, Triad seeks a declaratory judgment under the terms of the Right Sky Participation Agreements. First-Citizens moves for summary judgment only as to claim II.

### III.  Summary Judgment Standard

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary. *See White v. York Intern. Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Substantive law governs what facts are material and what issues must be determined. It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof and identifies the party with the burden of proof. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence.  *See* Fed. R. Civ. P. 56(c)(1)(A).  Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute.  *See Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999).  If there is a genuine dispute as to a material fact, a trial is required.  If there is no genuine dispute as to any material fact, no trial is required.  The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove.  If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required.  If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

## IV.  Material Facts

Having reviewed the submissions of the parties, and having construed the evidence presented in the light most favorable to Triad, the facts material to this motion are as follows.

In 2008, Triad and CCB entered into two Participation Agreements under which Triad agreed to purchase a $783,328 participating interest and a $1,216,672 participating interest in loans made by CCB to Right Sky Properties, LLC.  The two Right Sky Participation Agreements are identical for purposes of this action.

Paragraph 3 of the Right Sky Participation Agreements addresses how payments made on the loan will be divided between CCB and Triad. It states:

> Except as provided in paragraph 8, any payments made on the Loan, and any proceeds of any collateral for the Loan shall be applied in the order identified in the Loan Documents and divided between Seller [CCB] and Participant [Triad] as set out in <u>Exhibit A</u>.

Both Participation Agreements include an Exhibit A, which is a form that contains a provision titled "Method of Advances and Repayments." The provision provides three alternatives methods by which the participant could advance its purchase money and receive payments — "Pro Rata," "LIFO," and "FIFO." Exhibit A of both agreements has the "LIFO" ("last-in-first-out") option checked, which states:

> <u>LIFO</u>. Participant [Triad] shall be required to pay the purchase price for the Participation only after Seller [CCB] has advanced all of Seller's share of the principal of the Loan. Repayments of the Loan (by repayment or by enforcement of collateral) shall be first paid to Participant until all of Participant's purchase price, and accrued interest, and repayment of contributions to fees and expenses have been paid in full, whereupon Participant will have no further interest in the Loan.

Paragraph 8 of the Participation Agreements, which is also referenced in Paragraph 3, provides an alternative method of payment distribution if the payment is received after the loans are in default:

> Notwithstanding any other provision herein to the contrary, if the Seller receives a payment after default of the Loans, and whether pursuant to a demand for payment or as a result of a legal proceeding against the Borrower(s) or through payment by or action against any other person in any way liable on account of the indebtedness evidenced by such Loans, or from realization upon any security for the Loans, or from any source whatever, such payment shall be applied in the following order:
>
> (a) To the costs and expenses, including attorney's fees, incurred in effecting such recovery or in enforcing any

                right or remedy under the Loan Documents or in realizing upon any security for the Loans;

    (b) To accrued interest payable of which an amount represents its pro rata share at the time of default shall be paid to the Participant; and

    (c) To the unpaid principal amount of the Loans, of which an amount representing its pro rata share at the time of default shall be paid to the Participant.

It is undisputed that the Right Sky loans are in default. Triad has demanded that CCB and First-Citizens acknowledge that its repayment rights under the Right Sky Participation Agreements are on a LIFO, and not pro rata, basis. These demands were refused. Triad now requests a declaration by the Court that it is entitled to repayment of its participation interests in full, whether by repayment or enforcement of collateral, before any repayment is made to First-Citizens.

## V. Analysis

First-Citizens seeks summary judgment on Triad's claim under the Right Sky Participation Agreements, arguing that the language of the agreements is plain and unambiguous. It asserts that paragraph 3 plainly states that, "*[e]xcept as provided in paragraph 8,*" the provision contained in Exhibit A controls the division of payments made on the loans and proceeds of any collateral on the loan. It argues that because the loans are in default, paragraph 8 applies. Thus, payments received after the default must be divided based on the participant's pro rata share at the time of default.

Triad responds that the language contained in the Participation Agreements is not so clear. It argues that the agreements contain conflicting and ambiguous provisions regarding Triad's rights to repayment after the loans default. Triad acknowledges that paragraph 8 appears to result in pro rata distribution of repayments once the loans are in default. However, Triad

5

argues that the provision contained in Exhibit A also appears to apply when the loans are in default.  Triad points out that Exhibit A states that repayment of the loan, whether "by repayment *or by enforcement of collateral*," shall be first paid to the participant.  Triad argues that this provision is meant to apply when the loans are in default because, absent a default, there would be no need to secure repayment through the enforcement of collateral.  Thus, it argues that once the loans are in default, paragraph 8 and the provision contained in Exhibit A are in conflict — one requires pro rata distribution, and the other requires that Triad be paid first.  Based on its position that paragraph 8 and Exhibit A are ambiguous and conflicting, Triad argues that the Court should consider extrinsic evidence to determine the parties' intent at the time the agreement was made.

