IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 11-CV-1220-MSK-BNB

TRIAD BANK, a Missouri chartered bank,

        Plaintiff,

v.

FIRST-CITIZENS BANK & TRUST COMPANY, A North Carolina chartered commercial bank,

        Defendant.

---

## DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S SECOND MOTION FOR LEAVE TO AMEND COMPLAINT (Dkt. # 44)

---

Defendant First-Citizens Bank & Trust Company ("First-Citizens"), by and through the undersigned counsel, respectfully submits the following Response in Opposition to Plaintiff's Second Motion for Leave to Amend Complaint ("Second Motion"), filed April 23, 2013 (Dkt. #44),[1] and in opposition thereto, and with reference to the capitalized terms therein, states as follows:

### INTRODUCTION

Plaintiff's Second Motion seeks to amend Plaintiff's complaint by adding a claim for declaratory relief that Plaintiff is entitled to an accounting and pro-rata share of loss share payments allegedly received by First-Citizens from the Federal Deposit Insurance Corporation ("FDIC"). Prior to Plaintiff's filing of its Second Motion, this dispute was largely ready for adjudication: deadlines to amend pleadings had passed, discovery had been completed, and a

---

[1] Although the Second Motion is formally titled a "Motion," Plaintiff's first motion to amend its complaint was filed September 1, 2011 (*see* Docket No. 23), and therefore the pleading to which First-Citizens now responds is more appropriately called a Second Motion.

{JK00480202.4 }

dispositive motion had been filed and ruled-upon. Should the Court grant the Second Motion, this case will, by necessity, require a new scheduling order, the reopening of discovery, and additional rounds of briefing. This resetting of the case's posture to in essence begin anew should be unnecessary, however, as the Second Motion is fatally flawed for the four reasons discussed below.

First, it is questionable whether the Court even has jurisdiction over the declaratory relief claim that Plaintiff desires to add with the Second Motion. The Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), codified in part at 12 U.S.C. § 1821, sets forth administrative remedies for FDIC-related claims and provides that, absent exhaustion of those administrative remedies, "no court shall have jurisdiction" over claims relating to any FDIC act or omission as receiver. 12 U.S.C. § 1821(d)(13)(D). Plaintiff's declaratory relief claim is plainly based on the FDIC's acts, as receiver, pursuant to the Shared Loss Agreement into which it entered, as receiver, with First-Citizens. However, Plaintiff has pled neither compliance with, nor exhaustion of, its administrative remedies, thus the Court's jurisdiction over the proposed declaratory relief claim is questionable.

Second, if the Court does have jurisdiction over the declaratory relief claim, Plaintiff provides no explanation for the delay in bringing the Second Motion. The Shared Loss Agreement has been a matter of public record for almost two years, since July 8, 2011, well before the September 1, 2011 deadline to amend pleadings in this case. *See* Scheduling Order (Dkt. # 17). Plaintiff has failed to satisfy its burden of demonstrating good cause why it could not have asserted its claim for declaratory relief before the deadline to amend pleadings. Indeed, for nearly a year in discussions with First-Citizens, Plaintiff has asserted its rights to receive

compensation from the so-called Shared Loss Agreement "payments," but has nevertheless not moved to amend its complaint to assert those claims until now. This undue delay warrants denial of the Second Motion. By seeking to amend the Complaint after the deadline to amend pleadings has passed, the Second Motion in essence seeks a modification of the Court's scheduling order. Scheduling orders may be modified only "for good cause," a standard which Plaintiff cannot meet at this late date, especially given Plaintiff's access to and/or possession of all pertinent information to assert the proposed declaratory judgment claim for years. As Plaintiff freely admits, its "motion herein is not timely...." Second Motion at ¶ 6. Plaintiff is correct in this regard, and the Second Motion should be denied.

