IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil No. 11-cv-01220-MSK-BNB

TRIAD BANK,
A Missouri chartered bank

    Plaintiff,

vs.

FIRST-CITIZENS BANK & TRUST COMPANY,
a North Carolina chartered commercial bank,

    Defendant.

### PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT

As and for its Reply in Support of its Motion for Leave to Amend Complaint, plaintiff Triad Bank ("Triad") states as follows:

### INTRODUCTION

Defendant First Citizen's Bank's ("FCB") opposition to Triad's motion seeking leave to amend focusses on the Second Count sought to be asserted in the proposed Second Amended Complaint, *i.e.* the Count adding a claim seeking a declaration related to Triad's entitlement to a pro rata share of shared loss payments it receives related to the participated loans at issue. It does not oppose the elimination of the claim implicitly rendered moot by the Court's recent summary judgment ruling or the specific performance claim rendered moot by FCB's sale of the foreclosed upon collateral, and it does not appear to be challenging the claim asserted in Count I of the proposed amendment. In short, FCB opposes Count II, but not Count I of the proposed Second Amended Complaint.

1912081.1

Though FCB argues that the claim asserted in Count II of the proposed amended complaint is a claim under the Shared Loss Agreement, nothing could be further from the truth. Under the applicable Participation Agreements, as interpreted by the Court in its recent summary judgment ruling, paragraph 8 of the agreements applies (and not the LIFO exhibits), and Triad is only entitled to a pro rata repayment of monies recovered related to the underlying loans. That provision is extraordinarily broad and not limited to recovery through the borrower's repayment, from action taken against the borrower, or from realization derived from the collateral. In addition to all those sources of repayment, Triad is expressly entitled to a share of funds obtained "from any source whatever." This language is simple and straightforward, and it, not the Shared Loss Agreement, is the basis for Triad's claim. The Shared Loss Agreement is simply a source through which funds are obtained from "any source whatever."

FCB presents four arguments why this Court should exercise its discretion to deny leave – (i) that amendment should be denied because the Court lacks jurisdiction in that Triad failed to pursue alleged administrative remedies under FIRREA; (ii) that amendment should be denied because it would be futile; (iii) that amendment should be denied because the claim is untimely; and (iv) that amendment should be denied because FCB would suffer prejudice. Each will be addressed below.

## ARGUMENT

### I. Triad is not seeking relief against the FDIC or FIRREA, and therefore the Court would have jurisdiction over Triad's claim.

FCB rightly points out that FIRREA deprives courts of jurisdiction of claims related to acts or omissions of the FDIC as receiver. 12 U.S.C. §1821(d)(13)(D). Triad, however, is not seeking to pursue any claim against the FDIC for losses suffered as a result of the receivership or actions of the failed bank. It is seeking to recover its pro rata share of the proceeds received by

2

FCB under the loss share agreement in accordance with the unambiguous language of the Participation Agreements, which entitles it to a share of monies derived "from any source whatever." Accordingly, this Court would have jurisdiction of the claims asserted in Count II.

II. **Triad's claim to funds derived "from any source whatever" has merit, and allowing the amendment would not be futile.**

FCB argues that because its recoveries under the Share Loss Agreement are aggregated with its gains, it receives no payments subject to the Participation Agreements. But the aggregation of gains and losses accounted for on a quarterly basis under the Shared Loss Agreement does not change the fact that FCB effectively receives payment related to the underlying loans. FCB claims that Triad "reads the Participation Agreements too broadly" (Response at 9), but suggests no other possible interpretation of the language "from any source whatever."

FCB cites language from the Shared Loss Agreement that rejects any third party beneficiaries and case law holding that such agreements do not create such status. Triad, however, is not seeking third party beneficiary status under the loss share, only asserting its rights under the Participation Agreements. Indeed, FCB's third party beneficiary argument is a red herring.

A participant is not a third party beneficiary under the loans underlying a participation agreement, and has no claim against the underlying borrower. But it has rights *vis-a-vis* the lead bank. Similarly, a participant is not a third party beneficiary under a mortgage securing a participated loan. But but such status is not required for the participant to have rights to the proceeds recovered when the lead bank disposes of the real estate secured by that mortgage. In disposing of the collateral, the lead bank could not avoid its liability to the participant through a

3

contract that the funds received by the lead bank are exclusively its. While lacking a claim against the buyer, the participant would still have a claim against the lead bank.

The situation is really no different here, and the same principle applies. Because it is not a third party beneficiary of the Shared Loss Agreement, Triad may have no viable claim against the FDIC, but it certainly has a contractual claim against FCB under the Participation Agreements for its pro rata share of funds recovered "from any source whatever."

