## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil No. 11-cv-01220-MSK-BNB

TRIAD BANK,
A Missouri chartered bank

      Plaintiff,

vs.

FIRST-CITIZENS BANK & TRUST COMPANY,
a North Carolina chartered commercial bank,

      Defendant.

### SECOND AMENDED COMPLAINT FOR
### DECLARATORY JUDGMENT AND MONEY DAMAGES

      Plaintiff Triad Bank ("Triad"), for its cause of action seeking money damages and declaratory relief against defendant First-Citizens Bank & Trust Company ("FCB"), as successor in interest to Colorado Capital Bank ("CCB"), states:

### NATURE OF THIS ACTION

      1.     Triad is a participant in real estate loans in which CCB was the lead or agent bank, and to which FCB assumed all liabilities and obligations by virtue of an agreement with the Federal Deposit Insurance Corporation ("FDIC"). In Count I, Triad seeks money damages for CCB's and (by virtue of its assumption of CCB's liabilities and obligations) FCB's breach of an agreement to fund a subordinated loan to a borrower. In Count II, brought pursuant to 28 U.S.C. §2201, Triad seeks a declaration that it is entitled to receive its pro rata share of funds received by FCB under a loss share agreement with the FDIC in accordance with provisions in the relevant participation agreements which provide that Triad is entitled to its pro rata share of any payment related to the loans "from any source whatever."

1699332.11

## THE PARTIES

2.      Triad is a Missouri state chartered bank, in good standing, with its principal place of business located at 10375 Clayton Road, Frontenac, Missouri 63131.  Triad is a citizen of the State of Missouri.

3.      At all times relevant prior to July 8, 2011, CCB was a Colorado state chartered bank with its principal place of business located at 7505 Village Square Drive, #101, Castle Rock, Colorado 80108.  CCB is a citizen of the State of Colorado.

4.      On July 8, 2011, CCB was closed by the Colorado Division of Banking, which appointed the FDIC as receiver.  Immediately thereafter, FCB, a North Carolina-chartered commercial bank, acquired most of the assets and assumed most of the liabilities of CCB pursuant to a Purchase and Assumption Agreement (the "Assumption Agreement") between FCB and the FDIC in its corporate capacity and as receiver for CCB.  The assets purchased by FCB include the loans which are the subject of this proceeding and all asset-based litigation and proceedings relating thereto.  As a consequence, FCB is the successor-in-interest to CCB and is the real party in interest in this proceeding in the place and stead of CCB.  Further FCB has assumed all right, title and liabilities related to the loans and participation agreements which are at issue in this litigation.

5.      FCB is a North Carolina state chartered commercial bank, having its principal place of business in Raleigh, North Carolina, and is a citizen of the State of North Carolina.

6.      On August 30, 2011, this Court entered its Order substituting FCB as defendant in place of CCB in this action (Doc. 19-1).

## JURISDICTION AND VENUE

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 based on diversity of citizenship of the parties.  Triad is a citizen of the State of Missouri, CCB was a citizen of the State of Colorado, and FCB is a citizen of the State of North Carolina. Further, the amount in controversy exceeds $75,000, exclusive of interest and costs, in that the value of Triad's interest in the loans and participations at issue well exceeds $75,000 and accordingly the right or viability of the legal claim to be declared is in excess of $75,000.

8.      Venue is proper in this Court pursuant to a forum selection clause in the subject agreements and pursuant to 28 U.S.C. §§1391(a)(3) and 1391(c).

### COUNT I
### (Money Damages for Breach of Contract -- Maxwell Place Participation)

For Count I of its Second Amended Complaint, Triad states:

9.      Triad realleges and incorporates herein by reference the allegations of paragraphs 1 through 8 hereof as if fully set forth in this Count I.

10.     Some time prior to October 17, 2008, CCB agreed to loan $2,700,000 to Chanin-Maxwell, LLC for a residential development called Maxwell Place in Longmont, Colorado ("Chanin-Maxwell Loan").  The Chanin-Maxwell Loan was secured by a mortgage on Maxwell Place.

11.     On or about October 17, 2008, Triad and CCB entered into a Participation Agreement ("Chanin-Maxwell Participation Agreement"), a true and correct copy of which is attached hereto as Exhibit 1, under which Triad agreed to purchase a $2,000,000 participating interest in the $2,700,000 Chanin-Maxwell Loan.

12.     Exhibit A to the Chanin-Maxwell Participation Agreement was a form which contained a provision called "Method of Advances and Repayments" and provided three

3

alternatives for the participant's purchase and repayment on a "Pro Rata," "LIFO" or "FIFO" basis, with a blank space for selecting one of these alternatives. In the case of the Chanin-Maxwell Participation Agreement, the "LIFO" provision was checked. It provided as follows:

> LIFO. Participant shall be required to pay the purchase price for the Participation only after Seller has advanced Seller's entire share of the principal of the Loan. Repayments of the Loan (by repayment or by enforcement of collateral) shall be first paid to Participant until all of Participant's purchase price, and accrued interest, and repayment of contributions to fees and expenses have been paid in full, whereupon Participant will have no further interest in the Loan.

13.     In and around March 2010, CCB determined that Chanin-Maxwell lacked the financial means and capacity to complete the Maxwell Place development. At that point, $1,855,000 of the loan had been funded, with Triad having funded $1,150,000 of that amount.

14.     To complete the development of Maxwell Place and to avoid the need to downgrade the Chanin-Maxwell Loan on its books and possible default and foreclosure, CCB requested Triad to agree to an arrangement under which:

a.     CCB would loan $1,855,000 to a new borrower, Maxwell Place, LLC;

b.     Using the new $1,855,000 loan, Maxwell Place, LLC would purchase the outstanding Chanin-Maxwell Loan;

c.     Maxwell Place would through foreclosure or deed in lieu of foreclosure take over all right, title and interest in the proposed Maxwell Place development and complete the residential development;

d.     CCB would commit to an additional loan of $1,245,000 in order to complete the infrastructure for Maxwell Place, which loan would be subordinate to the $1,855,000 loan ("Subordinated Loan"); and

      e.      Triad would agree to a new participation agreement under which it would participate on a pro rata instead of a LIFO basis in the $1,855,000 loan without being required to advance any new funds.

15.      In consideration of CCB's agreement to fund the $1,245,000 Subordinated Loan to complete the residential development, Triad agreed to the above arrangement. Accordingly, on or about March 31, 2010, Triad and CCB entered into a new participation agreement ("Maxwell Participation Agreement"), a true and correct copy of which is attached hereto as Exhibit 2. The Maxwell Participation Agreement specifically referenced CCB's agreement to fund the additional $1,245,000 Subordinated Loan to Maxwell Place, LLC and that such loan would be subordinate.

16.      Like the Chanin-Maxwell Participation Agreement, Exhibit A to the Maxwell Participation Agreement was a form which contained a provision called "Method of Advances and Repayments" and provided three alternatives for the participant's purchase and repayment on a "Pro Rata," "LIFO" or "FIFO" basis, with a blank space for selecting one of these alternatives. In the case of the Maxwell Participation Agreement, however, the "Pro Rata" provision was checked. It provided as follows:

> <u>Pro Rata</u>. Participant shall make payments pro rata with Seller's advances of principal on the Loan. Payments on the Loan (including accrued interest, and repayment of contributions to fees and expenses) shall be distributed pro rata between Seller and Participant.

17.      On February 23, 2011, CCB told Maxwell Place, LLC and Triad that it would not fund the $1,245,000 Subordinated Loan. As of the present date, neither CCB nor FCB has funded the $1,245,000 Subordinated Loan.

