IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 11-CV-1220-MSK-BNB

TRIAD BANK, a Missouri chartered bank,

        Plaintiff,

v.

FIRST-CITIZENS BANK & TRUST COMPANY, A North Carolina chartered commercial bank,

        Defendant.

## DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

Defendant First-Citizens Bank & Trust Company ("First-Citizens"), by and through the undersigned counsel, respectfully submits the following Motion to Dismiss Second Amended Complaint ("Motion"), and in support thereof, and with reference to the capitalized terms in the Second Amended Complaint, states as follows:

## INTRODUCTION

Plaintiff's Second Amended Complaint (Docket # 57) seeks (i) declaratory relief that Plaintiff is entitled to an accounting and pro-rata share of payments allegedly received by First-Citizens from the Federal Deposit Insurance Corporation ("FDIC") pursuant to a Shared Loss Agreement between First-Citizens and the FDIC in its capacity as receiver of a failed bank and (ii) damages due to First-Citizens' alleged breach of a separate contract with Plaintiff. The Second Amended Complaint should be dismissed because this Court lacks jurisdiction over those claims and in any event the declaratory relief claim fails to state a claim upon which relief can be granted.

First, the Court does not have jurisdiction over either claim.  The Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), codified in part at 12 U.S.C. § 1821, streamlines the dispute resolution process in connection with banks that have been taken over by the FDIC.  As such, FIRREA sets forth administrative remedies for FDIC-related claims and provides that, absent exhaustion of those administrative remedies, "no court shall have jurisdiction" over claims relating to any FDIC act or omission as receiver.  12 U.S.C. § 1821(d)(13)(D).  The fact that a third party—in this case First-Citizens—purchased an asset from the FDIC does not extinguish the jurisdictional bar for actions not first presented to the FDIC, even when an action was commenced before the FDIC took over the failed bank.  Plaintiff's Second Amended Complaint alleges neither Plaintiff's compliance with nor exhaustion of its administrative FIRREA remedies.  Pursuant to FIRREA, this Court is without jurisdiction to hear Plaintiff's claims.

Second, the Court should dismiss the declaratory judgment claim for the independent reason that, as a matter of law, it fails to state a claim upon which relief can be granted.  Pursuant to the plain terms of its contract with the FDIC, First-Citizens is only entitled to receive loss share reimbursements from the FDIC relating to losses incurred on First-Citizens' owned portion of the loans.  Loss share reimbursements are not available and have not been received by First Citizens with respect to the portion of the loans owned by Triad as alleged in the Second Amended Complaint.  Plaintiff's allegation to the contrary shows a serious misunderstanding concerning the nature of the Shared Loss Agreement.  The Shared Loss Agreement does not provide for "payments" with respect to the portions of the loans owned by Triad pursuant to the participation agreements.  Moreover, Plaintiff suggests that the Court should disregard the plain

language of the Shared Loss Agreement—which in no uncertain terms states that there are no third party beneficiaries of the Shared Loss Agreement—and instead permit Plaintiff to reap the benefits of a contract to which it is not a party.  Plaintiff does not have standing to enforce its interpretation of the Shared Loss Agreement because Plaintiff is not a third party beneficiary thereof.

For these reasons as more fully explained below, the court should grant this Motion and dismiss the Second Amended Complaint.

## DISCUSSION

**I.     The Court Does Not have Jurisdiction over Plaintiff's Claims.**

**A.     FIRREA's Jurisdictional Bar in the Absence of Exhaustion of Administrative Remedies**

FIRREA "is designed to create a streamlined process for resolving claims against failed banks…." *Multibank 2009-1 RES-ADC Venture, LLC v. PineCrest at Neskowin, LLC*, 857 F. Supp. 2d 1072, 1077 (D. Or. 2012).  *See also Campbell v. F.D.I.C.*, 676 F.3d 615, 619 (7th Cir. 2012) (FIRREA's goals include dealing "expeditiously" with failed depository institutions); *Betancourt v. F.D.I.C.*, 851 F. Supp. 126, 129 (S.D.N.Y. 1994) (same). As such, FIRREA provides an administrative process for the resolution of claims pertaining to banks for which the FDIC has been appointed receiver.  *See generally* 12 U.S.C. §§ 1811 *et seq.*

