PURCHASE AND ASSUMPTION AGREEMENT

WHOLE BANK

ALL DEPOSITS

AMONG

FEDERAL DEPOSIT INSURANCE CORPORATION,
RECEIVER OF COLORADO CAPITAL BANK,
CASTLE ROCK, COLORADO

FEDERAL DEPOSIT INSURANCE CORPORATION

and

FIRST-CITIZENS BANK & TRUST COMPANY

DATED AS OF

JULY 8, 2011

Module 1 – Whole Bank w/ Optional Shared Loss Agreements
Version 3.1.1 – PURCHASE AND ASSUMPTION AGREEMENT
April 27, 2011

Colorado Capital Bank
Castle Rock, Colorado

**Exhibit B**

# PURCHASE AND ASSUMPTION AGREEMENT

## TABLE OF CONTENTS

ARTICLE I.   GENERAL ............................................................. 1

1.1   Purpose ................................................................. 1
1.2   Shared-Loss Agreements .................................. 1
1.3   Defined Terms ..................................................... 2

ARTICLE II.   ASSUMPTION OF LIABILITIES ......... 9

2.1   Liabilities Assumed by Assuming Institution ........... 9
2.2   Interest on Deposit Liabilities ............................ 10
2.3   Unclaimed Deposits ............................................ 11
2.4   Employee Plans ................................................... 11

ARTICLE III.   PURCHASE OF ASSETS ...................... 11

3.1   Assets Purchased by the Assuming Institution ....... 11
3.2   Asset Purchase Price ........................................... 12
3.3   Manner of Conveyance; Limited Warranty;
        Nonrecourse; Etc. ............................................... 12
3.4   Puts of Assets to the Receiver ............................ 12
3.5   Assets Not Purchased by Assuming Institution ...... 15
3.6   Retention or Repurchase of Assets Essential to
        Receiver ............................................................... 16
3.7   Receiver's Offer to Sell Withheld Loans .............. 17

ARTICLE IV.   ASSUMPTION OF CERTAIN DUTIES
AND OBLIGATIONS ..................................................... 17

4.1   Continuation of Banking Business ..................... 17
4.2   Credit Card Business ........................................... 17
4.3   Safe Deposit Business ......................................... 17
4.4   Safekeeping Business .......................................... 18
4.5   Trust Business ...................................................... 18
4.6   Bank Premises ...................................................... 19
4.7   Agreement with Respect to Leased Data
        Management Equipment .................................... 22
4.8   Certain Existing Agreements .............................. 23
4.9   Informational Tax Reporting .............................. 24
4.10  Insurance ............................................................. 24
4.11  Office Space for Receiver and Corporation; Certain
        Payments ............................................................. 24
4.12  Continuation of Group Health Plan Coverage for
        Former Employees of the Failed Bank ............... 25
4.13  Interim Asset Servicing ...................................... 26
4.14  [RESERVED] ...................................................... 26
4.15  Loss Sharing ........................................................ 26

ARTICLE V.   DUTIES WITH RESPECT TO
DEPOSITORS OF THE FAILED BANK .................. 26

5.1   Payment of Checks, Drafts, Orders and Deposits .. 26
5.2   Certain Agreements Related to Deposits ............ 27
5.3   Notice to Depositors ........................................... 27

ARTICLE VI.   RECORDS ........................................... 27

6.1   Transfer of Records ............................................. 27
6.2   Transfer of Assigned Records ............................ 28
6.3   Preservation of Records ..................................... 28
6.4   Access to Records; Copies .................................. 28
6.5   Right of Receiver or Corporation to Audit ......... 28

ARTICLE VII. BID; INITIAL PAYMENT ................. 29

ARTICLE VIII. ADJUSTMENTS .................................... 29

8.1   Pro Forma Statement .......................................... 29
8.2   Correction of Errors and Omissions; Other
        Liabilities ............................................................ 29
8.3   Payments .............................................................. 30
8.4   Interest ................................................................. 30
8.5   Subsequent Adjustments .................................... 30

ARTICLE IX.   CONTINUING COOPERATION ........ 30

9.1   General Matters ................................................... 30
9.2   Additional Title Documents ............................... 30
9.3   Claims and Suits .................................................. 30
9.4   Payment of Deposits ........................................... 31
9.5   Withheld Payments ............................................. 31
9.6   Proceedings with Respect to Certain Assets and
        Liabilities ............................................................ 31
9.7   Information ........................................................... 32
9.8   Tax Ruling ............................................................ 32

