IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil No. 11-cv-01220-MSK-BNB

TRIAD BANK,
A Missouri chartered bank

    Plaintiff,

vs.

FIRST-CITIZENS BANK & TRUST COMPANY,
a North Carolina chartered commercial bank,

    Defendant.

**PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT**

Plaintiff Triad Bank ("Triad"), by and through its undersigned counsel, respectfully submits the following Response in Opposition to Defendant First Citizen's Bank's ("FCB") Motion to Dismiss Second Amended Complaint ("Motion to Dismiss") (Doc. 65), stating as follows:

### INTRODUCTION

Triad has sued FCB seeking relief pursuant to three loan participation agreements ("Loan Participation Agreements"). (2nd Am. Cmplt. Exs. 1-3). Triad was a participant in real estate loans in which Colorado Capital Bank ("CCB") was the lead or agent bank. (*Id.* ¶¶1, 4, 10, 11, 15, 28, 29). CCB later failed, and the Federal Deposit Insurance Corporation ("FDIC") took over as receiver. (*Id.* ¶4). Under a Purchase and Assumption Agreement between FCB and the FDIC, FCB assumed CCB's assets and obligations, including the Loan Participation Agreements and the real estate loans underlying those participation agreements. (*Id.*).

In Count I of its Second Amended Complaint, Triad seeks money damages arising out of FCB's breach of an assumed agreement to fund a subordinated real estate loan to a borrower. After the original borrower defaulted or was in peril of defaulting, CCB, to avoid downgrading the loan on its books, arranged for a new borrower to take over and complete the underlying real estate project. (*Id.* ¶¶13, 14). However, the new borrower required additional funds to do so, which CCB agreed to provide. (*Id.* ¶14). To obtain Triad's consent and participation in this new loan arrangement with the new borrower, CCB agreed it would loan the needed additional $1,245,000 to the new borrower on a subordinated basis ("Subordinated Loan Commitment"). (*Id.* ¶¶14(d), (e)). In consideration of CCB's Subordinated Loan Commitment, Triad agreed to participate in this new arrangement. (*Id.* ¶15). In the Purchase and Assumption Agreement, FCB assumed this Subordinated Loan Commitment, which was legally binding and reflected in the official records of CCB. (*Id.* ¶¶18-23). Neither CCB nor FCB ever funded the subordinated loan, and FCB thereby has breached the Subordinated Loan Commitment. (*Id.* ¶¶24-25). Triad has suffered substantial losses on account of this breach. (*Id.* ¶26).[1]

In Count II, Triad seeks a declaration that under the Loan Participation Agreements, it is entitled to receive its pro rata share of funds received by FCB under a Shared-Loss Agreement with the FDIC. The Shared-Loss Agreement provides that FCB will recover from the FDIC 80% of any losses incurred on the assumed loan portfolio, including the losses incurred on the loans underlying the subject Loan Participation Agreements. (*Id.* ¶32). Paragraph 8 of these Loan Participation Agreements each provide that Triad is entitled to its pro rata share of any payment related to the loans "from any source whatever." (2nd Am. Cmplt. Exs. 1-3).

---

[1] Though not pleaded in the Second Amended Complaint, and not required to be pleaded, FCB's breach caused substantial damage to Triad. Through foreclosure and collection proceedings, FCB recovered $803,399.10 on the underlying loans. Based on Triad's 61.99% pro rata interest in those funds, its share would be $498,027.10. The difference between that amount and the $1,150,000 it originally contributed would be $651,972.90.

2

## ARGUMENT

In its Motion to Dismiss, FCB argues that the Court lacks jurisdiction of Triad's claims in both Counts I and II under 12 U.S.C. §1821(d)(13)(D). Alternatively, it argues that Count II, seeking a declaration that Triad is entitled to receive its pro rata share of funds received by FCB under its Shared-Loss Agreement with the FDIC, fails to state a claim upon which relief may be granted.

As addressed more fully below, each of these arguments mischaracterizes the claims asserted in Second Amended Complaint. FCB's Motion to Dismiss should be denied.

### I. Triad's claims fall outside of FIRREA and therefore this Court has jurisdiction of the case.

FCB challenges the jurisdiction of the Court, citing to the administrative exhaustion requirement of the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"). (*See* Motion to Dismiss at 4-8). A closer examination of the FIRREA provisions on which FCB relies in relation to the claims Triad asserts, however, illustrates that FCB is incorrect.

