IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 11-CV-1220-MSK-BNB

TRIAD BANK, a Missouri chartered bank,

        Plaintiff,

v.

FIRST-CITIZENS BANK & TRUST COMPANY, A North Carolina chartered commercial bank,

        Defendant.

## DEFENDANT'S REPLY IN SUPPORT OF
## MOTION TO DISMISS SECOND AMENDED COMPLAINT

Defendant First-Citizens Bank & Trust Company ("First-Citizens"), by and through the undersigned counsel, respectfully submits the following Reply in support of its Motion to Dismiss Second Amended Complaint ("Motion"), and with reference to the capitalized terms in the Second Amended Complaint and Plaintiff's Response to the Motion ("Response"), states as follows:

### ARGUMENT

Plaintiff misunderstands the nature of the assets that First-Citizens acquired from the FDIC in several respects.  Count II of the Second Amended Complaint asserts that Plaintiff is entitled to a prorata share of FCB's recovery under a Shared Loss Agreement of losses on loans acquired by First Citizens from the FDIC.  First-Citizens did <u>not, however,</u> acquire under the Purchase and Assumption Agreement with the FDIC ("PAA") the entire original loans issued by CCB.  Rather, First-Citizens only acquired the net adjusted balance of the loans as of the acquisition date as reflected on the books and records of CCB.  The net adjusted balance of the loans did not include the portion of the loan which had been participated to Plaintiff.  *See*

{JK00545265.2}          1

Affidavit of Peter Lindquist, attached hereto as **Exhibit 1**, at ¶¶ 10-11, 16.[1] Under the Shared Loss Agreement, First-Citizens is only entitled to receive Shared-Loss benefits with respect to the portion of the loans it acquired. It does not receive any Shared Loss benefits <u>with respect to the</u> participated portions of the loans. *Id.* at ¶¶ 11, 16. The Loan Participation Agreement under which Plaintiff asserts it is entitled to relief pursuant to Count II of the Second Amended Complaint simply does not apply to Shared-Loss benefits. *Id.* As such, Count II fails to state a claim upon which relief can be granted because Plaintiff's right under paragraph 8 of the Participation Agreements to its prorata share of payments received on the loans from "any source whatsoever," applies only to payments that affect both the participated and non-participated portions of the loans. Recoveries from the FDIC only affect the non-participated portion of the loans acquired by First-Citizens, not the participated portions owned by Plaintiff.

Plaintiff's insistence that the Shared-Loss benefits are a "payment" is misguided for two reasons. First, such benefits are simply adjustments to the value attributable to the loans acquired by First-Citizens and the amounts that First-Citizens will ultimately owe the FDIC. Second, Shared-Loss benefits are not payments on the loans because they do not change the debtors' obligations to pay the balance of the loans. A debtor or obligor does not benefit from any provision of the Shared-Loss Agreement (*see Branch Banking & Trust Co. v. Maxwell*, 512 F. App'x 1010, 1013 (11th Cir. 2013)). If the Shared-Loss recoveries were deemed "payments on the loans", then the payments would reduce the debtors' obligations on the loans. If the debtors' obligations are not reduced, then the Shared-Loss recoveries cannot be "payments on the loans" to which Plaintiff would be entitled to share.

---

[1] This Motion should not be considered a motion for summary judgment because the only attachments hereto are referenced in and central to the Second Amended Complaint's allegations. *Utah Gospel Mission v. Salt Lake City Corp.*, 425 F.3d 1249, 1253-54 (10th Cir. 2005) (documents central to a plaintiff's claim which are referred to in the complaint may be considered in resolving a motion to dismiss).

{JK00545265.2}                                    2

Count I of the Second Amended Complaint seeks damages for First-Citizens' alleged breach of a subordinated loan commitment to Maxwell Place to fund certain additional development costs ("Subordinated Loan Commitment").  First-Citizens could not have breached the Subordinated Loan Commitment for the simple and irrefutable reason that First-Citizens did not acquire the Subordinated Loan Commitment from CCB, despite Plaintiff's Response assertion to the contrary.  Exh. 1 at ¶¶ 12-15.  Prior to the FDIC's receivership of CCB, Maxwell Place, the Subordinated Loan Commitment borrower, dramatically and materially changed the construction project plans that the Subordinated Loan Commitment was intended to fund.  *Id.* at ¶ 14.  These changes affected the financing of the project so significantly that it was likely that CCB would not be repaid the amount of the additional funding under the Subordinated Commitment.  Plaintiff's Response to the Motion to Dismiss at page 9 acknowledges that had the "subordinated loan been funded," the subordinated loan would have "possibly" not been paid off.  Prior to the FDIC receivership, CCB, pursuant to the terms of the Subordinated Loan Commitment, gave both the borrower and Plaintiff unequivocal notice[2] that CCB believed the borrowers' actions relieved CCB of any obligation to fund—and it would therefore not fund— the Subordinated Loan Commitment.  Exh. 1 at ¶ 14.  As such, the Subordinated Loan Commitment was not a "Commitment" assumed by First Citizens under the PAA as defined by paragraph 1.3 thereof.  The Subordinated Loan Commitment was not "legally binding" on CCB, was not "in the official records of CCB" (Response at 2), was not a funding obligation that First-Citizens "assumed" (Response at 7, italics omitted), was not acquired by First-Citizens, and First-Citizens did not have "an independent, post-receivership obligation under the Subordinated Loan Commitment" (Response at 8).  First-Citizens took no action with respect to the

