IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 11-CV-1220-MSK-BNB

TRIAD BANK, a Missouri chartered bank,

        Plaintiff,

v.

FIRST-CITIZENS BANK & TRUST COMPANY, A North Carolina chartered commercial bank,

        Defendant.

### AFFIDAVIT OF PETER D. LINDQUIST IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT

STATE OF COLORADO    )
                                   ) SS:
CITY AND COUNTY OF DENVER    )

The undersigned, being first duly sworn, deposes and states as follows:

    1.    I am a Senior Vice President in the Credit Resolution Group of First-Citizens Bank. I have personal knowledge of the facts set forth herein and am competent to testify thereto if called as a witness in this matter.

    2.    Plaintiff's Second Amended Complaint (Docket # 57) seeks (i) declaratory relief that Plaintiff is entitled to an accounting and pro-rata share of payments allegedly received by First-Citizens from the Federal Deposit Insurance Corporation ("FDIC") pursuant to a Shared Loss Agreement between First-Citizens and the FDIC in its capacity as receiver of Colorado Capital Bank, a "failed bank" taken over by the FDIC on July 8, 2011 ("CCB") and (ii) damages due to First-Citizens' alleged breach of a loan commitment issued by CCB to Maxwell Place

{JK00544969.3 }                                            **Exhibit 1**

LLC.

3. Immediately prior to the FDIC's takeover of CCB, I was a loan officer of CCB with responsibility for CCB's loans and commitments to Maxwell Place LLC.

4. As Plaintiff alleges on July 8, 2011, CCB "was closed by the Colorado Division of Banking, which appointed the FDIC as receiver." Second Amended Complaint at ¶ 4. In its capacity as receiver, the FDIC entered into a Purchase and Assumption Agreement ("PAA") and a Shared Loss Agreement with First-Citizens. *Id.* at ¶¶ 4 and 32

5. In the course of my work for First-Citizens Credit Resolution Group, I have become familiar with and am responsible for handling some of the loans acquired from CCB pursuant to the terms of the PAA and the Shared Loss Agreement referenced in the Second Amended Complaint. As a result of my work, I have knowledge of the facts reflected in the following statements.

6. Under the PAA, First-Citizens acquired the assets of CCB from the FDIC at the values specified in Schedule 3.2 of the PAA. Under Schedule 3.2(d), First-Citizens acquired the loans owned by CCB at the book value thereof.

7. The loan portfolio acquired by First-Citizens from the FDIC is set forth on a schedule to the PAA known as a "4.15 Report". This is a short hand reference to Section 4.15 of the PAA which describes the CCB loans that were acquired from the FDIC and are subject to the Shared-Loss Agreement for single family loans, Exhibit 4.15(A), and commercial loans, Exhibit 4.15(B).

8. The 4.15 Report is obviously a highly confidential document because it lists the borrowers and outstanding balances of all CCB's loans acquired by First-Citizens from the

FDIC. A redacted portion of the 4.15 Report is attached to this affidavit as Exhibit A.

9. On the 4.15 Report, the Maxwell Place LLC loan is reflected on page 17. The entry shows the gross balance at acquisition of the original loan to Maxwell Place LLC of $1,831,267.22, the amount participated to Plaintiff, Triad Bank, of $1,133,235.49 and the adjusted proforma net balance of the loan owned by CCB of $698,031.73 as of the acquisition date.

10. The proforma net balance of $698,031.73 is the "book value" of the loan acquired by First-Citizens, along with other loans listed on the 4.15 Report, from the FDIC. It is this amount that is also subject to Shared-Loss recoveries under the Shared-Loss Agreement between First-Citizens and the FDIC.

11. No portion of the participated amount of the Maxwell Place LLC loan was acquired by First-Citizens and therefore no part of the participated amount is subject to Shared-Loss recovery from the FDIC under the Shared-Loss Agreement.

12. The alleged subordinated loan commitment by CCB to Maxwell Place LLC in the amount of $1,245,000 ("Subordinated Loan") is not set forth on the 4.15 Report. In the course of my employment at CCB, I was aware that because of actions of the borrower to whom the commitment had been made, CCB canceled the commitment prior to the FDIC's takeover of CCB and the commitment was not carried on the books and records of CCB, was no longer binding on CCB and was not assumed by First-Citizens pursuant to the 4.15 Report. The Subordinated Loan was therefore not a "Commitment" as defined in Section 1.3 of the PAA.

13. Had the Subordinated Loan been carried on the books and records of CCB but not yet funded, the loan would have been reflected in a separate line on the 4.15 Report and the

amount of $1,245,000 would have been reflected in the column of the 4.15 Report titled "Unfunded From BIS FMLNS". The Subordinated Loan is not reflected on the 4.15 Report and is thus not reported in the Unfunded column of the 4.15 Report because it was not in existence at the time of the closure of CCB.