Under Colorado law, interpretation of a contract is a question of law for the Court to decide.  *Ad Two, Inc. v. City and County of Denver, ex rel Manager of Aviation*, 9 P.3d 373, 376 (Colo. 2000).  In interpreting a contract, the Court must strive to give effect to the intent and reasonable expectations of the parties to the contract.  *Thompson v. Maryland Cas. Co.*, 84 P.3d 496, 501 (Colo. 2004).  In this regard, the Court first determines whether the contract is ambiguous — that is, susceptible to more than one meaning.  *Ballow v. PHICO Ins. Co.*, 875 P.2d 1354, 1359 (Colo. 1993).  The fact that the parties differ in their understanding of the contract does not create an ambiguity.  *Federal Deposit Ins. Corp. v. Fisher*, 292 P.3d 934, 937 (Colo. 2013).  If the contract is not ambiguous, then the Court enforces it according to its plain language.  *Mapes v. City Council of City of Walsenburg*, 151 P.3d 574 (Colo. App. 2006).  The Court gives each word in the contract a plain and ordinary meaning, unless the contract evidences otherwise.  *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003).  The Court reads the contract as a whole and does not read its provisions in isolation.  *Id.*

If the contract is ambiguous, then the Court must determine what the parties to the contract intended. Whenever possible, such intent is discerned from the policy itself. *Bengtson v. USAA Property & Cas. Ins.*, 3 P.3d 1233, 1235 (Colo. App. 2006). However, the Court may resort to extrinsic evidence to determine what the parties to the contract intended. *Cyprus Amax Minerals Co.*, 74 P.3d at 301-02. If construction depends on extrinsic evidence, then the interpretation of the contract becomes a question of fact. *Stegall v. Little Johnson Assocs., Ltd.*, 996 F.2d 1043, 1048 (10th Cir. 1993) (citations omitted).

The Court finds that the pertinent terms in the Right Sky Participation Agreements are unambiguous and must be enforced according to their plain language. Paragraph 3 states that it applies "[e]xcept as provided in paragraph 8." This phrase indicates that in circumstances where paragraph 8 is triggered, paragraph 3 no longer controls. Because the provision contained in Exhibit A is reached only by reference in paragraph 3, that provision is no longer at issue once paragraph 8 applies. For this reason, the provision in Exhibit A and paragraph 8 are not in irreconcilable conflict. It is undisputed that the Right Sky loans are in default. Thus, by the terms of the agreements, any payment received after the default, and which meets the additional criteria set forth in paragraph 8, should be applied in the manner set forth in that paragraph. Having concluded that the pertinent terms of the Participation Agreements are unambiguous, the Court finds it unnecessary to consider extrinsic evidence of the parties' intent.

Alternatively, Triad argues that the Court should consider evidence of the parties' subsequent oral statements to show that they intended to modify the agreement. Triad relies solely on an affidavit by Thomas C. Anstey, an Assistant Vice President at Triad, in which Mr. Anstey recalls that in 2010, a loan officer at CCB, Allison Krausen, confirmed his interpretation of the agreements, which was that Triad was in a LIFO position regardless of whether the loans

were in repayment or in default. Assuming that the Court may consider extrinsic evidence of a subsequent oral modification, the Court finds that the affidavit presented by Triad is insufficient to establish that the parties to the contract intended to make a modification. First, the affidavit contains inadmissible evidence in the form of hearsay. Second, there is no indication that, at the time of the conversation, Ms. Krausen was in a position to bind CCB to a modification of the contract. Finally, it is far from clear that Ms. Krausen's confirmation to Mr. Anstey establishes any intent to modify the agreements. Rather, the conversation appears to simply show how Mr. Anstey and Ms. Krausen interpreted the agreements at the time.

## VI. Conclusion

For the forgoing reasons, the Defendant's Motion for Summary Judgment **(#36)** is **GRANTED**. The Clerk of the Court is directed to enter judgment in favor of the Defendant on Triad's claim for declaratory judgment under the Right Sky Participation Agreements.

As to the remaining claims, the parties shall begin preparation of a Proposed Pretrial Order pursuant to the previously-issued Trial Preparation Order **(#18)** and shall jointly contact chambers to promptly schedule a Pretrial Conference.

Dated this 25th day of March, 2013.

BY THE COURT:

_____

Marcia S. Krieger
Chief United States District Judge