Third, the Second Motion should be denied with respect to the addition of the declaratory relief claim because the addition of the claim is futile. First-Citizens has <u>not</u> received the alleged loss share payments from the FDIC. Plaintiff's allegation to the contrary shows a serious misunderstanding concerning the nature of the Shared Loss Agreement. There have simply been no "payments" to which Plaintiff is entitled under the Loan Participation Agreements. Moreover, Plaintiff suggests that the Court should disregard the plain language of the Shared Loss Agreement—which in no uncertain terms states that there are no third party beneficiaries of the Shared Loss Agreement—and instead permit Plaintiff to reap the benefits of a contract to which it is not a party. Plaintiff does not have standing to enforce its interpretation of the Shared Loss Agreement because Plaintiff is not a third party beneficiary thereof.

Finally, the relief the Second Motion seeks will cause Plaintiff undue prejudice. The discovery deadline has long since passed, depriving First-Citizens of an opportunity to prove its numerous affirmative defenses to the proposed declaratory relief claim. Even if discovery is

{JK00480202.4 }                                           3

reopened, First-Citizens will be unduly prejudiced by having to undertake expensive briefing to demonstrate that the relief sought by the Second Motion must fail as a matter of fact and law.

For these reasons as more fully explained below, the Second Motion should be denied insofar as it seeks to add a claim for declaratory relief.

## DISCUSSION

### I. The Court's jurisdiction over the declaratory relief claim is doubtful.

FIRREA provides an administrative process for the resolution of claims pertaining to banks which the FDIC has been appointed receiver. *See generally* 12 U.S.C. §§ 1811 *et seq.* Absent the processing of claims through that administrative process, FIRREA also provides the following:

> Except as otherwise provided in this subsection, no court shall have jurisdiction over...any claim relating to any act or omission of...the [FDIC] as receiver.

12 U.S.C. § 1821(d)(13)(D)(ii) (emphasis added).[2]

As Plaintiff rightly acknowledges, former defendant Colorado Capital Bank ("CCB") "was closed by the Colorado Division of Banking, which appointed the [FDIC] as receiver." Second Motion at ¶ 2. As receiver, the FDIC acted by entering into the Shared Loss Agreement with First-Citizens. Plaintiff's claim for declaratory relief is based on the FDIC's act of entering into the Shared Loss Agreement. *See, e.g.*, Second Motion at Exhibit A, ¶ 32 (describing the "Shared Loss Agreement between the FDIC and [First-Citizens] entered into in conjunction with the Assumption Agreement" to which the FDIC, as receiver, agreed as the basis for claim).

---

[2] The bracketed material is "Corporation" in the original. 12 U.S.C. § 1811(a) defines the FDIC as the "Corporation".

This case was pending against CCB prior to the FDIC's receivership. Plaintiff cannot claim ignorance of the FDIC's actions during the course of this case, and had an obligation to timely assert its claims which implicated the FDIC as those claims arose. There is no indication that Plaintiff has done so, however. Plaintiff has not demonstrated that it has exhausted its administrative remedies under FIRREA. Therefore, the Court very well may not have jurisdiction over the Plaintiff's proposed declaratory relief claim.

Just as 12 U.S.C. § 1821(d)(13)(D)(ii), quoted above, may deprive the Court of jurisdiction over Plaintiff's proposed declaratory relief claim, so may 12 U.S.C. § 1821(d)(13)(D)(i) to the extent the Court determines that Plaintff is attempting to assert a "claim or action for payment from, or any action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver...."

FIRREA "is designed to create a streamlined process for resolving claims against failed banks...." *Multibank 2009-1 RES-ADC Venture, LLC v. PineCrest at Neskowin, LLC*, 857 F. Supp. 2d 1072, 1077 (D. Or. 2012). *See also Campbell v. F.D.I.C.*, 676 F.3d 615, 619 (7th Cir. 2012) (FIRREA's goals include dealing "expeditiously" with failed depository institutions); *Betancourt v. F.D.I.C.*, 851 F.Supp. 126, 129 (S.D.N.Y. 1994) (same). FIRREA's jurisdictional bar in the absence of a claimant's exhaustion of their administrative remedies is crucial to FIRREA's goals. Plaintiff should not be permitted to undermine those goals if Plaintiff has indeed failed to timely assert and exhaust its administrative remedies.

Even if the Court is satisfied of its own jurisdiction over the proposed declaratory relief claim, however, the Court should still deny the Second Motion insofar as it seeks to add that claim for the reasons described below.