The FDIC letter referenced in FCB's opposition and letter and attached as an exhibit (Response at 10 and Ex. F) is of no moment. First, it is heavily redacted and unattributed. Second, it only generally describes the terms of the participation agreement there being considered, and the language described is much narrower than the Participation Agreements at issue here. The participation agreements considered there specifically reference "payments received '*under*' or '*on*' the participated loan." Here, however, the Participation Agreements reference "payment[s] after default," not "payments on" or "payments under" the loan. More importantly, they reference "payments … from any source whatever." This language is far broader than anything seemingly considered in the FDIC letter. Finally, Triad has received contradicting indication from the FDIC in an email from the Regional Director of the FDIC's Kansas City office, who said that a Loss Share Agreement has no effect on a participation agreement. (*See* Exhibit 1).

Of course, neither of these letters/emails has any binding significance, and FCB cites no precedent that would somehow exclude payments under a loss share from being a payment from "any source whatever." The FDIC's position is not particularly relevant insofar as the parties' respective obligations under the Participation Agreements. Rather, the interpretation of the

4

"from any source whatever" language of the Particpation Agreements s is a question of law for the Court to decide, and that is all Triad is asking.

### III.    FCB will not suffer undue prejudice.

FCB's claim of prejudice centers on its claim that it will need to undertake discovery. But the issue is a straightforward one of contractual interpretation and a question of law requiring nothing more than reference to the language of the Participation Agreements and a determination whether monies received under a loss share arrangement are monies received "from any source whatever."

To the extent FCB claims a need for discovery related to a purported waiver or laches defense, its position regarding the timeliness of the motion for leave shows that it has the evidence it needs, and it shows that these defenses have no merit as it knows that Triad has been asserting its claim since at least February 2012.

### IV.    Though sought after the time set forth in the Scheduling Order, good cause exists to allow the amendment.

When the case was first filed it was against CCB and there was no concept yet of a recovery from a loss-share agreement. After knowledge of a potential loss share payment related to the Right Sky Participation Agreement, Triad asserted its claim and requested information from FCB. FCB rejected the claim and refused to provide information about the loss share recovery.

The Maxwell Place Participation remained a performing loan, so the loss share was not implicated. (*See* First Am. Cmplt., Doc. 28, ¶25; Answer, Doc. 30, ¶25). Even after the Maxwell Place loan went into default, and the collateral foreclosed, it remained unclear whether a loss would result, and if so, how much. That issue was resolved just one month ago, on April 25, 2013, when FCB advised Triad that it had sold the real estate on March 25, 2013, without

5

any prior notice to Triad. While suspicion existed prior to that time that a loss would be incurred, only at that point did it become clear that a loss was a reality and that there would be a loss share recovery. Accordingly, Triad cannot be faulted for not asserting a claim that did not yet exist with respect to the Maxwell Place Participation.

Moreover, while FCB points out counsel's demand for information regarding the Right Sky recovery in late February 2012, it disregards the fact that its summary judgment motion was filed shortly after that (Doc. 36) and remained pending until the March 25, 2013 ruling (Doc. 43), which held that paragraph 8 of the Participation Agreements containing the "from any source whatever" language and not the Exhibits referencing a LIFO priority in "repayment or enforcement of collateral" was the applicable provision.

Finally, as pointed out in the motion seeking leave, judicial efficiency is best served by permitting resolution of this contractual dispute in this action rather than requiring Triad to file a subsequent action and burdening this Court or some other court with a new suit.

## CONCLUSION

For all the above reasons, and for the reasons expressed in its motion for leave, plaintiff Triad Bank respectfully moves that this Court exercise its discretion and grant it leave to file its Second Amended Complaint.

Respectfully submitted,

By: s/ Joseph E. Martineau
Joseph E. Martineau
LEWIS, RICE & FINGERSH, L.C.
600 Washington, Suite 2500
St. Louis, Missouri 63101
Telephone: 314/444-7729
Facsimile: 314/612-7729
E-mail: jmartineau@lewisrice.com

Geraldine A. Brimmer
HOLLAND & HART, LLP
One Boulder Plaza
1800 Broadway, Suite 300
Boulder, Colorado  80302
Telephone: 303/473-2733
Facsimile: 303/473-2720
E-mail: gbrimmer@hollandhart.com

ATTORNEYS FOR PLAINTIFF
TRIAD BANK

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the above and foregoing document was served via the Court's electronic filing system, this 28th day of May 2013, on:

Stuart N. Bennett
**JONES & KELLER, P.C.**
1999 Broadway, Suite 3150
Denver, CO 80202
Telephone: 303/376-8410
E-mail:     sbennett@joneskeller.com

By: ___/s/ Joseph E. Martineau_____

7