18.     By virtue of the Assumption Agreement, FCB has assumed all obligations and commitments of CCB to fund the Subordinated Loan referenced in the Maxwell Place Participation and all liabilities related to CCB's breach in failing to do so.

19.     Specifically, Section 2.1 of the Assumption Agreement provides:

> **2.1.    Liabilities Assumed by Assuming Institution**.   The Assuming Institution [FCB] expressly assumes at Book Value (subject to adjustment pursuant to Article VIII) and agrees to pay, perform and discharge, all of the following liabilities of the Failed Bank [CCB] as of the Bank Closing Date, except as otherwise provided in this Agreement (such liabilities referred to as "**Liabilities Assumed**"):  . . .
>
> (j)      liabilities, if any, for Commitments.

20.     Section 1.3 of the Assumption Agreement provides:

> "**Commitment**" means the unfunded portion of a line of credit or other commitment reflected on the books and records of [CCB] to make an extension of credit (or additional advances with respect to a Loan) that was legally binding on [CCB] as of the Bank Closing Date, other than extensions of credit pursuant to the credit card business and overdraft protection plans of [CCB], if any.

21.     At the time of the Assumption Agreement, the Subordinated Loan was unfunded.

22.     At the time of the Assumption Agreement, CCB's approval of and commitment on the Subordinated Loan was reflected on the books and records of CCB.

23.     At the time of the Assumption Agreement, the Subordinated Loan was legally binding on CCB.

24.     CCB failed and refused to fund the Subordinated Loan, and FCB continues to fail to fund the Subordinated Loan despite its assumption of the obligation to do so under the Assumption Agreement.

25.     FCB and CCB have breached the Maxwell Participation Agreement by failing to fund the Subordinated Loan.

26.     Triad has been damaged by FCB's failure to fund the Subordinated Loan because such failure prevented the completion of Maxwell Place and thereby diminished the repayment of Triad's participatory interest under the Maxwell Participation Agreement.   By its own analysis, CCB determined that had the Subordinated Loan been funded, the principal loan would likely have been paid in full.

WHEREFORE, plaintiff Triad Bank prays for judgment against defendant First-Citizens Bank & Trust Company for money damages of $1,150,000 plus interest, for its costs incurred herein, including attorney's fees,  and for such other and further relief as the Court deems proper in the premises.

**COUNT II**
**(For Declaratory Relief that Triad is Entitled to**
**An Accounting of Loss Share Payments Received by FCB and**
**for its Pro Rata Share Thereof under the Participation Agreements)**

For Count II of its Second Amended Complaint, Triad states:

27.     Triad realleges and incorporates herein by reference the allegations of paragraphs 1 through 8 and 10 and 11 hereof as if fully set forth in this Count II.

28.     On or about September 29, 2008, Triad and CCB entered into a Participation Agreement, a true and correct copy of which is attached hereto as Exhibit 3, under which Triad agreed to purchase a $783,328.00 participating interest in a loan totaling $1,293,186.00 from CCB to Right Sky Properties, LLC for a retail development ("First Right Sky Participation Agreement").

29.     On or about October 2, 2008, Triad and CCB entered into a second Participation Agreement, a true and correct copy of which is attached hereto as Exhibit 4, under which Triad agreed to purchase a $1,216,672.00 participating interest in a second loan totaling $2,008,588.00

from CCB to Right Sky Properties, LLC for the same retail development ("Second Right Sky Participation Agreement").

30.    The loans underlying both the First and Second Right Sky Participation Agreements are in default and FCB has exercised its rights to recover against the collateral obtaining therefor the sum of $842,301.46, which it now holds in escrow pending outcome of this case.

31.    The loan underling the Maxwell Place Participation Agreement is in default and FCB has obtained certain funds and exercised its rights to recover against the collateral obtaining therefor the sum of $803,399.10, which it now holds in escrow pending outcome of this case.

32.    Under a Shared Loss Agreement between the FDIC and FCB entered into in conjunction with the Assumption Agreement, FCB will recover 80% of any losses incurred on the assumed loan portfolio purchased through the FDIC, including losses incurred under the loans underlying both the First and Second Right Sky Participation Agreements and the Maxwell Place Participation Agreement.

33.    Under paragraph 8 of both the First and Second Right Sky Participation Agreements and the Maxwell Place Participation Agreement, which this Court has determined is the applicable provision for determining Triad's rights of repayment, after paying expenses, Triad is entitled to its pro rata share of any payment received by FCB after default "from any source whatever."

34.    FCB's recovery under the Shared Loss Agreement is a payment received "from any source whatever," and Triad is entitled to its pro rata share thereof.

35.     Despite demand for such payment, FCB has refused to pay such amounts to Triad or to acknowledge Triad's rights to same.  FCB has also refused to acknowledge its receipt of shared loss recoveries or to account for any amounts received thereby.

36.     Presently, Triad estimates upon information and belief that FCB has received approximately $407,722.00 in shared loss recoveries related to the loans underlying the First and Second Right Sky Participations.  Based on its 55% pro rata interest under those Participation Agreements, Triad estimates it is entitled to a payment of approximately $224,275.00 from this loss share recovery in addition to its 55% pro rata share of the $842,301.46 held in escrow ($463,265.80), for a total recovery of $687,540.80.

37.     Presently, Triad estimates upon information and belief that FCB has received or will be receiving approximately $314,128.00 in shared loss recoveries related to the loans underlying the Maxwell Place Participation.  Based on its 61.99% pro rata interest under that Participation Agreement, Triad estimates is entitled to a payment of approximately $194,728.00 from this loss share recovery in addition to its 61.99% pro rata share of the $803,399.10 held in escrow ($498,027.10), for a total recovery of $692,755.10.

38.     A dispute and controversy between Triad and FCB exists over Triad's rights to share in any loss share recoveries obtained by FCB related to the loans underlying the First and Second Right Sky Participations and the Maxwell Place Participation which is ripe for adjudication by this Court.

WHEREFORE, plaintiff Triad Bank prays that this Court enter an Order and Judgment against defendant First-Citizens Bank & Trust Company as follows:

     A.     Declaring that Triad Bank is entitled to recover its pro rata share of all recoveries under the loans underlying both the First and Second Right Sky Participation Agreements and the Maxwell Place Participation Agreement, including recoveries under the Loss Share Agreement.

     B.     Ordering First-Citizens Bank & Trust Company to provide a full accounting of all funds received under the Loss Share Agreement related to the loans underlying both the First and Second Right Sky Participation Agreements and the Maxwell Place Participation Agreement.

     B.     For its costs incurred herein, including attorney's fees.

     C.     For such other and further relief as the Court deems proper in the premises.

     By: s/ Joseph E. Martineau
          Joseph E. Martineau
          LEWIS, RICE & FINGERSH, L.C.
          600 Washington, Suite 2500
          St. Louis, Missouri 63101
          Telephone: 314/444-7729
          Facsimile: 314/612-7729
          E-mail: jmartineau@lewisrice.com

          Geraldine A. Brimmer
          HOLLAND & HART, LLP
          One Boulder Plaza
          1800 Broadway, Suite 300
          Boulder, Colorado 80302
          Telephone: 303/473-2733
          Facsimile: 303/473-2720
          E-mail: gbrimmer@hollandhart.com

     ATTORNEYS FOR PLAINTIFF
     TRIAD BANK

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of this Second Amended Complaint was served via the Court's electronic filing system, this ___ day of April, 2013, on:

Stuart N. Bennett
Perry L. Glantz
**JONES & KELLER, P.C.**
1999 Broadway, Suite 3150
Denver, CO 80202
Telephone: 303/376-8410
E-mail:     pglantz@joneskeller.com
            sbennett@joneskeller.com


By:    /s/ Joseph E. Martineau

## EXHIBIT 1

11068-5

# PARTICIPATION AGREEMENT

THIS PARTICIPATION AGREEMENT (this "Agreement") made as of October 17, 2008
Between Colorado Capital Bank having its principal offices at 7505 Village Square Dr., Castle Rock, CO 80108
("Seller") and Triad Bank ("Participant"). Seller has or intends to make a loan to Chanin-Maxwell, LLC .
("Borrower") as described in Exhibit A hereto (the "Loan"). A copy of the promissory notes, guaranties, security
agreements and other documents evidencing or securing the Loan (the "Loan Documents") have been delivered to
the Participant. Subject to the terms and conditions of this Agreement, Seller and Participant agree as follows with
respect to the sale of an interest in the Loan by Seller to Participant.