Absent a party asserting its claims in the administrative process, FIRREA also provides the following:

> Except as otherwise provided in this subsection, <u>no court shall have jurisdiction</u> over

> (i) <u>any</u> claim or action for payment from, or <u>any</u> action seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver…; or
>
> (ii) <u>any</u> claim relating to <u>any</u> act or omission of such institution or the [FDIC] as receiver.

12 U.S.C. § 1821(d)(13)(D) (emphasis added).[1]

The effect of the above provision, in conjunction with the limited grant of jurisdiction in 12 U.S.C. § 1821(d)(6)(A) for judicial review of administratively denied claims, "is to require anyone bringing a claim against or 'seeking a determination of rights with respect to' the assets of a failed bank held by the FDIC as receiver to first exhaust administrative remedies by filing an administrative claim under the FDIC's administrative claims process." *Westberg v. FDIC*, 926 F. Supp. 2d 61, 66-67 (D.D.C. 2013) (*quoting Freeman v. FDIC,* 56 F.3d 1394, 1400 (D.C. Cir. 1995)). As such, "'FIRREA is strict in its demand that claimants first obtain an administrative determination.'" *Id.* at 67 (*quoting Office & Prof'l Emps. Int'l Union, Local 2 v. FDIC,* 962 F.2d 63, 65 (D.C. Cir. 1992)). In enacting FIRREA, "Congress emphasized that the 'exhaustion requirement' was a key linchpin in achieving the legislative goal of resolving the 'bulk of claims against failed financial institutions expeditiously and fairly' through the administrative process 'without unduly burdening the District Courts.' Accordingly, 'exhaustion is a proper prerequisite to further action by the claimant.'" *Feise v. Resolution Trust Corp*., 815 F. Supp. 344, 348 (E.D. Cal. 1993) (citations to legislative history omitted).

---

[1] The bracketed material is "Corporation" in the original. 12 U.S.C. § 1811(a) defines the FDIC as the "Corporation".

Importantly, the jurisdictional bar in the absence of a claimant's exhaustion of administrative remedies remains in operation **even when the FDIC has sold assets of a bank for which the FDIC served as receiver to a third party**:

> The fact that a third party purchases an asset from the FDIC does not extinguish the jurisdictional bar for actions under FIRREA not first presented to the FDIC. *See Village of Oakwood v. State Bank and Trust Co.,* 539 F.3d 373, 386 (6th Cir. 2008) (concluding that to allow claimants to circumvent the provisions of FIRREA's jurisdictional bar by bringing claims against the assuming bank would encourage the very litigation that FIRREA aimed to avoid); and *American First Fed., Inc. v. Lake Forest Park,* 198 F.3d 1259, n. 3 (11th Cir. 1999) (noting that the acquiring bank "having purchased the note from the [FDIC], stands in the shoes of the [FDIC] and acquires its protected status under FIRREA"). Indeed, another District Court has applied these principles in a [related suit] arising out of another loan assumed from the FDIC after the Silver State insolvency. *See Multibank 2010–1 SFR Venture LLC v. Saunders,* 2011 WL 5546960 (D. Nev. 2011), citing *Aber–Shukofsky v. JPMorgan Chase & Co.,* 755 F.Supp.2d 441, 447 (E.D.N.Y. 2010).

*Westberg v. F.D.I.C.*, 926 F. Supp. 2d 61, 67-68 (D.D.C. 2013) (emphasis added). *See also F.D.I.C. v. Newhart*, 892 F.2d 47, 50 (8th Cir. 1989) (describing and agreeing with cases where positions with respect to a failed bank's assets that were available to FDIC are also available to the assuming bank).