ARTICLE X.   CONDITION PRECEDENT ................. 32

ARTICLE XI.   REPRESENTATIONS AND
WARRANTIES OF THE ASSUMING INSTITUTION. 33

11.1   Corporate Existence and Authority ................. 33
11.2   Third Party Consent .......................................... 33
11.3   Execution and Enforceability .......................... 33
11.4   Compliance with Law ....................................... 33
11.5   Insured or Guaranteed Loans .......................... 33
11.6   Representations Remain True .......................... 34
11.7   No Reliance; Independent Advice .................... 34

ARTICLE XII   INDEMNIFICATION ........................... 34

12.1   Indemnification of Indemnitees ...................... 34
12.2   Conditions Precedent to Indemnification ...... 37
12.3   No Additional Warranty .................................... 38
12.4   Indemnification of Receiver and Corporation ... 38
12.5   Obligations Supplemental ................................ 38
12.6   Criminal Claims ................................................ 39
12.7   Limited Guaranty of the Corporation ............. 39
12.8   Subrogation ........................................................ 39

ARTICLE XIII. MISCELLANEOUS ............................ 39

13.1   Expenses ............................................................. 39

Module 1 – Whole Bank w/ Optional Shared Loss Agreements
Version 3.1.1 – PURCHASE AND ASSUMPTION AGREEMENT
April 27, 2011

i

Colorado Capital Bank
Castle Rock, Colorado

| | | |
|---|---|---|
| 13.2 | Waiver of Jury Trial | 39 |
| 13.3 | Consent; Determination or Discretion | 39 |
| 13.4 | Rights Cumulative | 40 |
| 13.5 | References | 40 |
| 13.6 | Notice | 40 |
| 13.7 | Entire Agreement | 41 |
| 13.8 | Counterparts | 41 |
| 13.9 | Governing Law | 41 |
| 13.10 | Successors | 41 |
| 13.11 | Modification | 41 |
| 13.12 | Manner of Payment | 41 |
| 13.13 | Waiver | 41 |
| 13.14 | Severability | 42 |
| 13.15 | Term of Agreement | 42 |
| 13.16 | Survival of Covenants, Etc. | 42 |

## SCHEDULES

| | | Page |
|---|---|---|
| Excluded Deposit Liability Accounts | Schedule 2.1(a) | 44 |
| Purchase Price of Assets or any other assets | Schedule 3.2 | 45 |
| Excluded Securities | Schedule 3.5(l) | 47 |
| Data Retention Catalog | Schedule 6.3 | 48 |
| Accounts Excluded from Calculation of Deposit Franchise Bid Premium | Schedule 7 | 50 |

## EXHIBITS

| | | Page |
|---|---|---|
| Final Legal Notice | Exhibit 2.3A | 51 |
| Affidavit of Mailing | Exhibit 2.3B | 53 |
| Valuation of Certain Qualified Financial Contracts | Exhibit 3.2(c) | 54 |
| Interim Asset Servicing Arrangement | Exhibit 4.13 | 56 |
| Single Family Shared-Loss Agreement | Exhibit 4.15A | 60 |
| Commercial Shared-Loss Agreement | Exhibit 4.15B | 61 |

Module 1 – Whole Bank w/ Optional Shared Loss Agreements
Version 3.1.1 – PURCHASE AND ASSUMPTION AGREEMENT
April 27, 2011

ii

Colorado Capital Bank
Castle Rock, Colorado

## PURCHASE AND ASSUMPTION AGREEMENT

## WHOLE BANK

## ALL DEPOSITS

THIS AGREEMENT, made and entered into as of the 8th day of July, 2011, by and among the **FEDERAL DEPOSIT INSURANCE CORPORATION, RECEIVER of COLORADO CAPITAL BANK, CASTLE ROCK, COLORADO** (the "**Receiver**"), **FIRST-CITIZENS BANK & TRUST COMPANY** organized under the laws of the State of North Carolina, and having its principal place of business in **RALEIGH, NORTH CAROLINA** (the "**Assuming Institution**"), and the **FEDERAL DEPOSIT INSURANCE CORPORATION**, organized under the laws of the United States of America and having its principal office in Washington, D.C., acting in its corporate capacity (the "**Corporation**").

### R E C I T A L S

A.     On the Bank Closing Date, the Chartering Authority closed **COLORADO CAPITAL BANK** (the "**Failed Bank**") pursuant to applicable law and the Corporation was appointed Receiver thereof.

B.     The Assuming Institution desires to purchase certain assets and assume certain deposits and other liabilities of the Failed Bank on the terms and conditions set forth in this Agreement.