Under FIRREA, unless a claimant first pursues and exhausts administrative relief, "no court shall have jurisdiction over (i) any claim or action for payment from, or any actions seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver …; or (ii) any claim relating to any act or omission of [an] institution [in receivership] or the [FDIC] as receiver." 12 U.S.C. §1821(d)(13)(D). FCB argues that because Triad did not assert its claims through the administrative process, both of its claims are barred.

FCB urges this Court to give an overly-broad application to this statute, one that would essentially give immunity to an acquiring bank for its disregard of obligations and liabilities

3

assumed through the auspices of an FDIC receivership under FIRREA. This interpretation is one which Congress certainly never intended.

In fact, courts have universally recognized that:

> [12 U.S.C. §1821(d)(13)(D)] is not an isolated edict, but is part of FIRREA's statutory scheme, which was intended to force plaintiffs with claims against failed depository institutions to exhaust administrative remedies before coming to federal court. [citation omitted]. Courts interpreting the broad language of §1821(d)(13)(D)(ii) have universally concluded that this provision bars only claims that could be brought under the administrative procedures of §1821(d), *not any claim at all involving the FDIC.*

*Bank of New York v. First Millennium, Inc.*, 607 F.3d 905, 921 (2d Cir. 2010) (emphasis added); *see also Auction Co. of Am. v. FDIC*, 141 F.3d 1198, 1201 (D.C.Cir. 1998) (holding that the §1821(d)(13)(D) jurisdictional bar applies only to claims that can be brought through the administrative processes of §1821(d)). The courts have also held that FIRREA's jurisdictional bar is not applicable to damage claims against assuming banks for their own acts or omissions even if related to an asset transferred to them by the FDIC. *See, e.g., American Nat' Ins. Co. v. F.D.I.C.*, 642 F.3d 1137, 1142 (D.C.Cir. 2011) (citing cases).

FCB has overreached in arguing this Court does not have jurisdiction. As shown below, the Motion to Dismiss should be denied.

A. **This Court has jurisdiction over Count II seeking declaratory relief regarding Triad's right to recover a pro rata share of payments related to the loans received "from any source whatever," including payments received by virtue of the Share-Loss Agreement.**

Triad's declaratory relief claim in Count II is not seeking to pursue "any claim or action for payments from" the assets of the failed institution (CCB). So, clearly the jurisdictional bar of 12 U.S.C. §1821(d)(13)(D)(i) is not applicable. FCB does not assert otherwise.

4

FCB argues, however, that the claim is barred by 12 U.S.C. §1821(d)(13)(D)(ii). FCB contends that Triad's declaratory relief claim in Count II relates to "FDIC's act of entering into the Shared-Loss Agreement." Because of that, FCB argues that the claim relates to an "act" of FDIC as receiver and that Triad was required to exhaust administrative FIRREA remedies to preserve any judicial claims against FCB related to its recoveries under the Shared-Loss Agreement. Because Triad failed to assert an administrative claim for recovery under the Shared-Loss Agreement, FCB argues Count II is barred by 12 U.S.C. §1821(d)(13)(D)(ii). (*See* Motion to Dismiss at 6-7).

Contrary to FCB's argument for dismissal, Triad is not complaining about "any act or omission of [CCB] or the [FDIC] as receiver" in Count II. Triad is not claiming any misfeasance or malfeasance on the part of the FDIC in entering into the Shared-Loss Agreement. Indeed, in Count II, Triad is not complaining about anything that CCB or the FDIC did or did not do. This makes 12 U.S.C. §1821(d)(13)(D) entirely inapplicable. *See, e.g., American Nat'l. Ins. Co. v. F.D.I.C.*, 642 F.3d at 1143 ("Where, as here, neither the failed depository institution nor the FDIC-as-receiver bears any legal responsibility for claimant's injuries, the claims process offers only a pointless bureaucratic exercise," and is inapplicable).

Nor, as more fully discussed in Point II below, can it be reasonably argued that Triad is asserting a claim, either directly or as a third party beneficiary, under the Shared-Loss Agreement, any more than one could meritoriously argue that Triad's assertion of participatory rights to the underlying loan proceeds or foreclosure recoveries is a claim against the borrowers under their loan and mortgage agreements.