---

[2] Plaintiff squarely alleges such notice.  *See* Second Amended Complaint at ¶ 17.

{JK00545265.2 }                                                3

Subordinated Loan because it was neither an asset it acquired from the FDIC nor an obligation it assumed.  Exh. 1 at ¶ 15.

First-Citizens has not violated any of its own obligations or obligations it acquired from CCB.  Plaintiff's claim against First-Citizens with respect to the Subordinated Loan Commitment is properly addressed to the FIRREA administrative process (where it will likely be rejected as well due to the lack of any obligation by CCB or the FDIC with respect to the Subordinated Loan Commitment).  Thus, Plaintiff's attempts to distinguish the authorities cited in First-Citizens' Motion—such as *Westberg v. FDIC* (Response at 9)—fail.  If Plaintiff had a claim arising from CCB's refusal to fund the Subordinated Loan, Plaintiff was obligated to present a claim in the FIRREA administrative process, and its failure to do so bars its claim against First-Citizens.  *Westberg v. F.D.I.C.*, 926 F. Supp. 2d 61, 67-68 (D.D.C. 2013) (observing that a third party purchase of an asset from the FDIC does not extinguish FIRREA's jurisdictional bar and that acquiring banks stand in the shoes of the FDIC).

Moreover, it is entirely unclear how Plaintiff has standing to complain about the Subordinated Loan Commitment—which was a commitment to the borrower, not to Plaintiff. Following CCB's determination that it would not fund the Subordinated Loan due to the construction plan changes, the borrower ceased seeking to obtain funding under the Subordinated Loan.  Exh. 1 at ¶ 14.  Count I is a breach of contract claim arising from the alleged breach of a contract—the Subordinated Loan Commitment—to which Plaintiff is not a party.  Plaintiff points to no clause in the Maxwell Participation Agreement—to which Plaintiff actually is a party—that would deem CCB in breach of that Agreement even if CCB were in breach of the Subordinated Loan Commitment (which it was not, as described above).  To the extent that Plaintiff somehow had rights with respect to the Subordinated Loan Commitment, they were—at

most—contingent on or derivative of the Subordinated Loan borrower's rights.  That borrower abandoned its Subordinated Loan Commitment rights when it did not proceed with the project it had originally planned.  Exh. 1 at ¶ 14.  Plaintiff does not have some independent third-party standing to assert that First-Citizens' alleged breach of the Maxwell Participation Agreement because of its alleged breach of the Subordinated Loan Agreement (which, as explained above, never imposed <u>any</u> obligations on First-Citizens in the first instance.)  *See Branch Banking & Trust Co. v. Maxwell,* 2013 WL 1136578 (11th Cir. Mar. 19, 2013) (*quoting Interface Kanner, LLC v. JPMorgan Chase Bank*, 704 F.3d 927, 934 (11th Cir. 2013)); *see also Branch Banking & Trust Co. v. D.M.S.I., LLC*, 2013 WL 3200087 at **8-9 (D. Nev. June 21, 2013).

Respectfully submitted January 27, 2014

s/ Stuart N. Bennett
Stuart N. Bennett, Esq.
Aaron D. Goldhamer, Esq.
JONES & KELLER, P.C.
1999 Broadway, Suite 3150
Denver, Colorado 80202
303.573.1600
sbennett@joneskeller.com
agoldhamer@joneskeller.com
**ATTORNEYS FOR FIRST-CITIZENS BANK & TRUST COMPANY**

**CERTIFICATE OF SERVICE**

       The undersigned hereby certifies that on the Monday, January 27, 2014, a true and correct copy of the foregoing was filed electronically with the Clerk of the Court using the CM/ECF system at the following address:

Geraldine A. Brimmer
Holland & Hart, LLP
1800 Broadway, Suite 300
Boulder, Colorado 80302

Joseph E. Martineau
Lewis, Rice & Fingersh, L.C.
600 Washington, Suite 2600
St. Louis, Missouri 63101

                                                s/ Tammy Harris