14. On February 23, 2011, CCB's lawyer, Hunter Ellington informed Maxwell Place, LLC and Triad that it would not fund the Subordinated Loan. Plaintiff acknowledges this in its Second Amended Complaint at ¶ 17. A true and correct copy of Mr. Ellington's letter is attached as Exhibit "B." After an exchange of correspondence between CCB's lawyers and the lawyers for Maxwell Place, LLC, including a second letter from Ernie Panasci at Jones & Keller to Maxwell Place, LLC and copied to Triad reiterating the rejection of the borrower's proposed revised development plan for the property and notifying Maxwell Place that they were in default under the terms of the Loan Documents, Maxwell Place was requested to cease construction and to take no further action with regard to the property and any proposed construction thereon. A true and correct copy of Mr. Panasci's letter is attached as Exhibit "C." The project was abandoned by Maxwell Place and in accordance with the Loan Documents and an Intercreditor Agreement with the first lender. First-Citizens acquired title to the property from Maxwell Place and subsequently sold it. First-Citizens did not foreclose on the property. There is no remaining dispute between First-Citizens and Maxwell Place concerning the Subordinated Loan or the parties' rights with respect thereto.

15. First-Citizens took no action with respect to the Subordinated Loan because it was not an asset that First-Citizens acquired from the FDIC.

**Exhibit 1**

16. Page 7 of the 4.15 Report also reflects CCB's loans to Right Sky Properties LLC in which Triad Bank participated. As with Maxwell Place, First-Citizens only acquired the non-participated loan amounts from the FDIC, which on the two participated loans were $69,204.22 and $819,546.89 as of the acquisition date. No portion of the participated amount of the loans was acquired from the FDIC and the participated amounts are not subject to Shared-loss recoveries under the Shared-Loss Agreement.

Further affiant sayeth not.

_____
Peter D. Lindquist

Having been first duly sworn, the foregoing affidavit was executed before me this 27th day of January 2014 by Peter D. Lindquist.

Witness my hand and official seal:

_____
Notary Public

My commission expires: 12-28-2015

[Notary seal: SUSAN SWITSER, Notary Public, State of Colorado, Commission # 20034043265, My Commission Expires Dec 26, 2015]

**Final Schedule - Summary**

**Colorado Capital Bank**
**Loans Covered Under Loss Share Agreement**
**At Bank Closing 07-08-2011**

**Original Schedules 4.15 A&B**

| | Count | Adjusted Proforma Gross Balance ($) | Participations Sold ($) | Adjusted Net Balance ($) | Unfunded ($) |
|---|---|---|---|---|---|
| Single Family | | | | | |
| Non Single-Family | | | | | |
| Total | | | | | |

**Adjustments**

| | Count | Adjusted Proforma Gross Balance ($) | Participations Sold ($) | Adjusted Net Balance ($) | Unfunded ($) |
|---|---|---|---|---|---|
| **Original Balance - SFR** | | | | | |
| Add to SFR from NSF | | | | | |
| Subtract from SFR to NSF | | | | | |
| Remove from SFR | | | | | |
| Add to SFR | | | | | |
| Principal Balance Changes SFR | | | | | |
| Unfunded Balance Changes SFR | | | | | |
| **Adjusted SFR** | | | | | |
| **Original Balance - NSF** | | | | | |
| Add to NSF from SFR | | | | | |
| Subtract from NSF to SFR | | | | | |
| Remove from NSF | | | | | |
| Add to NSF | | | | | |
| Principal Balance Changes NSF | | | | | |
| Unfunded Balance Changes NSF | | | | | |
| **Adjusted NSF** | | | | | |

**Adjusted Schedules 4.15 A&B**

| | Count | Adjusted Proforma Gross Balance ($) | Participations Sold ($) | Adjusted Net Balance ($) | Unfunded ($) |
|---|---|---|---|---|---|
| Single Family | | | | | |
| Non-Single Family | | | | | |
| **Total** | | | | | |

**Exhibt 4.15 A & B**

Schedule 4.15B                                                                                                       Non-Single Family Asset Detail for 10331 - Colorado Capital Bank

| ASSET ID | BANK HISTORICAL NUMBER | ASSET NAME | ASSET SUB TYPE DESC | ADJUSTED PROFORMA GROSS BALANCE | PROFORMA PARTICIPATIONS SOLD BALANCE | ADJUSTED PROFORMA NET BALANCE | UNFUNDED FROM BIS FMLNS | PORTFOLIO |
|---|---|---|---|---|---|---|---|---|
| 10373001777 | 011601027 | RIGHT SKY PROPERTIES LLC | ADC - Commercial | $ 156,002.30 | $ 86,798.08 | $ 69,204.22 | $ 0.00 | BANK |
| 10373001787 | 011601059 | RIGHT SKY PROPERTIES LLC | ADC - Commercial | $ 1,800,101.74 | $ 980,554.85 | $ 819,546.89 | $ 0.00 | BANK |