II.   **Plaintiff's undue delay in bringing the Second Motion, as well as the lack of good cause for the untimely amendment of the complaint, demands denial of the Second Motion.**

It is well settled that "untimeliness alone is a sufficient reason to deny leave to amend especially when the party filing the motion has no adequate explanation for the delay." *Frank v. U.S. West, Inc.,* 3 F.3d 1357, 1365-66 (10th Cir. 1993). Plaintiff has no adequate explanation for its failure to timely assert the declaratory judgment claim, and for that reason alone the Court should deny the Second Motion.

By design or neglect, Plaintiff did not attach the Purchase and Assumption Agreement (of which the Shared Loss Agreement is a part) to the Second Motion and omits any mention of when that agreement was reached. The Purchase and Assumption Agreement, a copy of which is attached as Exhibit A, was finalized on July 8, 2011—nearly two months before the September 1, 2011 deadline to amend pleadings. There is simply no reason why Plaintiff could not have asserted its declaratory relief claim before the September 1, 2011 deadline.

In fact, Plaintiff has been asserting its entitlement to payments pursuant to the Shared Loss Agreement since February of 2012, as noted in the correspondence attached hereto as Exhibit B. If Plaintiff thought it was entitled to payments pursuant to the Shared Loss Agreement over a year ago, at the very least it should have sought to assert that claim then, rather than wait until now to do so.

Instead, it appears that Plaintiff—by its own admission—waited until the motion for summary judgment was decided and then, dissatisfied with the result of that motion, decided to bring the present motion. *See* Second Motion at ¶ 10. Plaintiff's dissatisfaction with recent rulings does not justify Plaintiff's delay in seeking to bring its declaratory relief claim or make

the delay any less "undue." If Plaintiff had a right to an accounting and payment after the summary judgment ruling, as it presently alleges, it would have had such a right before the ruling and should have timely so asserted.

When a party files a motion to amend after the Scheduling Order's deadline has passed, a "two step analysis" is required:

> A "movant must first demonstrate to the court that it has a 'good cause' for seeking modification of the scheduling deadline under Rule 16(b). If the movant satisfies Rule 16(b)'s 'good cause' standard, it must then pass the requirements for amendment under Rule 15(a)."

*Colorado Visionary Acad. v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000) (*citing Dilmar Oil Co., Inc. v. Federated Mutual Ins. Co.*, 986 F. Supp. 959 (D.S.C. 1997), *aff'd*, 129 F.2d 116 (4th Cir. 1997)).[3] The standard for "good cause" under Rule 16(b) "is much different than the more lenient standard contained in Rule 15(a)." *Id.* Under Fed. R. Civ. P. 16(b), "good cause" means that scheduling deadlines cannot be met despite a party's diligent efforts. *Id.* A party's mere failure to recognize that a cause of action is applicable is not good cause for relief. *Id.*

Plaintiff has not been diligent in asserting its alleged rights. Plaintiff cannot demonstrate that "good cause" exists to grant the Second Motion. As such, the Court should deny the Second Motion.

### III.   The Second Motion should be denied as to the declaratory relief claim because such amendment is futile.

"A court properly may deny a motion for leave to amend as futile when the proposed

---

[3] *See also* Recommendation of United States Magistrate Judge Kristen L. Mix in Civil Action No. 09-cv-00799-ZLW-KLM (attached hereto as Exhibit C) at pp. 3-5, analyzing an untimely Motion to Amend under the "good cause" standard; Recommendation adopted at Order in same case (attached hereto as Exhibit D).

amended complaint would be subject to dismissal for any reason, including that the amendment would not survive a motion for summary judgment." *E. Spire Commc'ns, Inc. v. N.M. Pub. Regulation Comm'n*, 392 F.3d 1204, 1211 (10th Cir. 2004) (quotation omitted). As described above, the Court may not have jurisdiction over the proposed declaratory relief claim, so amendment to add that claim may be futile. Additionally, as described below, amendment to add the claim is futile due to numerous defects in the claim. As such, the Court should deny the Second Motion insofar as it seeks to add that claim.