1.       Seller hereby sells and Participant hereby purchases an undivided interest in the Loan (the
"Participation"). Participant shall pay to Seller the purchase price for the Participation as set out in Exhibit A. The
purchase price shall be paid in cash or by wire transfer of funds to the Seller no later than the next business day after
the Seller requests payment therefor. If the Loan is a line of credit or will otherwise be disbursed in multiple
advances, Participant shall be required to make advances as required from time-to-time by Seller up to aggregate of
Participant's purchase price at any time. Earnings on the Participation shall not accrue until payment for the
Participation has been received by Seller in collected funds.

2.       Seller's sale of the Participation is without recourse and without any warranties or representations
expressed or implied except as specifically set forth in this Agreement. Participant represents that it has examined
each of the Loan Documents and has made an independent review and judgement concerning the Loan, including the
credit risk involved therein and the adequacy of the security therefor. Seller shall not be responsible to the
Participant, with respect to any recitals, statements, covenants, warranties or representations contained in the Loan
Documents or any financial statement or data furnished by the Borrower nor shall the Seller be required to inquire as
to the truth or accuracy of any such items. The Seller shall not be responsible to the Participant for any fraud or
misrepresentation on the part of the Borrower or its agent regarding the execution, genuineness, validity,
enforceability, or effectiveness of the Loan Documents. Notwithstanding any of the foregoing, in the event the Loan
is in default, the Seller shall provide the Participant prior notice of any scheduled meeting with the borrower, and
provide the Participant a reasonable opportunity to attend and participate in such meeting.

3.       Except as provided in paragraph 8, any payments made on the Loan, and any proceeds of any
collateral for the Loan shall be applied in the order identified in the Loan Documents and divided between Seller and
Participant as set out in Exhibit A.   If, at any time, repayment of the loan, as determined in the Sellers reasonable
opinion is impaired, or if, at the time the last expected payment from the Borrower is received, there are not
sufficient funds to repay Participant's interest in full, all payments shall be first applied to advances of principal, then
to accrued interest, and then to repayment of advances made to pay fees and expenses, and Participant shall have no
claim against Seller for any remaining balance. Seller shall receive all payments of principal, interest, default
penalties, collateral proceeds, and other amounts payable on the Loan. Seller shall, within five (5) business days
after receipt, report and remit to the Participant its share of such payments. Participant shall apply payments as
instructed by the Seller as of the effective date the payment was received by the Borrower.

4.       Seller shall hold in its name and have title to and retain possession or control of, the Loan Documents
and all other security documents, papers and other items provided for or required under the Loan Documents. Seller
shall maintain records reflecting the Participation, any advances made to the Borrower, and all payments received on
the Loan and disposition thereof. With reasonable advance notice, Participant and the examining regulatory
authority of Participant or Seller shall have the right during the normal business hours of Seller to inspect Seller's
books, records and documents relating to the Loan. Seller will provide Participant with copies of all records, and
any and all documents including insurance policies which evidence, secure or support the Loan.

5.       Seller shall be entitled to rely on any document or statement believed by it to be genuine and correct.
Neither the Seller nor any of its officers, directors, agents, representatives or employees shall be liable for any action
or omission in connection with this Agreement or the Loan Documents except for its gross negligence or willful
misconduct. Seller shall be entitled to the advice and assistance of legal counsel and to rely on any opinions of
counsel with respect to the Loan Documents, this Agreement, and all matters incident thereto. Seller shall not be
liable for any action taken or omitted in good faith in reliance on such legal opinions. Errors in judgment shall not
be considered gross negligence or willful misconduct for purposes of this Agreement.

6.       Seller may, with notice to, but without any necessity of securing the consent of, Participant: (a)
declare a default, accelerate the maturity of the Loan, and demand payment of the Loan; (b) institute legal

EXHIBIT 1

proceedings to enforce the Loan; (c) compromise and accept any condemnation or casualty, award relating to any collateral; (d) foreclose upon the collateral securing the Loan; and (e) accept additional collateral; (f) release any existing collateral for the Loan. Either Seller or Participant may purchase the collateral at any foreclosure sale, and the proceeds of such purchase shall be distributed between Purchaser and Seller as set out herein. Seller and Participant agree that, in any dealings or negotiations between Seller and parties other than Participant, Seller shall be considered to be the sole owner and holder of the Loan, and such other parties may look to Seller as the sole owner and holder thereof without inquiry as to whether Participant has concurred in such dealings or negotiations.

7.  If the Loan is declared in default and payment is accelerated as a result thereof, Seller at its option, but without any obligation to do so, may repurchase Participant's share of the balance of principal and accrued interest then owing on such Loan.

8.  Notwithstanding any other provision herein to the contrary, if the Seller receives a payment after default of the Loans, and whether pursuant to a demand for payment or as a result of a legal proceeding against the Borrower(s) or through payment by or action against any other person in any way liable on account of the indebtedness evidenced by such Loans, or from realization upon any security for the Loans, or from any source whatever, such payment shall be applied in the following order:

    (a)    To the costs and expenses, including attorney's fees, incurred in effecting such recovery or in enforcing any right or remedy under the Loan Documents or in realizing upon any security for the Loans;

    (b)    To accrued interest payable of which an amount represents its pro rata share at the time of default shall be paid to the Participant; and

    (c)    To the unpaid principal amount of the Loans, of which an amount representing its pro rata share at the time of default shall be paid to the Participant.

Notwithstanding all foregoing provisions, it is expressly understood and agreed that any losses sustained with respect to the Loans shall be borne by the Participant in accordance with its pro rata share at the time of maturity or default.

9.  Participant shall reimburse Seller for Participant's share of all expenses incurred by Seller (including without limitation attorney fees and liabilities to third parties) in the enforcement and administration of the Loan and this Agreement, and for all payments or advances made by Seller pursuant to the terms of any Loan Documents for the purpose of protecting the security of the Loan within thirty (30) days after request by Seller. The amount of reimbursement required from Participant shall be equal to the percentage of Participant's interest in the principal amount of the Loan at the time such expense is incurred. If the Loan is declared in default, the amount of reimbursement from the Participant shall be equal to the percentage of Participant's interest in the principal amount of the Loan at the time the default is declared, and such percentage shall not reduce if any amounts are recovered on the loan.

10.  If Participant receives payment on the Loan from any source in greater amount than provided in Exhibit A, Participant shall pay to the Seller such sums as shall be necessary to cause such payment to be divided between Seller and Participant in accordance with their rights under Exhibit A. Participant subordinates any other claims it may have against Seller or Seller's property to the Loan until the Loan is paid in full.