FIRREA's demand for exhaustion of administrative remedies prior to any court exercising jurisdiction is unaffected by the pre-receivership existence of an action asserting that claim:

> [A] thorough reading of the applicable provisions in FIRREA fails to produce any language which could be construed to support Mustang's argument that the claim procedures can be dispensed with in cases where suit was filed prior to the appointment of the receiver. We also concur with RTC-receiver's argument that the language in FIRREA, allowing parties with claims to file suit "*or continue* an action commenced before the appointment of the receiver" in the event the claim is disallowed, serves to controvert Mustang's argument. 12 U.S.C. § 1821(d)(6)(A) (emphasis added). The statute clearly requires that each creditor file a claim. 12 U.S.C. § 1821(d)(3)(B)(i). In the

> event the claim is disallowed, the creditor can then file suit *or continue* to pursue a suit already filed. <u>No interpretation is possible which would excuse this requirement for creditors with suits pending, or allow the filing of suit to substitute for the claim process.</u>

*Resolution Trust Corp. v. Mustang Partners*, 946 F.2d 103, 106 (10th Cir. 1991) (emphasis added).  *See also Bruce J. Pierce & Associates, Inc. v. Resolution Trust Corp.*, 987 F.2d 663, 664 (10th Cir. 1993); *In re George Love Farming, LC*, 420 F. App'x 788, 791 (10th Cir. 2011) ("The claims process is mandatory, whether a case is filed after a receiver is appointed or, as here, before the bank failed….  Our only case on point confirms that there is no difference between pre-receivership claims and post-receivership claims with respect to § 1821(d)'s jurisdictional bar.") (*citing Mustang Partners*).

The requirement to exhaust administrative remedies "applies to each claim a plaintiff may have."  *Westberg*, 926 F. Supp. 2d at 70 (collecting authorities dismissing causes of action because they were premised on legal theories not presented to FDIC).

### B.     FIRREA Bars Both of Plaintiff's Claims in the Absence of Plaintiff's Exhaustion of FIRREA Administrative Remedies

This Court lacks jurisdiction over Plaintiff's declaratory relief claim.  As Plaintiff rightly acknowledges, on July 8, 2011, former defendant Colorado Capital Bank ("CCB") "was closed by the Colorado Division of Banking, which appointed the FDIC as receiver."  Second Amended Complaint at ¶ 4.  In its capacity as receiver, the FDIC entered into the Shared Loss Agreement with First-Citizens.  *Id.* at ¶ 32.  Plaintiff's claim for declaratory relief is based on the FDIC's act of entering into the Shared Loss Agreement.  *Id.* at ¶¶ 32, 34, 36-37.  As such, Plaintiff's declaratory relief claim is a claim "relating to" an act of "the [FDIC] as receiver[,]" over which

"no court shall have jurisdiction" absent Plaintiff's compliance with FIRREA's administrative claims process. 12 U.S.C. § 1821(d)(13)(D).

In the declaratory relief claim, Plaintiff seeks a pro-rata share of reimbursements allegedly made by the FDIC to First-Citizens. This claim should have been asserted in the first instance against the FDIC for a determination of whether Triad was entitled to any share of prospective reimbursements to First-Citizens under the Shared Loss Agreement. Apparently Plaintiff never asserted any entitlement to Shared Loss reimbursements directly to the FDIC. Now Plaintiff asserts rights to obtain those reimbursements from First-Citizens. Plaintiff was required to exhaust its administrative FIRREA remedies to preserve any claims it might have against First-Citizens. *See* § I.A., *supra*. However, Plaintiff pleads no facts to suggest that it has done so—apparently because Plaintiff did not exhaust its administrative FIRREA remedies. As such, this Court lacks jurisdiction under FIRREA with respect to the declaratory relief claim.