C.     Pursuant to 12 U.S.C. § 1823(c)(2)(A), the Corporation may provide assistance to the Assuming Institution to facilitate the transactions contemplated by this Agreement, which assistance may include indemnification pursuant to Article XII.

D.     The Board of Directors of the Corporation (the "**Board**") has determined to provide assistance to the Assuming Institution on the terms and subject to the conditions set forth in this Agreement.

E.     The Board has determined pursuant to 12 U.S.C. § 1823(c)(4)(A) that such assistance is necessary to meet the obligation of the Corporation to provide insurance coverage for the insured deposits in the Failed Bank and is the least costly to the deposit insurance fund of all possible methods for meeting such obligation.

NOW, **THEREFORE**, in consideration of the mutual promises herein set forth and other valuable consideration, the parties hereto agree as follows:

### A G R E E M E N T

**ARTICLE I.     GENERAL.**

1.1.     _Purpose._  The purpose of this Agreement is to set forth requirements regarding, among other things, the terms and conditions on which the Assuming Institution purchases certain assets and assumes certain liabilities of the Failed Bank.

1.2.     _Shared-Loss Agreements._  If the Receiver and the Assuming Institution desire to share losses and recoveries on certain acquired assets, a Shared-Loss Agreement or Shared-Loss

Agreements are attached hereto as <u>Exhibit 4.15A</u> and/or <u>Exhibit 4.15B</u>, as applicable, and will govern the terms of any such shared-loss arrangement. To the extent that any inconsistencies may arise between the terms of this Agreement and a Shared-Loss Agreement with respect to the subject matter of a Shared-Loss Agreement, the terms of the applicable Shared-Loss Agreement shall control.

    **1.3.**   <u>**Defined Terms.**</u>  Capitalized terms used in this Agreement shall have the meanings set forth or referenced in this Section 1.3. As used herein, words imparting the singular include the plural and vice versa.

    **"Acquired Subsidiary"** or **"Acquired Subsidiaries"** means one or more, as applicable, Subsidiaries of the Failed Bank acquired pursuant to Section 3.1.

    **"Affiliate"** of any Person means any director, officer, or employee of that Person and any other Person (i) who is directly or indirectly controlling, or controlled by, or under direct or indirect common control with, such Person, or (ii) who is an affiliate of such Person as the term "affiliate" is defined in § 2(k) of the Bank Holding Company Act of 1956, as amended, 12 U.S.C. § 1841.

    **"Agreement"** means this Purchase and Assumption Agreement by and among the Assuming Institution, the Corporation and the Receiver, as amended or otherwise modified from time to time.

    **"Assets"** means all assets of the Failed Bank purchased pursuant to Section 3.1. Assets owned by Subsidiaries of the Failed Bank are not "Assets" within the meaning of this definition by virtue of being owned by such Subsidiaries.

    **"Assumed Deposits"** means Deposits.

    **"Assuming Institution"** has the meaning set forth in the introduction to this Agreement.

    **"Bank Closing Date"** means the close of business of the Failed Bank on the date on which the Chartering Authority closed such institution.

    **"Bank Premises"** means the banking buildings, drive-in banking facilities, teller facilities (staffed or automated), storage and service facilities, structures connecting remote facilities to banking houses, land on which the foregoing are located and unimproved land, together with any adjacent parking, that are owned or leased by the Failed Bank and that have formerly been utilized, are currently utilized, or are intended to be utilized in the future by the Failed Bank as shown on the Failed Bank Records as of the Bank Closing Date.

    **"Bid Amount"** has the meaning set forth in Article VII.

    **"Bid Valuation Date"** means May 4, 2011.

    **"Board"** has the meaning set forth in Recital D.

    **"Book Value"** means, with respect to any Asset and any Liability Assumed, the dollar amount thereof stated on the Failed Bank Records. The Book Value of any item shall be determined as of the Bank Closing Date after adjustments made by the Receiver for differences in accounts, suspense items, unposted debits and credits and other similar adjustments or corrections and for setoffs, whether voluntary or involuntary. The Book Value of an Acquired

**12.6.   Criminal Claims.**  Notwithstanding any provision of this Article XII to the contrary, in the event that any Person being indemnified under this Article XII shall become involved in any criminal action, suit or proceeding, whether judicial, administrative or investigative, the Receiver shall have no obligation hereunder to indemnify such Person for liability with respect to any criminal act or to the extent any costs or expenses are attributable to the defense against the allegation of any criminal act, unless (a) the Person is successful on the merits or otherwise in the defense against any such action, suit or proceeding, or (b) such action, suit or proceeding is terminated without the imposition of liability on such Person.