Triad merely seeks to recover its pro rata share of the proceeds received by FCB under the Shared-Loss Agreement in accordance with the unambiguous language of the Loan

5

Participation Agreements. Under paragraph 8 of the Loan Participation Agreements, which this Court has determined is the applicable provision for determining Triad's rights of repayment (*see* March 25, 2013 Order and Opinion (Doc. 43) at 4), Triad is entitled to its pro rata share of *any* payment received by FCB after default "*from any source whatever.*" (emphasis added). Given its plain meaning and obvious intendment, the statement "from any source whatever" includes payments received by FCB from the FDIC under the Shared-Loss Agreement related to the loans underlying Loan Participation Agreements.

Finally, FCB's arguments as to Count II make no sense. Until the loans underlying the Loan Participation Agreements went into default – which as to one of them did not occur until well after the FDIC takeover and after expiration of the administrative claims period – the certainty and extent of any loss on the loans, and any attendant shared-loss recovery,[2] was unknown. Nothing in the statute suggests that claimants must pursue un-ripened claims at peril of waiving them in the event they ripen down the road.

Although Triad's declaratory relief claim in Count II seeks to recover funds paid to FCB from FDIC under its Shared-Loss Agreement with the FDIC, the claim very clearly does not involve the actions of a failed bank or the FDIC. The tangential relationship between the FDIC and FCB and the fact that the FDIC is a "source" of funds paid to FCB in relation to the loans underlying the Participation Agreements does not invoke the administrative exhaustion requirement of FIRREA. FCB's motion to dismiss Count II on jurisdictional grounds should be denied.

---

[2] In fact, FCB argues that its Shared-Loss recovery may not be determined until July 2019. (*See* Motion to Dismiss at 10).

### B. Triad's claim in Count I related to the breach of the Subordinated Loan Commitment is not jurisdictionally barred.

FCB also argues that the Court does not have jurisdiction over Triad's breach of contract claims in Count I because of a failure to exhaust administrative remedies under FIRREA. In particular, FCB argues that Triad's breach of contract claim against FCB is based on the "same core allegation" as Count I of Triad's original Complaint against CCB (the initial failed bank). FCB argues that claim was pending against CCB prior to FDIC's receivership, and FCB argues, was a pre-receivership breach of contract which must be asserted through FIRREA's administrative process. (*See* Motion to Dismiss at 7-8).

In fact, while it is correct that at the time of the FDIC takeover, CCB had refused to fund, it is incorrect that Triad had asserted any claim for damages on that basis. When the suit was filed against CCB on May 6, 2011, Triad sought merely a declaration that its rights for repayment under the Loan Participation Agreements were LIFO and not pro rata – in other words, a declaration that when the loans were repaid, or recovery obtained otherwise, it would receive 100% of its funded balance, before CCB received anything. (Complaint, Doc. 1). On July 8, 2011, CCB failed, and the FDIC as receiver assigned its assets and liabilities to FCB. (2nd Am. Cmplt. ¶4). On September 15, 2011, *after FCB had assumed the funding obligation and had been substituted for CCB*, Triad filed its First Amended Complaint (Doc. 28), asserting, in addition to the LIFO declaration sought in the original Complaint, specific performance *of FCB's* assumed Subordinated Loan Commitment (Count III) or alternatively money damages arising from the refusal to fund (Count IV).

Even though the First and Second Amended Complaints did complain about CCB's failure to fund the Subordinated Loan Commitment, they also complained about FCB's failure to do so. As such, FCB's jurisdictional argument disregards the independent obligations of FCB

7

with respect to the Loan Participation Agreements and the independent action taken by FCB in refusing to fund the Subordinated Loan Commitment. In other words, the breach of contract claim in Count I against FCB is not relegated to the pre-receivership actions of CCB as a failed bank. Instead, it involves the post-receivership actions and omissions of FCB.

In obtaining the assets and liabilities of CCB from the FDIC, FCB entered into a Purchase and Assumption Agreement. In so doing, FCB assumed all the obligations and commitments of CCB to fund the subordinated loan referenced in the Loan Participation Agreements.[3] Specifically:

> **2.1. Liabilities Assumed by Assuming Institution.** The Assuming Institution [FCB] expressly assumes at Book Value (subject to adjustment pursuant to Article VIII) and agrees to pay, perform and discharge, all of the following liabilities of the Failed Bank [CCB] as of the Bank Closing Date, except as otherwise provided in this Agreement (such liabilities referred to as "Liabilities Assumed"): . . .
>
> (j)   liabilities, if any, for Commitments.