Exhibt 4.15 A & B

**Schedule 4.15B**  Non-Single Family Asset Detail for 10331 - Colorado Capital Bank

| ASSET ID | BANK HISTORICAL NUMBER | ASSET NAME | ASSET SUB TYPE DESC | ADJUSTED PROFORMA GROSS BALANCE | PROFORMA PARTICIPATIONS SOLD BALANCE | ADJUSTED PROFORMA NET BALANCE | UNFUNDED FROM BIS FMLNS | PORTFOLIO |
|---|---|---|---|---|---|---|---|---|
| 10373002232 | 098000826 | MAXWELL PLACE LLC | Raw Land | $ 1,831,267.22 | $ 1,133,235.49 | $ 698,031.73 | $ 23,732.78 | BANK |

**Exhibt 4.15 A & B**

# LINDQUIST & VENNUM PLLP

Minneapolis • Denver

**Hunter Ellington**
(303) 454-0543
rhellington@lindquist.com
www.lindquist.com

600 17th Street
Suite 1800 South
Denver, CO 80202-5441
Phone: (303) 573-5900
Fax: (303) 573-1956

February 23, 2011

*Via U.S. Mail*

Maxwell Place, LLC
Attn: J. Kevin Ray
Campbell, Killin, Brittan & Ray, LLC
270 St. Paul Street, Suite 300
Denver, CO 80206

    Re:    **Maxwell Place, LLC – Promissory Note**
             Our File: 516950.0021

Dear Kevin:

Please let this letter serve as notice to Maxwell Place, LLC that Colorado Capital Bank will not be in a position to fund that certain Promissory Note dated October 22, 2010, in the principal amount of One Million Two Hundred Forty Five Thousand Dollars ($1,245,000). Colorado Capital Bank will not process any draw requests, nor will they review or approve any further construction draws.

Thank you in advance for your attention to this matter.

Very truly yours,

LINDQUIST & VENNUM PLLP

Hunter Ellington

HE/jmt

    cc:    Peter Lindquist, Colorado Capital Bank
             Charles J. Wiegers, Triad Bank

DOCS-#3411787-v1

**Exhibit B**



ERNEST J. PANASCI
ATTORNEY AT LAW

EPANASCI@JONESKELLER.COM

March 24, 2011

**VIA U.S. MAIL**
J. Kevin Ray, Esq
Campbell Killin Brittan & Ray, LLC
270 St. Paul Street, Suite 200
Denver, CO 80206

**Re:   MAXWELL PLACE LLC**

Dear Kevin:

Initially, please note that going forward Jones & Keller, P.C. will be representing Colorado Capital Bank (the "Bank") with respect to this matter. You are hereby notified that the Bank does not approve of the revised construction budget and fundamental change to the nature of the Maxwell Place Project. It is now abundantly clear that should the Bank further participate in the construction project, the likelihood that it's loan will be paid off is quite remote. Accordingly, please let this letter serve as a rejection pursuant to Section 2G, Major Decisions, of the Intercreditor Agreement. Specifically, the Bank does not approve of the Borrower's proposed revised development budget for the Project, and the change in the nature of the residential product.

In keeping with Section 9c, the Bank considers the major revisions to the construction budget and the changes to the Project to constitute an Event of Default under its Loan Documents and under the Intercreditor Agreement. Accordingly, it is requested that your client provide a pay-off figure of outstanding principal and interest under the Senior Loan. If the pay-off amount is acceptable to the Bank, then it will exercise its rights under Section 9c of the Intercreditor Agreement for the purchase of the Senior Loan and acquisition of the real property securing the Senior Loan.

We ask that Maxwell Place LLC cease all work on the Project, that the revised plat map not be recorded, and that no further construction expenses be incurred while we discuss and determine the Senior Loan pay-off number.

Thank you in advance for your attention to this matter.

Very truly yours,

JONES & KELLER, P.C.

Ernest J. Panasci

JONES & KELLER, P.C.  ·  5613 DTC PARKWAY, SUITE 970  ·  GREENWOOD VILLAGE, CO 80111
P: 303 376 8400  ·  F: 303 376 8439   WWW.JONESKELLER.COM

**Exhibit C**

cc:    Peter Lindquist
Colorado Capital Bank

Charles J. Wiegers
Senior Vice President
Triad Bank
10375 Clayton Road
St. Louis, MO 63131

JONES&KELLER

Exhibit C