**A.    The declaratory relief claim must fail because the Shared Loss Agreement does not provide for "payments" under the Loan Participation Agreements.**

Plaintiff seeks to assert the following allegation:

> Presently, [Plaintiff] estimates upon information and belief that [First-Citizens] has received approximately $407,722.00 in shared loss recoveries related to the loans underlying the First and Second Right Sky Participations.

Second Motion at Exh. A, ¶ 36. Plaintiff additionally "estimates upon information and belief" that First-Citizens has received "approximately $314,128.00 in shared loss recoveries related to the loans underlying the Maxwell Place Participation." *Id.* at Exh. A, ¶ 37. However, these allegations rely on incomplete "information" and groundless "belief".

The Shared Loss Agreement does not operate simply on the basis of First-Citizens incurring losses on the Maxwell and Right Sky loans and the FDIC writing checks to First-Citizens. Instead, the Shared Loss Agreement assesses the value, over a period of time, of all the assets that First-Citizens purchased and adjusts credits to First-Citizens, if any, accordingly. *See* Shared Loss Agreement, attached hereto as <u>Exhibit E</u> at §§ 2.1-2.11 (explaining the changing valuation of the purchased assets over time whereby losses subject to sharing with the FDIC may be offset by other events).

The FDIC's calculation of a "Covered Loss" is reduced by First-Citizens' other "Recoveries," an amount which is calculated by considering many different categories of events. *Id.* at §§ 2.3 and 2.9. In fact, in certain situations First-Citizens will actually have to pay the FDIC a sum determined by the formulae in the Shared Loss Agreement. *Id.* at § 2.4(b) (section entitled "Payments by the Assuming Institution," emphasis in original). Moreover, calculations in one quarter concerning the overall portfolio that First-Citizens purchased can affect the obligations between the FDIC and First-Citizens in subsequent quarters. *See id.* at § 2.4(d) ("If Net Recoveries received in a Recovery Quarter is a negative amount, then the amount of such Net Recoveries shall be offset against the amount of gross Recoveries in the following Recovery Quarter..."). Indeed the various adjustments to the obligations owed between First-Citizens and the FDIC under the Shared Loss Agreement may not be resolved until July of 2019, eight years after the execution of the Shared Loss Agreement. *Compare* Exh. E at § 2.5 (describing First-Citizens' "True-Up Payment" obligations with respect to the True-Up Date) *with id.* at pp. C-31, C-32, C-36, and C-37 (defining the "True-Up Date" as forty-five days after the Termination Date, which is the last day of the quarter following the eighth anniversary of the FDIC's closure of CCB).

In essence, any credits due to First-Citizens under the Shared Loss Agreement only serve to reduce the ultimate determination of First-Citizens' purchase price for CCB's assets. *See generally* Exhs. A and E. This is not a "payment" as contemplated by paragraph 8 of the Participation Agreements. Plaintiff reads the Participation Agreement too broadly, and the proposed declaratory relief claim is not only insufficiently pled, but is not a proper basis for relief.

{JK00480202.4 }                                       9

**B.      Plaintiff is not a third party beneficiary of the Shared Loss Agreement but its proposed additional claim asserts third party beneficiary rights.**

Plaintiff cannot argue that the provisions of the Shared Loss Agreement should be interpreted differently, as it "is not an intended third party beneficiary of the Purchase and Assumption Agreement [of which the Shared Loss Agreement is a part] and therefore 'lacks standing to enforce its interpretation of that Agreement.'" *Branch Banking & Trust Co. v. Maxwell*, 2013 WL 1136578 (11th Cir. Mar. 19, 2013) (quoting *Interface Kanner, LLC v. JPMorgan Chase Bank*, 704 F.3d 927, 934 (11th Cir. 2013)).  The Shared Loss Agreement quite explicitly states that there are no third party beneficiaries to that Agreement:

> This Agreement is for the sole and exclusive benefit of the parties and their respective permitted successors and permitted assigns and there shall be no other third party beneficiaries.  Nothing in this Agreement shall be construed to grant to any other Person any right, remedy or claim under or in respect of this Agreement or any provision hereof.