11.  Nothing herein shall constitute either party the agent for the other, nor render the relationship between the Seller and Participant as one of joint venture or partnership. Participant has purchased hereunder an undivided interest in the Loan. Neither Seller nor Participant makes any expressed or implied representation or warranty of any kind other than those specifically set out herein.

12.  Neither Seller nor Participant may assign or transfer all or any portion of its interest in the Loan without first delivering to the other party written notice ("Transfer Notice") offering to the other party the right to purchase (or repurchase, as the case may be) all or a portion of the transferring party's interest in the Loan. The Transfer Notice shall set forth the amount of the Loan that will be transferred ("Transferred Amount"). In the event the Participant is the transferring party, the Participant shall provide to the Seller a written agreement from a proposed purchaser, containing terms substantially like those set forth herein, evidencing such third party's intent to purchase all or any portion of the Participation. The non-transferring party shall have 10 days from the receipt of such Transfer Notice to purchase the Transferred Amount. Any assignment in contravention of the provisions set forth herein shall be void.

13.  This Agreement contains the entire agreement between the parties and shall not be modified in any respect except by an amendment in writing signed by both parties. The invalidity of any portion of this Agreement shall in no way affect the balance thereof. This Agreement shall remain in effect until the Loan is fully paid. This Participation Agreement is executed under and shall be governed and construed in accordance with the laws of the

State of Colorado, and the parties hereto submit to the jurisdiction of the courts of Colorado. This Agreement shall inure to the benefit of and be binding on the successors and permitted assigns to the parties hereto.

PARTICIPANT

By: _____

Print Name:   Thomas Anstey

Title:   Assistant Vice President

Colorado Capital Bank ("Seller")

By: _____

Print Name: Jeff Stiffler

Title: Senior Vice President

## EXHIBIT A – PARTICIPATION AGREEMENT

**Seller:**        Colorado Capital Bank

**Participant:**      Triad Bank

**Borrower:**       Chanin-Maxwell, LLC

**Loan Amount:**   $2,700,000.00    Participation   $2,000,000.00
                                    Participation Rate:  CCB Base +1.5%
                                    Rate Change Frequency:  Daily
                                    Loan Fees Paid to Participant: $5,000.00

**Type of Advances:**       X Single Advance          Multiple Advance        Line of Credit

**Special Terms**
**Regarding Interest :**       If this box is checked, then notwithstanding any provisions in the Loan Documents, the interest payable to the Participant with respect to the Loan shall be the following amount based on the amount that Participant has advanced toward the principal of the Loan: _____

**Method of Advances and Repayments (check applicable method):**

         **Pro Rata.**  Participant shall make payments pro rata with Seller's advances of principal on the Loan.  Payments on the Loan (including accrued interest, and repayment of contributions to fees and expenses) shall be distributed pro rata between Seller and Participant.

**X**          **LIFO.**  Participant shall be required to pay the purchase price for the Participation only after Seller has advanced all of Seller's share of the principal of the Loan.  Repayments of the Loan (by repayment or by enforcement of collateral) shall be first paid to Participant until all of Participant's purchase price, and accrued interest, and repayment of contributions to fees and expenses have been paid in full, whereupon Participant will have no further interest in the Loan.

         **FIFO.**  Participant shall be required to pay the purchase price for the Participation immediately, or as otherwise required by paragraph 1 of the Participation Agreement.  Repayments of the loan (by repayment or by enforcement of collateral) shall be first paid to Seller until all of Seller's portion and accrued interest are satisfied.

         **Other. (Describe)**

Colorado Capital Bank                  PARTICIPANT

By: _____        By: _____

Jeff Staffler, Senior Vice President        Thomas Anstey, Assistant Vice President

# EXHIBIT 2

11445-5

# PARTICIPATION AGREEMENT

THIS PARTICIPATION AGREEMENT (this "Agreement") made as of March 31, 2010 between Colorado Capital Bank having its principal offices at 7505 Village Square Dr., Castle Rock, CO 80108 ("Seller") and Triad Bank ("Participant"). Seller has or intends to make a loan to Maxwell Place, LLC ("Borrower") as described in Exhibit A hereto (the "Loan"). A copy of the promissory notes, guaranties, security agreements and other documents evidencing or securing the Loan (the "Loan Documents") have been delivered to the Participant, and a completed list of all Loan Documents delivered by the Seller to the Participant are attached hereto and incorporated herein as Exhibit B. Subject to the terms and conditions of this Agreement, Seller and Participant agree as follows with respect to the sale of an interest in the Loan by Seller to Participant.

This Agreement is for one loan that is a part of the credit facility extended by the Seller to the Borrower. The aggregate commitment is for $3,100,000.00. The Loan sold hereunder is superior to a loan made or to be made by the Seller to the Borrower in the original principal amount of $1,245,000.00 (the "Subordinate Loan" or sometimes referred to in the loan documents as "Note 2"). The payments to be received on the Subordinate Loan, the proceeds (whether cash or non-cash) of all the collateral pledged to secure the Loan and Subordinate Loan must first be applied to the Loan before any principal reduction payment is made to the Subordinate Loan. Notwithstanding the foregoing, nothing herein shall prevent Seller from monthly interest payments for the Subordinate Loan.

1.     Seller hereby sells and Participant hereby purchases an undivided interest in the Loan (the "Participation"). Participant shall pay to Seller the purchase price for the Participation as set out in Exhibit A. The purchase price shall be paid in cash or by wire transfer of funds no later than the next business day after the Seller requests payment therefor. If the Loan is a line of credit or will otherwise be disbursed in multiple advances, Participant shall be required to make advances as required from time-to-time by Seller up to aggregate of Participant's purchase price at any time. Earnings on the Participation shall not accrue until payment for the Participation has been received by Seller in collected funds.

2.     Seller's sale of the Participation is without recourse and without any warranties or representations expressed or implied except as specifically set forth in this Agreement. Participant represents that it has examined each of the Loan Documents and has made an independent review and judgement concerning the Loan, including the credit risk involved therein and the adequacy of the security therefor. Seller shall not be responsible to the Participant with respect to any recitals, statements, covenants, warranties or representations contained in the Loan Documents or any financial statement or data furnished by the Borrower nor shall the Seller be required to inquire as to the truth or accuracy of any such items. The Seller shall not be responsible to the Participant for any fraud or misrepresentation on the part of the Borrower or its agent regarding the execution, genuineness, validity, enforceability, or effectiveness of the Loan Documents. Notwithstanding any of the foregoing, in the event the Loan is in default, the Seller shall provide the Participant prior notice of any scheduled meeting with the borrower, and provide the Participant a reasonable opportunity to attend and participate in such meeting.

3.     Except as provided in paragraph 8, any payments made on the Loan, and any proceeds of any collateral for the Loan shall be applied in the order identified in the Loan Documents and divided between Seller and Participant as set out in Exhibit A. If, at any time, repayment of the loan, as determined in the Sellers reasonable opinion is impaired, or if, at the time the last expected payment from the Borrower is received, there are not sufficient funds to repay Participant's interest in full, all payments shall be first applied to advances of principal, then to accrued interest, and then to repayment of advances made to pay fees and expenses, and Participant shall have no claim against Seller for any remaining balance. Seller shall receive all payments of principal, interest, default penalties, collateral proceeds, and other amounts payable on the Loan. Seller shall, within five (5) business days after receipt, report and remit to the Participant its share of such payments. Participant shall apply payments as instructed by the Seller as of the effective date the payment was received by the Borrower.