This Court also lacks jurisdiction over Plaintiff's breach of contract claim for similar reasons. This case was pending against CCB prior to the FDIC's receivership. *See* Complaint dated May 5, 2011. Plaintiff's present breach of contract claim against First-Citizens is based upon the same core allegation as Count I of Plaintiff's original Complaint—that "[o]n February 23, 2011, CCB told Maxwell Place, LLC and Triad that it would not fund [a loan]." *See* May 5, 2011 Complaint at ¶ 18; Second Amended Complaint at ¶ 17. This is plainly an "act or omission" by CCB, which is a "depository institution" for which the FDIC was "appointed receiver". 12 U.S.C. § 1821(d)(13)(D). First-Citizens has now effectively "stepped into the shoes" of the FDIC with respect to Plaintiff's claims for CCB's alleged pre-receivership breaches of contract. *See* § I.A., *supra*. With respect to the breach of contract claim, Plaintiff

alleges no "independent conduct" by First-Citizens "that would give rise to claims against it outside FIRREA" and excuse Plaintiff's apparent failure to exhaust its administrative FIRREA remedies. *Westberg*, 926 F. Supp. 2d at 69. When CCB was placed under FDIC receivership, Plaintiff had an obligation to timely assert its FIRREA administrative remedies, notwithstanding the fact that Plaintiff had already filed suit against CCB. However, the Second Amended Complaint is silent with respect to Plaintiff's compliance with and exhaustion of FIRREA's administrative claims process. Plaintiff has the burden to demonstrate that the Court has jurisdiction over its claims. *Michelson v. Enrich Int'l Inc.*, 6 F. App'x 712, 716 (10th Cir. 2001). Plaintiff has not met that burden.

Even if Plaintiff's filing of its original Complaint prior to the FDIC receivership somehow excuses Plaintiff from compliance with FIRREA's administrative claims process— which it should not—the fact remains that Plaintiff's present breach of contract claim presents a new legal theory of recovery as compared to the original Complaint. Although both were based on the same core allegation—CCB's failure to fund a loan—Count I of Plaintiff's original Complaint sought declaratory judgment type relief, while Plaintiff's current claim asserts breach of contract. This new legal theory should have been presented to the FDIC in the administrative claim process. Triad apparently failed to do so. The court does not have jurisdiction over this new theory of recovery. *Westberg*, 926 F. Supp. 2d at 70.

FIRREA's jurisdictional bar in the absence of a claimant's exhaustion of their administrative remedies is crucial to FIRREA's goals. Plaintiff should not be permitted to undermine those goals if Plaintiff has indeed failed to timely assert and exhaust its administrative remedies. If Plaintiff has in fact so failed, this Court lacks jurisdiction over Plaintiff's claims and

they should be dismissed.

## II. Plaintiff's Declaratory Judgment Claim Fails to State a Claim upon which Relief can be Granted

### A. The Shared Loss Agreement does Not Reimburse Losses with Respect to the Portions of the Loans Owned by Triad.

Even if the Court is satisfied of its own jurisdiction over Plaintiff's declaratory relief claim, the Court should still dismiss that claim. The declaratory relief claim must fail because the Shared Loss Agreement does not provide for "payments" with respect to those portions of the loans owned by Triad under the Loan Participation Agreements. As Plaintiff has already admitted, determination of Plaintiff's declaratory judgment claim is "one of contractual interpretation and a question of law[.]" Doc. No. 52 at 5.

Plaintiff alleges the following:

> Presently, [Plaintiff] estimates upon information and belief that [First-Citizens] has received approximately $407,722.00 in shared loss recoveries related to the loans underlying the First and Second Right Sky Participations.

Second Amended Complaint at ¶ 36. Plaintiff additionally "estimates upon information and belief" that First-Citizens has received "approximately $314,128.00 in shared loss recoveries related to the loans underlying the Maxwell Place Participation." *Id.* at ¶ 37. However, these allegations rely on incomplete "information" and groundless "belief".