**12.7.   Limited Guaranty of the Corporation.**  The Corporation hereby guarantees performance of the Receiver's obligation to indemnify the Assuming Institution as set forth in this Article XII. It is a condition to the Corporation's obligation hereunder that the Assuming Institution shall comply in all respects with the applicable provisions of this Article XII. The Corporation shall be liable hereunder only for such amounts, if any, as the Receiver is obligated to pay under the terms of this Article XII but shall fail to pay. Except as otherwise provided above in this Section 12.7, nothing in this Article XII is intended or shall be construed to create any liability or obligation on the part of the Corporation, the United States of America or any department or agency thereof under or with respect to this Article XII, or any provision hereof, it being the intention of the parties hereto that the obligations undertaken by the Receiver under this Article XII are the sole and exclusive responsibility of the Receiver and no other Person or entity.

**12.8.   Subrogation.**  Upon payment by the Receiver, or the Corporation as guarantor in accordance with Section 12.7, to any Indemnitee for any claims indemnified by the Receiver under this Article XII, the Receiver, or the Corporation as appropriate, shall become subrogated to all rights of the Indemnitee against any other Person to the extent of such payment.

## ARTICLE XIII  MISCELLANEOUS.

**13.1.   Costs, Fees, and Expenses.**  All fees, costs and expenses incurred by a party in connection with this Agreement (including the performance of any obligations or the exercise of any rights hereunder) shall be borne by such party unless expressly otherwise provided; provided that the Assuming Institution shall pay all fees, costs and expenses (other than attorneys' fees incurred by the Receiver) incurred in connection with the transfer to it of any Assets or Liabilities Assumed hereunder or in accordance herewith. Further, the Assuming Institution shall be responsible for the payment of MERS routine transaction charges.

**13.2.   WAIVER OF JURY TRIAL.**  EACH PARTY HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES, TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, ALL RIGHT TO TRIAL BY JURY IN OR TO HAVE A JURY PARTICIPATE IN RESOLVING ANY DISPUTE, ACTION, PROCEEDING OR COUNTERCLAIM, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE, ARISING OUT OF OR RELATING TO OR IN CONNECTION WITH THIS AGREEMENT OR ANY OF THE TRANSACTIONS CONTEMPLATED HEREBY.

**13.3.   Consent; Determination or Discretion.**  When the consent or approval of a party is required under this Agreement, such consent or approval shall be obtained in writing and unless expressly otherwise provided, shall not be unreasonably withheld or delayed. When a determination or decision is to be made by a party under this Agreement, that party shall make such determination or decision in its reasonable discretion unless expressly otherwise provided.

Module 1 – Whole Bank w/ Optional Shared Loss Agreements
Version 3.1.1 – PURCHASE AND ASSUMPTION AGREEMENT
April 27, 2011

39

Colorado Capital Bank
Castle Rock, Colorado

**13.4.   Rights Cumulative**.  Except as expressly otherwise provided herein, the rights of each of the parties under this Agreement are cumulative, may be exercised as often as any party considers appropriate and are in addition to each such party's rights under this Agreement, any of the agreements related thereto or under applicable law.  Any failure to exercise or any delay in exercising any of such rights, or any partial or defective exercise of such rights, shall not operate as a waiver or variation of that or any other such right, unless expressly otherwise provided.

**13.5.   References**.  References in this Agreement to Recitals, Articles, Sections, Schedules and Exhibits are to Recitals, Articles, Sections, Schedules and Exhibits of this Agreement, respectively, unless the context indicates that a Shared-Loss Agreement is intended. References to parties are to the parties to this Agreement.  Unless expressly otherwise provided, references to days and months are to calendar days and months respectively.  Article and Section headings are for convenient reference and shall not affect the meaning of this Agreement. References to the singular shall include the plural, as the context may require, and *vice versa*.

**13.6.   Notice**.

(a)   Form of Notices.  All notices shall be given in writing and provided in accordance with the provisions of this Section 13.6, unless expressly otherwise provided.