(2nd Am. Cmplt. ¶19). The term "commitment" is defined as follows:

> **"Commitment"** means the unfunded portion of a line of credit or other commitment reflected on the books and records of [CCB] to make an extension of credit (or additional advances with respect to a Loan) that was legally binding on [CCB] as of the Bank Closing Date, other than extensions of credit pursuant to the credit card business and overdraft protection plans of [CCB], if any.

(*Id.* ¶20).

FCB had an independent, post-receivership obligation under the Subordinated Loan Commitment, and FCB made the independent, post-receivership decision not to provide such funding. Claims against an assuming bank based on that assuming bank's own independent conduct do not fall under FIRREA's administrative exhaustion requirement. *See American Nat'l.*

---

[3] FCB also assumed the obligation of CCB to repay Triad its participatory interest, but a logical extension of FCB's jurisdictional-bar argument is that if FCB were to breach that obligation, Triad would have no claim having failed to administratively assert it.

*Ins. Co. v. F.D.I.C.*, 642 F.3d at 1142. "The mere fact that [FCB] now owns the assets that [CCB] once owned does not render this suit one against or seeking a determination of rights with respect to those assets." *Id.*

These circumstances make this case distinguishable from *Westberg v. FDIC*, 926 F.Supp.2d 61 (D.D.C. 2013), on which FCB places its greatest reliance. (*See* Motion to Dismiss at 4-5, 8). In *Westberg*, "unlike in *American National*, plaintiffs [did] not point to any independent conduct by [the acquiring bank] that would give rise to claims against it outside FIRREA. All they allege[d] and [sought was] a declaration that [the acquiring bank], as a successor to the FDIC [was] not entitled to enforce the terms of an agreement that the FDIC repudiated and tried to enforce." *Id.* at 68. Here, the FDIC did not repudiate the Subordinated Loan Commitment, which remained effective and which FCB breached.

Accordingly, even if Triad is precluded from any claim based on CCB's pre-receivership breach of its commitment to fund, Triad's claim arising out of FCB's continued failure to fund a commitment which it assumed is not barred. The failure to fund the subordinated loan resulted in a failure to complete the underlying real estate development. As a result, the borrower defaulted, and FCB foreclosed on and sold the collateral for far less than the outstanding loan balance, causing a loss to Triad on its Loan Participation Agreement. (2nd Am. Cmplt. ¶26). Had the subordinated loan been funded according to the commitment, sufficient funds would have been available to pay off the principal loan, though possibly not the subordinated loan. (*Id.*).

In sum, both Count I and Count II assert claims that fall outside of FIRREA's administrative exhaustion requirement. Jurisdiction lies in this Court, and Triad should be allowed to proceed on such claims against FCB.

9

## II. Triad has met its burden in pleading Count II for declaratory relief.

In addition to the alleged jurisdictional bar, FCB presents a second challenge to Triad's Count II, seeking dismissal of that claim pursuant to Fed.R.Civ.P. 12(b)(6).

In evaluating a motion to dismiss for "failure to state a claim upon which relief can be granted," the court must "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005)). The proper inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (internal citation omitted). Granting a motion to dismiss under Rule 12(b)(6) "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quoting *Duran v. Carris*, 238 F.3d 1268, 1270 (10th Cir. 2001)).

FCB's arguments in support of dismissing Count II are predicated on the false assumption that Triad's declaratory relief claim is brought under the Shared-Loss Agreement. However, Count II seeks relief under the Loan Participation Agreements, not the Shared-Loss Agreements. Triad is seeking to enforce the terms of the Loan Participation Agreements, which entitle Triad to its pro rata share of *any* payment received by FCB after default on the underlying loan "*from any source whatever.*" (*See* 2nd Am. Cmplt. ¶33 and Exs. 1-3). While FCB seeks to direct attention solely to the terms of the Shared-Loss Agreement, it cannot avoid the fact that that agreement is between it and the FDIC, that Triad is not a party to it, and that Triad is not suing to enforce its provisions as a third party beneficiary or otherwise. Triad is seeking merely

to enforce the provisions of its Loan Participation Agreements with FCB, which entitle it to a pro rata share of monies recovered by FCB "from any source whatever."[4]

That circumstance makes this case distinguishable from the "third party beneficiary" cases, such as *Branch Banking & Trust Co. v. Maxwell*, 2013 WL 1136578 (11th Cir. 2013), cited by FCB. (*See* Motion to Dismiss at 11-12). In those cases, borrowers sued by the acquiring bank for defaulting on their loans argued that their liability should be limited by any Shared-Loss recovery, claiming that was a source of recovery that should be taken into account in determining their liability. That is not the situation here.