Exh. E at § 6.4.  Similarly, the Purchase and Assumption Agreement expressly provides that it does not create any rights in third parties.  Exh. A at § 13.10 ("nothing expressed or referred to in this Agreement is intended or shall be construed to give any Person other than the [parties] any legal or equitable right, remedy or claim").

Furthermore, the FDIC itself has stated, in no uncertain terms, that any benefit that an Assuming Institution—a bank which purchases assets from the FDIC concerning which the FDIC held a receivership—"do not constitute 'payments' under loan participation agreements and the participant is not entitled to any of those funds." *See* Letter from FDIC's Legal Counsel, attached hereto as Exhibit F.  As much as Plaintiff desires to benefit from the Shared Loss Agreement, it cannot.

Plaintiff's proposed declaratory relief claim in essence says "the FDIC should pay us, not

First-Citizens". As described above, the FDIC has made no payments at all to First-Citizens. Even if the FDIC had made payments, however, Plaintiff paid nothing for the Shared Loss Agreement and would have no rights to benefit therefrom. Plaintiff does not have standing to assert its interpretation of the Shared Loss Agreement, as Plaintiff is not a third-party beneficiary thereof. *Interface Kanner, LLC*, 704 F.3d at 932-33.

## IV. Granting the Second Motion would unduly prejudice First-Citizens.

Undue prejudice to the opposing party is a reason justifying denial of a motion to amend. *Frank v. U.S. W., Inc.*, 3 F.3d 1357, 1365 (10th Cir. 1993). Undue prejudice appears when an amendment "unfairly affects the defendants 'in terms of preparing their defense to the amendment.'" *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1208 (10th Cir. 2006) (*quoting Patton v. Guyer*, 443 F.2d 79, 86 (10th Cir. 1971)). Here, the Court should deny the Second Motion because First-Citizens has several affirmative defenses to Plaintiff's proposed declaratory relief claim concerning which First-Citizens has not had the opportunity to conduct discovery.

For instance, the defenses of waiver and/or laches appear meritorious, as Plaintiff has known about the Shared Loss Agreement for quite some time but has only now asserted its alleged rights. First-Citizens has had neither the opportunity to conduct discovery concerning these defenses, nor file potentially dispositive motions concerning those defenses. Plaintiff appears opposed to reopening discovery and the briefing schedule. *See* Second Motion at ¶ 12 ("Granting leave to file the Second Amended Complaint will not unduly delay these proceedings."). As such, First-Citizens would be unduly prejudiced should the Second Motion be granted, as First-Citizens would be unfairly deprived of its opportunity to fully "prepar[e] [its] defense to the amendment." *Minter*, 451 F.3d at 1208 (internal quotation marks and citation

omitted).

First-Citizens will also be unduly prejudiced if the Court grants the Second Motion and reopens discovery (and sets a briefing schedule based thereon).  It will be an expensive process to demonstrate that Plaintiff cannot prevail, as a matter of law or fact, on its untimely amendment.  This process would, in fact, "unduly delay" these proceedings.  Second Motion at ¶ 12.

## CONCLUSION

Plaintiff has not demonstrated that jurisdiction exists over the proposed declaratory relief claim.  Even if jurisdiction exists, the claim is inexcusably untimely, legally and factually insufficient, and would cause First Citizens undue prejudice.  For the foregoing reasons, the Court should deny the Second Motion insofar as it seeks to add the declaratory relief claim.

Respectfully submitted May 14, 2013

<div style="margin-left:50%">

_____s/ Stuart N. Bennett_____

Stuart N. Bennett, Esq.
Aaron D. Goldhamer, Esq.
JONES & KELLER, P.C.
**ATTORNEYS FOR FIRST-CITIZENS BANK
& TRUST COMPANY**

</div>

{JK00480202.4 }

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the Tuesday, May 14, 2013, a true and correct copy of the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system at the following address:

Geraldine A. Brimmer
Holland & Hart, LLP
1800 Broadway, Suite 300
Boulder, Colorado 80302

Joseph E. Martineau
Lewis, Rice & Fingersh, L.C.
600 Washington, Suite 2600
St. Louis, Missouri 63101

<div align="center">s/ Tammy Harris</div>