4.     Seller shall hold in its name and have title to and retain possession or control of, the Loan Documents and all other security documents, papers and other items provided for or required under the Loan Documents. Seller

4464962

**EXHIBIT 2**

shall maintain records reflecting the Participation, any advances made to the Borrower, and all payments received on the Loan and disposition thereof. With reasonable advance notice, Participant and the examining regulatory authority of Participant or Seller shall have the right during the normal business hours of Seller to inspect Seller's books, records and documents relating to the Loan. Seller will provide Participant with copies of all records, and any and all documents including insurance policies which evidence, secure or support the Loan.

5.     Seller shall be entitled to rely on any document or statement believed by it to be genuine and correct. Neither the Seller nor any of its officers, directors, agents, representatives or employees shall be liable for any action or omission in connection with this Agreement or the Loan Documents except for its gross negligence or willful misconduct. Seller shall be entitled to the advice and assistance of legal counsel and to rely on any opinions of counsel with respect to the Loan Documents, this Agreement, and all matters incident thereto. Seller shall not be liable for any action taken or omitted in good faith in reliance on such legal opinions. Errors in judgment shall not be considered gross negligence or willful misconduct for purposes of this Agreement.

6.     Seller may, with notice to, but without any necessity of securing the consent of, Participant: (a) declare a default, accelerate the maturity of the Loan, and demand payment of the Loan; (b) institute legal proceedings to enforce the Loan; (c) compromise and accept any condemnation or casualty award relating to any collateral; (d) foreclose upon the collateral securing the Loan; and (e) accept additional collateral; (f) release any existing collateral for the Loan. Either Seller or Participant may purchase the collateral at any foreclosure sale, and the proceeds of such purchase shall be distributed between Purchaser and Seller as set out herein. Seller and Participant agree that, in any dealings or negotiations between Seller and parties other than Participant, Seller shall be considered to be the sole owner and holder of the Loan, and such other parties may look to Seller as the sole owner and holder thereof without inquiry as to whether Participant has concurred in such dealings or negotiations. Not withstanding the forgoing, Seller will keep participant informed of all material developments affecting the Borrower, the Loan, and the collateral.

7.     If the Loan is declared in default and payment is accelerated as a result thereof, Seller at its option, but without any obligation to do so, may repurchase Participant's share of the balance of principal and accrued interest then owing on such Loan.

8.     Notwithstanding any other provision herein to the contrary, if the Seller receives a payment after default of the Loans, and whether pursuant to a demand for payment or as a result of a legal proceeding against the Borrower(s) or through payment by or action against any other person in any way liable on account of the indebtedness evidenced by such Loans, or from realization upon any security for the Loans, or from any source whatever, such payment shall be applied in the following order:

   (a)   To the costs and expenses, including attorney's fees, incurred in effecting such recovery or in enforcing any right or remedy under the Loan Documents or in realizing upon any security for the Loans;

   (b)   To accrued interest payable of which an amount represents its pro rata share at the time of default shall be paid to the Participant; and

   (c)   To the unpaid principal amount of the Loans, of which an amount representing its pro rata share at the time of default shall be paid to the Participant.

Notwithstanding all foregoing provisions, it is expressly understood and agreed that any losses sustained with respect to the Loans shall be borne by the Participant in accordance with its pro rata share at the time of maturity or default.

9.     Participant shall reimburse Seller for Participant's share of all expenses incurred by Seller (including without limitation attorney fees and liabilities to third parties) in the enforcement and administration of the Loan and this Agreement, and for all payments or advances made by Seller pursuant to the terms of any Loan Documents for the purpose of protecting the security of the Loan within thirty (30) days after request by Seller. The amount of reimbursement required from Participant shall be equal to the percentage of Participant's interest in the principal amount of the Loan at the time such expense is incurred. If the Loan is declared in default, the amount of reimbursement from the Participant shall be equal to the percentage of Participant's interest in the principal amount

4464962

.of the Loan at the time the default is declared, and such percentage shall not reduce if any amounts are recovered on the loan.

10.    If Participant receives payment on the Loan from any source in greater amount than provided in Exhibit A, Participant shall pay to the Seller such sums as shall be necessary to cause such payment to be divided between Seller and Participant in accordance with their rights under Exhibit A. Participant subordinates any other claims it may have against Seller or Seller's property to the Loan until the Loan is paid in full.

11.    Nothing herein shall constitute either party the agent for the other, nor render the relationship between the Seller and Participant as one of joint venture or partnership. Participant has purchased hereunder an undivided interest in the Loan. Neither Seller nor Participant makes any expressed or implied representation or warranty of any kind other than those specifically set out herein.

12.    Neither Seller nor Participant may assign or transfer all or any portion of its interest in the Loan without first delivering to the other party written notice ("Transfer Notice") offering to the other party the right to purchase (or repurchase, as the case may be) all or a portion of the transferring party's interest in the Loan. The Transfer Notice shall set forth the amount of the Loan that will be transferred ("Transferred Amount"). In the event the Participant is the transferring party, the Participant shall provide to the Seller a written agreement from a proposed purchaser, containing terms substantially like those set forth herein, evidencing such third party's intent to purchase all or any portion of the Participation. The non-transferring party shall have 10 days from the receipt of such Transfer Notice to purchase the Transferred Amount. Any assignment in contravention of the provisions set forth herein shall be void.

13.    This Agreement contains the entire agreement between the parties and shall not be modified in any respect except by an amendment in writing signed by both parties. The invalidity of any portion of this Agreement shall in no way affect the balance thereof. This Agreement shall remain in effect until the Loan is fully paid. This Participation Agreement is executed under and shall be governed and construed in accordance with the laws of the State of Colorado, and the parties hereto submit to the jurisdiction of the courts of Colorado. This Agreement shall inure to the benefit of and be binding on the successors and permitted assigns to the parties hereto.

PARTICIPANT

By: _____

Print Name: Thomas C. Ansley

Title: Asst. Vice President

Colorado Capital Bank ("Seller")

By: _____

Print Name: Robert Haas

Title: Vice President Loans

446496.2

## EXHIBIT A – PARTICIPATION AGREEMENT

Seller:                Colorado Capital Bank

Participant:           Triad Bank

Borrower:              Maxwell Place, LLC

Loan Amount: $1,855,000.00       Participation:              $1,150,000.00  61.99 %

                                 Participation Rate:         5% Fixed

                                 Rate Change Frequency:      N/A
                                 Loan Fees Paid to Participant:   $0.00

Type of Advances:   __X__  Single Advance   _____ Multiple Advance   _____ Line of Credit

Special Terms
Regarding Interest:        If this box is checked, then notwithstanding any provisions in the Loan
Documents, the interest payable to the Participant with respect to the Loan shall be the
following amount based on the amount that Participant has advanced toward the
principal of the Loan: _____

Method of Advances and Repayments (check applicable method):

__X__      Pro Rata. Participant shall make payments pro rata with Seller's advances of principal on
           the Loan. Payments on the Loan (including accrued interest, and repayment of contributions to
           fees and expenses) shall be distributed pro rata between Seller and Participant.

_____      LIFO. Participant shall be required to pay the purchase price for the Participation only after
           Seller has advanced all of Seller's share of the principal of the Loan. Repayments of the Loan
           (by repayment or by enforcement of collateral) shall be first paid to Participant until all of
           Participant's purchase price, and accrued interest, and repayment of contributions to fees and
           expenses have been paid in full, whereupon Participant will have no further interest in the Loan.

_____      FIFO. Participant shall be required to pay the purchase price for the Participation immediately, or
           as otherwise required by paragraph 1 of the Participation Agreement. Repayments of the loan (by
           repayment or by enforcement of collateral) shall be first paid to Seller until all of Seller's portion
           and accrued interest are satisfied.