The Shared Loss Agreement does not operate simply on the basis of First-Citizens incurring losses on the Maxwell and Right Sky loans and the FDIC writing checks to First-Citizens. Instead, the Shared Loss Agreement assesses the value, over a period of time, of <u>all</u> **the assets that First-Citizens purchased** and adjusts credits to First-Citizens, if any, accordingly. *See* the Shared Loss Agreement, attached hereto in pertinent part as <u>Exhibit A</u> at §§ 2.1-2.11

(explaining the changing valuation of the purchased assets over time whereby losses subject to sharing with the FDIC may be offset by other events).[2] The assets purchased by First-Citizens do not include the participated portions of the loans owned by Triad.

The FDIC's calculation of a "Covered Loss" is reduced by First-Citizens' other "Recoveries," an amount which is calculated by considering many different categories of events. Ex. A at §§ 2.3 and 2.9. In fact, in certain situations First-Citizens will actually have to pay the FDIC a sum determined by the formulae in the Shared Loss Agreement. *Id.* at § 2.4(b) (section entitled "Payments by the Assuming Institution," emphasis in original). Moreover, calculations in one quarter concerning the overall portfolio that First-Citizens purchased can affect the obligations between the FDIC and First-Citizens in subsequent quarters. *See id.* at § 2.4(d) ("If Net Recoveries received in a Recovery Quarter is a negative amount, then the amount of such Net Recoveries shall be offset against the amount of gross Recoveries in the following Recovery Quarter…"). Indeed the various adjustments to the obligations owed between First-Citizens and the FDIC under the Shared Loss Agreement may not be resolved until July of 2019, eight years after the execution of the Shared Loss Agreement. *Compare* Exh. A at § 2.5 (describing First-Citizens' "True-Up Payment" obligations with respect to the True-Up Date) *with id.* at Article 8 (defining the "True-Up Date" as forty-five days after the Termination Date, which is the last day of the quarter following the eighth anniversary of the FDIC's closure of CCB).

---

[2] Despite being repeatedly referenced in the Second Amended Complaint, the Shared Loss Agreement is not attached to the Second Amended Complaint. By attaching the Shared Loss Agreement, First-Citizens does not consider itself to have presented "matters outside the pleadings" in this Motion so as to convert it into a motion for summary judgment as contemplated by F.R.C.P. 12(d). Indeed, reference in a motion to dismiss to documents which are central to a plaintiff's claim does not convert a motion to dismiss into a motion for summary judgment. *Pace v. Swerdlow*, 519 F.3d 1067, 1072 (10th Cir. 2008). Should the Court determine that reference to the Shared Loss Agreement converts this Motion to one for summary judgment, First-Citizens requests the "reasonable opportunity to present all the material that is pertinent to the motion." *Id.*

In essence, any credits due to First-Citizens under the Shared Loss Agreement only serve as a discount to reduce the ultimate determination of First-Citizens' purchase price for CCB's assets.  *See generally* Exh. A; *see also* Purchase and Assumption Agreement, attached hereto in pertinent part as <u>Exhibit B</u>.[3]  This credit is not a "payment" as contemplated by paragraph 8 of the Participation Agreements.  And it is not a payment with respect to any portion of the loans owned by Triad through the Participation Agreements.  Plaintiff reads the Participation Agreements too broadly, and the proposed declaratory relief claim is not a proper basis for relief.

> **B.     Plaintiff is Not a Third Party Beneficiary of the Shared Loss Agreement but its Declaratory Judgment claim Asserts Third Party Beneficiary rights.**