(b)   Notice to the Receiver or the Corporation.  With respect to a notice under this Agreement:

**Receiver and Corporation**
Federal Deposit Insurance Corporation,
Receiver of Colorado Capital Bank
40 Pacifica
Irvine, California 92618
*Attention:* Settlement Agent

**In addition, with respect to notices under Article 4.6:**
cc: Resolutions and Closings Manager, ORE Department and BankPremiseNotice@fdic.gov

**In addition, with respect to notice under Article XII:**
cc: Managing Counsel
FDIC – Legal Division
West Coast Temporary Satellite Office
40 Pacifica
Irvine, California 92618

(c)   Notice to Assuming Institution.  With respect to a notice under this Agreement:

**First-Citizens Bank & Trust Company**
4300 Six Forks Road
Raleigh, NC 27609
*Attention:* Kenneth A. Black
Executive Vice President (Mail Code: FCC07)
*With a copy to:* James E. Creekman, Group Vice President – Legal Services (same address, at Mail Code: FCC22)

**13.7.   Entire Agreement.**  This Agreement and the Shared-Loss Agreements, if any, including the Schedules and Exhibits hereto and thereto, embody the entire agreement of the parties hereto in relation to the subject matter herein and supersede all prior understandings or agreements, oral or written, between the parties.

**13.8.   Counterparts.**  This Agreement may be executed in any number of counterparts and by the duly authorized representative of a different party hereto on separate counterparts, each of which when so executed shall be deemed to be an original and all of which when taken together shall constitute one and the same Agreement.

**13.9.   GOVERNING LAW.**   THIS AGREEMENT AND THE RIGHTS AND OBLIGATIONS HEREUNDER SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE FEDERAL LAW OF THE UNITED STATES OF AMERICA, AND IN THE ABSENCE OF CONTROLLING FEDERAL LAW, IN ACCORDANCE WITH THE LAWS OF THE STATE IN WHICH THE MAIN OFFICE OF THE FAILED BANK IS LOCATED.

**13.10. Successors.**  All terms and conditions of this Agreement shall be binding on the successors and assigns of the Receiver, the Corporation and the Assuming Institution. Except as otherwise specifically provided in this Agreement, nothing expressed or referred to in this Agreement is intended or shall be construed to give any Person other than the Receiver, the Corporation and the Assuming Institution any legal or equitable right, remedy or claim under or with respect to this Agreement or any provisions contained herein, it being the intention of the parties hereto that this Agreement, the obligations and statements of responsibilities hereunder, and all other conditions and provisions hereof are for the sole and exclusive benefit of the Receiver, the Corporation and the Assuming Institution and for the benefit of no other Person.

**13.11. Modification.**  No amendment or other modification, rescission or release of any part of this Agreement or a Shared-Loss Agreement, if any, shall be effective except pursuant to a written agreement subscribed by the duly authorized representatives of the parties.

**13.12. Manner of Payment.**  All payments due under this Agreement shall be in lawful money of the United States of America in immediately available funds as each party hereto may specify to the other parties; provided that in the event the Receiver or the Corporation is obligated to make any payment hereunder in the amount of $25,000.00 or less, such payment may be made by check.

**13.13. Waiver.**  Each of the Receiver, the Corporation and the Assuming Institution may waive its respective rights, powers or privileges under this Agreement; provided that such waiver shall be in writing; and further provided that no failure or delay on the part of the Receiver, the Corporation or the Assuming Institution to exercise any right, power or privilege under this Agreement shall operate as a waiver thereof, nor will any single or partial exercise of any right, power or privilege under this Agreement preclude any other or further exercise thereof or the exercise of any other right, power or privilege by the Receiver, the Corporation or the Assuming Institution under this Agreement, nor will any such waiver operate or be construed as a future waiver of such right, power or privilege under this Agreement.

13.14. <u>Severability</u>. If any provision of this Agreement is declared invalid or unenforceable, then, to the extent possible, all of the remaining provisions of this Agreement shall remain in full force and effect and shall be binding upon the parties hereto.

13.15. <u>Term of Agreement</u>. This Agreement shall continue in full force and effect until the tenth (10th) anniversary of the Bank Closing Date; provided that the provisions of Sections 6.3 and 6.4 shall survive the expiration of the term of this Agreement; and provided further that the receivership of the Failed Bank may be terminated prior to the expiration of the term of this Agreement, and in such event, the guaranty of the Corporation, as provided in and in accordance with the provisions of Section 12.7, shall be in effect for the remainder of the term of this Agreement. Expiration of the term of this Agreement shall not affect any claim or liability of any party with respect to any (a) amount which is owing at the time of such expiration, regardless of when such amount becomes payable, and (b) breach of this Agreement occurring prior to such expiration, regardless of when such breach is discovered.

13.16. <u>Survival of Covenants, Etc.</u> The covenants, representations, and warranties in this Agreement shall survive the execution of this Agreement and the consummation of the transactions contemplated hereunder.

[Signature Page Follows]

Module 1 – Whole Bank w/ Optional Shared Loss Agreements
Version 3.1.1 – PURCHASE AND ASSUMPTION AGREEMENT
April 27, 2011

42

Colorado Capital Bank
Castle Rock, Colorado