In the Motion to Dismiss, FCB tries to confuse the issue by reciting provisions in the Shared-Loss Agreement that aggregate payments. It notes that payments are received quarterly and payments received in one quarter may off-set payments in another. (*See* Motion to Dismiss at 9). But, the commingling and aggregation of payments does not change the fact that payments are made for losses on each "Shared Loss Asset," including the loans at issue. How the Shared Loss Agreement calculates FCB's payments does not change the fact that FCB effectively receives payment related to the underlying loans from a "source." The fact that the "source" of such payments is the FDIC makes no difference given the broad statement in the Loan Participation Agreements that Triad is entitled to its pro rata share of recovery under the loans "from any source whatever."

FCB also argues that the assets purchased by FCB from the FDIC do not include the participated portions of the loans owned by Triad. Were that true, then FCB should have paid Triad its participated portions. It has not done so, instead holding the money in escrow. If by this argument, FCB is attempting to imply that the Shared-Loss Agreement provides for

---

[4] FCB has not disclosed its shared loss recoveries related to the loans underlying the Loan Participation Agreements, but based on the formula in Shared-Loss Agreement, Triad estimates this recovery as somewhere in the neighborhood of $720,000. (*See* 2nd Am.Cmplt.¶¶36-37).

11

payments from the FDIC only with respect to FCB's participatory interest, it can cite to nothing in the Loan Participation Agreements limiting the "from any source whatever" language to recoveries determined on the basis of one of the parties' participatory interest.

Finally, FCB argues that Triad's "declaratory relief claim in essence says 'the FDIC should pay us, not [FCB].'" (Motion to Dismiss at 12). But plainly that is not the case. Just like the situation as it existed with the borrowers on the underlying loans – where Triad has no third party beneficiary status or right to enforce those underlying loan agreements against the borrowers, but only the right to assert its participatory interest against FCB under the Loan Participation Agreements – Triad has the right to enforce *against FCB* its right to share in Shared-Loss payments related to those loans. While not received from the borrowers or through foreclosure, they are received "from any source whatever."

Overall, FCB's focus on the Shared Loss Agreement is a red herring. Triad is asserting rights under different agreements, the Loan Participation Agreements. Triad has no claim against the FDIC, nor does it assert such a claim. It seeks to enforce against FCB its rights under the Loan Participation Agreements to its share of funds received "from any source whatever." FCB's motion to dismiss should be denied.

## CONCLUSION

For all the above reasons, plaintiff Triad Bank respectfully requests that this Court deny Defendant's Motion to Dismiss.

Respectfully submitted,

By: s/ Joseph E. Martineau
   Joseph E. Martineau
   LEWIS, RICE & FINGERSH, L.C.
   600 Washington, Suite 2500
   St. Louis, Missouri 63101
   Tel: 314/444-7729; Fax: 314/612-7729
   E-mail: jmartineau@lewisrice.com

   Geraldine A. Brimmer
   HOLLAND & HART, LLP
   One Boulder Plaza
   1800 Broadway, Suite 300
   Boulder, Colorado 80302
   Tel: 303/473-2733; Fax: 303/473-2720
   E-mail: gbrimmer@hollandhart.com

   ATTORNEYS FOR PLAINTIFF
   TRIAD BANK

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the above and foregoing document was served via the Court's electronic filing system, this 10th day of January 2014, on:

Stuart N. Bennett
Aaron D. Goldhamer
**JONES & KELLER, P.C.**
1999 Broadway, Suite 3150
Denver, CO 80202
Telephone: 303/376-8410
E-mail:   sbennett@joneskeller.com
          agoldhamer@joneskeller.com

By:   /s/ Joseph E. Martineau

13