_____      Other. (Describe)

Colorado Capital Bank                          PARTICIPANT

By: _____                  By: _____

## EXHIBIT B – LIST OF ALL LOAN DOCUMENTS

Bill of Sale

Collateral Assignment of Note and Deed of Trust dated April 7, 2010 (referencing the "Recording Information" as Reception No. 2950310)

Collateral Assignment of Note and Deed of Trust dated April 7, 2010 (referencing the "Recording Information" as Reception No. 2950312)

Assignment of Deed of Trust dated April 7, 2010 (referencing the "Recording Information" as Reception No 2950310)

Assignment of Deed of Trust dated April 7, 2010 (referencing the "Recording Information" as Reception No 2950312)

Loan Purchase and Collateral Security Agreement dated April 7, 2010 (with all "exhibits" attached and unsigned)

# EXHIBIT 3

10612-20

COLORADO CAPITAL
—— B A N K ——
EDWARDS

# PARTICIPATION AGREEMENT

THIS PARTICIPATION AGREEMENT (this "Agreement") made as of September 29, 2008 between Colorado Capital Bank having its principal offices at 7505 Village Square Dr., Castle Rock, CO 80108. ("Seller") and Triad Bank having its principal offices at 10375 Clayton Road Frontenac, MO, 63131 ("Participant"). Seller has or intends to make two loans to Right Sky Properties, LLC ("Borrower") as described in Exhibit A hereto (the "Loan"). A copy of the promissory notes, guaranties, security agreements and other documents evidencing or securing the Loan (the "Loan Documents") have been delivered to the Participant. Subject to the terms and conditions of this Agreement, Seller and Participant agree as follows with respect to the sale of an interest in the Loan by Seller to Participant.

1.        Seller hereby sells and Participant hereby purchases an undivided interest in the Loan (the "Participation"). Participant shall pay to Seller the purchase price for the Participation as set out in Exhibit A. The purchase price shall be paid in cash or by wire transfer of funds to the Seller no later than the next business day after the Seller requests payment therefor. If the Loan is a line of credit or will otherwise be disbursed in multiple advances, Participant shall be required to make advances as required from time-to-time by Seller up to aggregate of Participant's purchase price at any time. Earnings on the Participation shall not accrue until payment for the Participation has been received by Seller in collected funds.

2.        Seller's sale of the Participation is without recourse and without any warranties or representations expressed or implied except as specifically set forth in this Agreement. Participant represents that it has examined each of the Loan Documents and has made an independent review and judgement concerning the Loan, including the credit risk involved therein and the adequacy of the security therefor. Seller shall not be responsible to the Participant, with respect to any recitals, statements, covenants, warranties or representations contained in the Loan Documents or any financial statement or data furnished by the Borrower nor shall the Seller be required to inquire as to the truth or accuracy of any such items. The Seller shall not be responsible to the Participant for any fraud or misrepresentation on the part of the Borrower or its agent regarding the execution, genuineness, validity, enforceability, or effectiveness of the Loan Documents. Notwithstanding any of the foregoing, in the event the Loan is in default, the Seller shall provide the Participant prior notice of any scheduled meeting with the borrower, and provide the Participant a reasonable opportunity to attend and participate in such meeting.

3.        Except as provided in paragraph 8, any payments made on the Loan, and any proceeds of any collateral for the Loan shall be applied in the order identified in the Loan Documents and divided between Seller and Participant as set out in Exhibit A.    If, at any time, repayment of the loan, as determined in the Sellers reasonable opinion is impaired, or if, at the time the last expected payment from the Borrower is received, there are not sufficient funds to repay Participant's interest in full, all payments shall be first applied to advances of principal, then to accrued interest, and then to repayment of advances made to pay fees and expenses, and Participant shall have no claim against Seller for any remaining balance. Seller shall receive all payments of principal, interest, default penalties, collateral proceeds, and other amounts payable on the Loan. Seller shall, within five (5) business days after receipt, report and remit to the Participant its share of such payments. Participant shall apply payments as instructed by the Seller as of the effective date the payment was received by the Borrower.

4.        Seller shall hold in its name and have title to and retain possession or control of, the Loan Documents and all other security documents, papers and other items provided for or required under the Loan Documents. Seller shall maintain records reflecting the Participation, any advances made to the Borrower, and all payments received on the Loan and disposition thereof. With reasonable advance notice, Participant and the examining regulatory authority of Participant or Seller shall have the right during the normal business hours of Seller to inspect Seller's books, records and documents relating to the Loan. Seller will provide Participant with copies of all records, and any and all documents including insurance policies which evidence, secure or support the Loan.

**EXHIBIT 3**

5.      Seller shall be entitled to rely on any document or statement believed by it to be genuine and correct. Neither the Seller nor any of its officers, directors, agents, representatives or employees shall be liable for any action or omission in connection with this Agreement or the Loan Documents except for its gross negligence or willful misconduct. Seller shall be entitled to the advice and assistance of legal counsel and to rely on any opinions of counsel with respect to the Loan Documents, this Agreement, and all matters incident thereto. Seller shall not be liable for any action taken or omitted in good faith in reliance on such legal opinions. Errors in judgment shall not be considered gross negligence or willful misconduct for purposes of this Agreement.

6.      Seller may, with notice to, but without any necessity of securing the consent of, Participant: (a) declare a default, accelerate the maturity of the Loan, and demand payment of the Loan; (b) institute legal proceedings to enforce the Loan; (c) compromise and accept any condemnation or casualty award relating to any collateral; (d) foreclose upon the collateral securing the Loan; and (e) accept additional collateral; (f) release any existing collateral for the Loan. Either Seller or Participant may purchase the collateral at any foreclosure sale, and the proceeds of such purchase shall be distributed between Purchaser and Seller as set out herein. Seller and Participant agree that, in any dealings or negotiations between Seller and parties other than Participant, Seller shall be considered to be the sole owner and holder of the Loan, and such other parties may look to Seller as the sole owner and holder thereof without inquiry as to whether Participant has concurred in such dealings or negotiations.

7.      If the Loan is declared in default and payment is accelerated as a result thereof, Seller at its option, but without any obligation to do so, may repurchase Participant's share of the balance of principal and accrued interest then owing on such Loan.

8.      Notwithstanding any other provision herein to the contrary, if the Seller receives a payment after default of the Loans, and whether pursuant to a demand for payment or as a result of a legal proceeding against the Borrower(s) or through payment by or action against any other person in any way liable on account of the indebtedness evidenced by such Loans, or from realization upon any security for the Loans, or from any source whatever, such payment shall be applied in the following order:

(a)     To the costs and expenses, including attorney's fees, incurred in effecting such recovery or in enforcing any right or remedy under the Loan Documents or in realizing upon any security for the Loans;

(b)     To accrued interest payable of which an amount represents its pro rata share at the time of default shall be paid to the Participant; and

(c)     To the unpaid principal amount of the Loans, of which an amount representing its pro rata share at the time of default shall be paid to the Participant.

Notwithstanding all foregoing provisions, it is expressly understood and agreed that any losses sustained with respect to the Loans shall be borne by the Participant in accordance with its pro rata share at the time of maturity or default.

9.      Participant shall reimburse Seller for Participant's share of all expenses incurred by Seller (including without limitation attorney fees and liabilities to third parties) in the enforcement and administration of the Loan and this Agreement, and for all payments or advances made by Seller pursuant to the terms of any Loan Documents for the purpose of protecting the security of the Loan within thirty (30) days after request by Seller. The amount of reimbursement required from Participant shall be equal to the percentage of Participant's interest in the principal amount of the Loan at the time such expense is incurred. If the Loan is declared in default, the amount of reimbursement from the Participant shall be equal to the percentage of Participant's interest in the principal amount of the Loan at the time the default is declared, and such percentage shall not reduce if any amounts are recovered on the loan.