Plaintiff cannot argue that the provisions of the Shared Loss Agreement should be interpreted differently, as it "is not an intended third party beneficiary of the Purchase and Assumption Agreement [of which the Shared Loss Agreement is a part] and therefore 'lacks standing to enforce its interpretation of that Agreement.'"  *Branch Banking & Trust Co. v. Maxwell*, 2013 WL 1136578 (11th Cir. Mar. 19, 2013) (quoting *Interface Kanner, LLC v. JPMorgan Chase Bank,* 704 F.3d 927, 934 (11th Cir. 2013)); *see also Branch Banking & Trust Co. v. D.M.S.I., LLC*, 2013 WL 3200087 at **8-9 (D. Nev. June 21, 2013) (calling *Maxwell* "instructive" and denying non-party to FDIC Shared-Loss Agreement any discovery with respect to same because non-party was not a third party beneficiary of agreement and agreement would

---

[3] The Purchase and Assumption Agreement—like the Shared Loss Agreement—is repeatedly referenced in the Second Amended Complaint but is not attached thereto.  By attaching the Purchase and Assumption Agreement, First-Citizens does not consider itself to have presented "matters outside the pleadings" in this Motion so as to convert it into a motion for summary judgment as contemplated by F.R.C.P. 12(d).   Indeed, reference in a motion to dismiss to documents which are central to a plaintiff's claim does not convert a motion to dismiss into a motion for summary judgment.  *Pace v. Swerdlow*, 519 F.3d 1067, 1072 (10th Cir. 2008).  Should the Court determine that reference to the Purchase and Assumption Agreement converts this Motion to one for summary judgment, First-Citizens requests the "reasonable opportunity to present all the material that is pertinent to the motion."  *Id.*

not provide any set-off). The Shared Loss Agreement quite explicitly states that there are no third party beneficiaries to that Agreement:

> This Agreement is for the sole and exclusive benefit of the parties and their respective permitted successors and permitted assigns and there shall be no other third party beneficiaries. Nothing in this Agreement shall be construed to grant to any other Person any right, remedy or claim under or in respect of this Agreement or any provision hereof.

Exh. A at § 6.4. Similarly, the Purchase and Assumption Agreement expressly provides that it does not create any rights in third parties. Exh. B at § 13.10 ("nothing expressed or referred to in this Agreement is intended or shall be construed to give any Person other than the [parties] any legal or equitable right, remedy or claim").

Plaintiff's declaratory relief claim in essence says "the FDIC should pay us, not First-Citizens". As described above, First-Citizens is entitled under certain circumstances to receive reimbursements of its losses from the FDIC with respect to the assets purchased by First-Citizens. Triad's ownership of a portion of loans was not purchased by First-Citizens and it is not entitled to reimbursement with respect to assets it did not purchase. Moreover, Plaintiff did not purchase any assets from the FDIC, is not a party to the Shared Loss Agreement and would have no rights to benefit therefrom. Plaintiff does not have standing to assert its interpretation of the Shared Loss Agreement, as Plaintiff is not a third-party beneficiary thereof. *Interface Kanner, LLC*, 704 F.3d at 932-33. Plaintiff's declaratory judgment claim fails as a matter of law.

## CONCLUSION

Plaintiff has not demonstrated that jurisdiction exists over its claims. Even if jurisdiction exists, the declaratory judgment claim is legally insufficient. For the foregoing reasons, the Court should dismiss the Second Amended Complaint.

Respectfully submitted December 20, 2013

        s/ Stuart N. Bennett
        Stuart N. Bennett, Esq.
        Aaron D. Goldhamer, Esq.
        JONES & KELLER, P.C.
        1999 Broadway, Suite 3150
        Denver, Colorado 80202
        303.573.1600
        sbennett@joneskeller.com
        agoldhamer@joneskeller.com
        **ATTORNEYS FOR FIRST-CITIZENS BANK**
        **& TRUST COMPANY**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the Friday, December 20, 2013, a true and correct copy of the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system at the following address:

Geraldine A. Brimmer
Holland & Hart, LLP
1800 Broadway, Suite 300
Boulder, Colorado 80302

Joseph E. Martineau
Lewis, Rice & Fingersh, L.C.
600 Washington, Suite 2600
St. Louis, Missouri 63101

　　　　　　　　　　　　　　　　　　　　　　s/ Tammy Harris