10.     If Participant receives payment on the Loan from any source in greater amount than provided in Exhibit A, Participant shall pay to the Seller such sums as shall be necessary to cause such payment to be divided between Seller and Participant in accordance with their rights under Exhibit A. Participant subordinates any other claims it may have against Seller or Seller's property to the Loan until the Loan is paid in full.

11.     Nothing herein shall constitute either party the agent for the other, nor render the relationship between the Seller and Participant as one of joint venture or partnership. Participant has purchased hereunder an

undivided interest in the Loan. Neither Seller nor Participant makes any expressed or implied representation or warranty of any kind other than those specifically set out herein.

12.    Neither Seller nor Participant may assign or transfer all or any portion of its interest in the Loan without first delivering to the other party written notice ("Transfer Notice") offering to the other party the right to purchase (or repurchase, as the case may be) all or a portion of the transferring party's interest in the Loan. The Transfer Notice shall set forth the amount of the Loan that will be transferred ("Transferred Amount"). In the event the Participant is the transferring party, the Participant shall provide to the Seller a written agreement from a proposed purchaser, containing terms substantially like those set forth herein, evidencing such third party's intent to purchase all or any portion of the Participation. The non-transferring party shall have 10 days from the receipt of such Transfer Notice to purchase the Transferred Amount. Any assignment in contravention of the provisions set forth herein shall be void.

13.    This Agreement contains the entire agreement between the parties and shall not be modified in any respect except by an amendment in writing signed by both parties. The invalidity of any portion of this Agreement shall in no way affect the balance thereof. This Agreement shall remain in effect until the Loan is fully paid. This Participation Agreement is executed under and shall be governed and construed in accordance with the laws of the State of Colorado, and the parties hereto submit to the jurisdiction of the courts of Colorado. This Agreement shall inure to the benefit of and be binding on the successors and permitted assigns to the parties hereto.

PARTICIPANT                                    Colorado Capital Bank ("Seller")

By: _T. C. Au___                               By: _Allison Krausen___

Print Name: _Thomas C. Anstey___               Print Name: Allison S. Krausen

Title: _Asst. Vice President___                Title: Vice President-Loan Officer

## EXHIBIT A -- PARTICIPATION AGREEMENT

Seller:              Colorado Capital Bank

Participant:         Triad Bank

Borrower:            Right Sky Properties, LLC (Building 6B)

Loan #:              11601027

Loan Amount:         $1,293,186.00

Participation:       $783,328

Participation Rate:  CCB Base Rate + .75% (currently 5.75%)

Rate Change Frequency:  Daily

Loan Fees Paid to Participant:      $5,875

Type of Advances:    _____ Single Advance   ___ Multiple Advance   x Line of Credit

Terms of Advance:   . Once Colorado Capital Bank is fully advanced, subsequent funding will be requested from Triad Bank.

Method of Advances and Repayments (check applicable method):

_____   **Pro Rata.** Participant shall make payments pro rata with Seller's advances of principal on the Loan. Payments on the Loan (including accrued interest, and repayment of contributions to fees and expenses) shall be distributed pro rata between Seller and Participant.

x_____   **LIFO.** Participant shall be required to pay the purchase price for the Participation only after Seller has advanced all of Seller's share of the principal of the Loan. Repayments of the Loan (by repayment or by enforcement of collateral) shall be first paid to Participant until all of Participant's purchase price, and accrued interest, and repayment of contributions to fees and expenses have been paid in full, whereupon Participant will have no further interest in the Loan.

_____   **FIFO.** Participant shall be required to pay the purchase price for the Participation immediately, or as otherwise required by paragraph 1 of the Participation Agreement. Repayments of the loan (by repayment or by enforcement of collateral) shall be first paid to Seller until all of Seller's portion and accrued interest are satisfied.

Colorado Capital Bank                    PARTICIPANT

By: _Allan Thomson_____                  By: _T C Orr_____

**EXHIBIT 4**

10612-15

COLORADO CAPITAL
—— B A N K ——
E D W A R D S

## PARTICIPATION AGREEMENT

THIS PARTICIPATION AGREEMENT (this "Agreement") made as of October 2, 2008 between Colorado Capital Bank having its principal offices at 7505 Village Square Dr., Castle Rock, CO 80108 ("Seller") and  Triad Bank having its principal offices at 10375 Clayton Road Frontenac, MO, 63131 ("Participant"). Seller has or intends to make two loans to Right Sky Properties, LLC ("Borrower") as described in Exhibit A hereto (the "Loan"). A copy of the promissory notes, guaranties, security agreements and other documents evidencing or securing the Loan (the "Loan Documents") have been delivered to the Participant. Subject to the terms and conditions of this Agreement, Seller and Participant agree as follows with respect to the sale of an interest in the Loan by Seller to Participant.

1.    Seller hereby sells and Participant hereby purchases an undivided interest in the Loan (the "Participation"). Participant shall pay to Seller the purchase price for the Participation as set out in Exhibit A. The purchase price shall be paid in cash or by wire transfer of funds to the Seller no later than the next business day after the Seller requests payment therefor. If the Loan is a line of credit or will otherwise be disbursed in multiple advances, Participant shall be required to make advances as required from time-to-time by Seller up to aggregate of Participant's purchase price at any time. Earnings on the Participation shall not accrue until payment for the Participation has been received by Seller in collected funds.

2.    Seller's sale of the Participation is without recourse and without any warranties or representations expressed or implied except as specifically set forth in this Agreement. Participant represents that it has examined each of the Loan Documents and has made an independent review and judgement concerning the Loan, including the credit risk involved therein and the adequacy of the security therefor. Seller shall not be responsible to the Participant, with respect to any recitals, statements, covenants, warranties or representations contained in the Loan Documents or any financial statement or data furnished by the Borrower nor shall the Seller be required to inquire as to the truth or accuracy of any such items. The Seller shall not be responsible to the Participant for any fraud or misrepresentation on the part of the Borrower or its agent regarding the execution, genuineness, validity, enforceability, or effectiveness of the Loan Documents. Notwithstanding any of the foregoing, in the event the Loan is in default, the Seller shall provide the Participant prior notice of any scheduled meeting with the borrower, and provide the Participant a reasonable opportunity to attend and participate in such meeting.

3.    Except as provided in paragraph 8, any payments made on the Loan, and any proceeds of any collateral for the Loan shall be applied in the order identified in the Loan Documents and divided between Seller and Participant as set out in Exhibit A.   If, at any time, repayment of the loan, as determined in the Sellers reasonable opinion is impaired, or if, at the time the last expected payment from the Borrower is received, there are not sufficient funds to repay Participant's interest in full, all payments shall be first applied to advances of principal, then to accrued interest, and then to repayment of advances made to pay fees and expenses, and Participant shall have no claim against Seller for any remaining balance. Seller shall receive all payments of principal, interest, default penalties, collateral proceeds, and other amounts payable on the Loan. Seller shall, within five (5) business days after receipt, report and remit to the Participant its share of such payments. Participant shall apply payments as instructed by the Seller as of the effective date the payment was received by the Borrower.

4.    Seller shall hold in its name and have title to and retain possession or control of, the Loan Documents and all other security documents, papers and other items provided for or required under the Loan Documents. Seller shall maintain records reflecting the Participation, any advances made to the Borrower, and all payments received on the Loan and disposition thereof. With reasonable advance notice, Participant and the examining regulatory authority of Participant or Seller shall have the right during the normal business hours of Seller to inspect Seller's books, records and documents relating to the Loan. Seller will provide Participant with copies of all records, and any and all documents including insurance policies which evidence, secure or support the Loan.

**EXHIBIT 4**

5.      Seller shall be entitled to rely on any document or statement believed by it to be genuine and correct. Neither the Seller nor any of its officers, directors, agents, representatives or employees shall be liable for any action or omission in connection with this Agreement or the Loan Documents except for its gross negligence or willful misconduct. Seller shall be entitled to the advice and assistance of legal counsel and to rely on any opinions of counsel with respect to the Loan Documents, this Agreement, and all matters incident thereto. Seller shall not be liable for any action taken or omitted in good faith in reliance on such legal opinions. Errors in judgment shall not be considered gross negligence or willful misconduct for purposes of this Agreement.

6.      Seller may, with notice to, but without any necessity of securing the consent of, Participant: (a) declare a default, accelerate the maturity of the Loan, and demand payment of the Loan; (b) institute legal proceedings to enforce the Loan; (c) compromise and accept any condemnation or casualty award relating to any collateral; (d) foreclose upon the collateral securing the Loan; and (e) accept additional collateral; (f) release any existing collateral for the Loan. Either Seller or Participant may purchase the collateral at any foreclosure sale, and the proceeds of such purchase shall be distributed between Purchaser and Seller as set out herein. Seller and Participant agree that, in any dealings or negotiations between Seller and parties other than Participant, Seller shall be considered to be the sole owner and holder of the Loan, and such other parties may look to Seller as the sole owner and holder thereof without inquiry as to whether Participant has concurred in such dealings or negotiations.

7.      If the Loan is declared in default and payment is accelerated as a result thereof, Seller at its option, but without any obligation to do so, may repurchase Participant's share of the balance of principal and accrued interest then owing on such Loan.

8.      Notwithstanding any other provision herein to the contrary, if the Seller receives a payment after default of the Loans, and whether pursuant to a demand for payment or as a result of a legal proceeding against the Borrower(s) or through payment by or action against any other person in any way liable on account of the indebtedness evidenced by such Loans, or from realization upon any security for the Loans, or from any source whatever, such payment shall be applied in the following order:

(a)      To the costs and expenses, including attorney's fees, incurred in effecting such recovery or in enforcing any right or remedy under the Loan Documents or in realizing upon any security for the Loans;

(b)      To accrued interest payable of which an amount represents its pro rata share at the time of default shall be paid to the Participant; and

(c)      To the unpaid principal amount of the Loans, of which an amount representing its pro rata share at the time of default shall be paid to the Participant.

Notwithstanding all foregoing provisions, it is expressly understood and agreed that any losses sustained with respect to the Loans shall be borne by the Participant in accordance with its pro rata share at the time of maturity or default.

9.      Participant shall reimburse Seller for Participant's share of all expenses incurred by Seller (including without limitation attorney fees and liabilities to third parties) in the enforcement and administration of the Loan and this Agreement, and for all payments or advances made by Seller pursuant to the terms of any Loan Documents for the purpose of protecting the security of the Loan within thirty (30) days after request by Seller. The amount of reimbursement required from Participant shall be equal to the percentage of Participant's interest in the principal amount of the Loan at the time such expense is incurred. If the Loan is declared in default, the amount of reimbursement from the Participant shall be equal to the percentage of Participant's interest in the principal amount of the Loan at the time the default is declared, and such percentage shall not reduce if any amounts are recovered on the loan.

10.      If Participant receives payment on the Loan from any source in greater amount than provided in Exhibit A, Participant shall pay to the Seller such sums as shall be necessary to cause such payment to be divided between Seller and Participant in accordance with their rights under Exhibit A. Participant subordinates any other claims it may have against Seller or Seller's property to the Loan until the Loan is paid in full.

11.      Nothing herein shall constitute either party the agent for the other, nor render the relationship between the Seller and Participant as one of joint venture or partnership. Participant has purchased hereunder an

undivided interest in the Loan. Neither Seller nor Participant makes any expressed or implied representation or warranty of any kind other than those specifically set out herein.

12.     Neither Seller nor Participant may assign or transfer all or any portion of its interest in the Loan without first delivering to the other party written notice ("Transfer Notice") offering to the other party the right to purchase (or repurchase, as the case may be) all or a portion of the transferring party's interest in the Loan. The Transfer Notice shall set forth the amount of the Loan that will be transferred ("Transferred Amount"). In the event the Participant is the transferring party, the Participant shall provide to the Seller a written agreement from a proposed purchaser, containing terms substantially like those set forth herein, evidencing such third party's intent to purchase all or any portion of the Participation. The non-transferring party shall have 10 days from the receipt of such Transfer Notice to purchase the Transferred Amount. Any assignment in contravention of the provisions set forth herein shall be void.

13.     This Agreement contains the entire agreement between the parties and shall not be modified in any respect except by an amendment in writing signed by both parties. The invalidity of any portion of this Agreement shall in no way affect the balance thereof. This Agreement shall remain in effect until the Loan is fully paid. This Participation Agreement is executed under and shall be governed and construed in accordance with the laws of the State of Colorado, and the parties hereto submit to the jurisdiction of the courts of Colorado. This Agreement shall inure to the benefit of and be binding on the successors and permitted assigns to the parties hereto.

PARTICIPANT

By: _T C Aus_____

Print Name: Thomas C. Anstey

Title: Asst. Vice President

Colorado Capital Bank ("Seller")

By: _Allison Krausen_____

Print Name: Allison S. Krausen

Title: Vice President-Loan Officer

## EXHIBIT A – PARTICIPATION AGREEMENT

<u>Seller</u>:            Colorado Capital Bank

<u>Participant</u>:         Triad Bank

<u>Borrower</u>:          Right Sky Properties, LLC (Building 6A)

<u>Loan #</u>:            11601059

<u>Loan Amount</u>:        $2,008,588

<u>Participation:</u>        $1,216,672

<u>Participation Rate</u>:  CCB Base Rate + .75% (currently 5.75%)

<u>Rate Change Frequency:</u>  Daily

<u>Loan Fees Paid to Participant</u>:     $9,125.04

<u>Type of Advances</u>:   _____ Single Advance    ____ Multiple Advance    _x_ Line of Credit

<u>Terms of Advance</u>:   Once Colorado Capital Bank is fully advanced, subsequent funding will be requested
from Triad Bank.

<u>Method of Advances and Repayments (check applicable method)</u>:

_____   <u>Pro Rata</u>.  Participant shall make payments pro rata with Seller's advances of principal on
the Loan.  Payments on the Loan (including accrued interest, and repayment of contributions to
fees and expenses) shall be distributed pro rata between Seller and Participant.

__x____   <u>LIFO</u>.  Participant shall be required to pay the purchase price for the Participation only after
Seller has advanced all of Seller's share of the principal of the Loan.  Repayments of the Loan
(by repayment or by enforcement of collateral) shall be first paid to Participant until all of
Participant's purchase price, and accrued interest, and repayment of contributions to fees and
expenses have been paid in full, whereupon Participant will have no further interest in the Loan.

_____   <u>FIFO</u>.  Participant shall be required to pay the purchase price for the Participation immediately, or
as otherwise required by paragraph 1 of the Participation Agreement.  Repayments of the loan (by
repayment or by enforcement of collateral) shall be first paid to Seller until all of Seller's portion
and accrued interest are satisfied.

Colorado Capital Bank                    PARTICIPANT

By: _Allison Shauser_____          By: _T-C Au_____