IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil No. 11-cv-01220-RM-BNB

TRIAD BANK, A Missouri chartered bank

    Plaintiff,

vs.

FIRST-CITIZENS BANK & TRUST COMPANY,
a North Carolina chartered commercial bank,

    Defendant.

## OBJECTIONS OF TRIAD BANK TO RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Triad Bank ("Triad"), pursuant to 28 U.S.C. §636(b)(1)(c) and Fed.R.Civ.P. 72(b) submits the following objections to the Recommendation of the United States Magistrate Judge, stating as follows:

    1.    <u>Triad's Claims and the Magistrate's Error</u>:  In its Second Amended Complaint, Triad asserted two contractual claims against First Citizen's Bank.  First, it claimed FCB breached its assumed obligation to fund a loan ("Count I").  Second, it claimed that FCB breached the terms of two Participation Agreements by refusing to pay Triad its pro rata shares of funds recovered under a Loss Share Agreement as required by the terms of the Participation Agreements that entitled Triad to a share of funds recovered "from any source whatever" ("Count II").  While the breach of loan commitment asserted in Count I arose out of a contract that preceded the FDIC's receivership of a failed bank, Colorado Capital Bank ("CCB"), the breach accrued *after* FCB's acquisition of the failed bank CCB and was not something that could have been claimed or remedied through FIRREA's administrative process.  As for the claim

2022562.2
1

asserted in Count II, it also relates to events occurring *after* the receivership and events which likewise could not have possibly been asserted through FIRREA's administrative claims process. Fundamentally, then, the Magistrate's recommendation that Triad's Second Amended Complaint be dismissed for failure to comply with FIRREA's administrative claims process is flawed in that it effectively but erroneously assumes that any claim against a bank acquiring assets and liabilities of a failed bank placed in receivership by the FDIC related to obligations assumed under FIRREA must assert claims though FIRREA's administrative process, *even though those claims arise out of events occurring subsequent to the acquisition and could not practicably be asserted through the administrative claims process.* As recently noted in *SunSouth Bank v. First NBC Bank*, 1:13-CV-379-WKW, 2014 WL 3767548 at *7 (M.D. Ala. July 31, 2014), under the Magistrate's flawed reasoning, "every contract dispute between a plaintiff and a defendant which is a successor-in-interest to a failed institution's obligations would be subject to the FDIC claims process irrespective of whether the plaintiff had a claim against the FDIC or the failed institution. This is a misapprehension of the jurisdictional bar of FIRREA, and would create a potential flood of claims to be resolved by the FDIC claims process."

    2.    Under FIRREA, unless a claimant first pursues and exhausts administrative relief, "no court shall have jurisdiction over (i) any claim or action for payment from, or any actions seeking a determination of rights with respect to, the assets of any depository institution for which the [FDIC] has been appointed receiver …; or (ii) any claim relating to any act or omission of [an] institution [in receivership] or the [FDIC] as receiver." 12 U.S.C. §1821(d)(13)(D). The key points here are that for the jurisdictional bar to apply the claims asserted must be for alleged wrongdoing of the failed bank or the FDIC or must seek to deplete the assets of the failed bank. Triad's claims relate to wrongdoing by FCB – its breach of the assumed obligation to fund a loan, which breach caused loss to Triad – and its breach of the

2

assumed obligation to reimburse its participation from funds recovered from "any source whatever." Triad is not suing for any wrongdoing by the failed bank or FDIC; nor will any recovery in its lawsuit implicate the assets of the failed bank.

3. The Magistrate gives an overly-broad application to FIRREA, one that would essentially give immunity to an acquiring bank for its disregard of obligations and liabilities assumed through the auspices of an FDIC receivership under FIRREA. This interpretation is one which Congress certainly never intended.

4. In fact, courts have universally recognized that:

> [12 U.S.C. §1821(d)(13)(D)] is not an isolated edict, but is part of FIRREA's statutory scheme, which was intended to force plaintiffs with claims against failed depository institutions to exhaust administrative remedies before coming to federal court. [citation omitted]. Courts interpreting the broad language of §1821(d)(13)(D)(ii) have universally concluded that this provision bars only claims that could be brought under the administrative procedures of §1821(d), *not any claim at all involving the FDIC*.

*Bank of New York v. First Millennium, Inc.*, 607 F.3d 905, 921 (2d Cir. 2010) (emphasis added); *see also Auction Co. of Am. v. FDIC*, 141 F.3d 1198, 1201 (D.C.Cir. 1998) (holding that the §1821(d)(13)(D) jurisdictional bar applies only to claims that can be brought through the administrative processes of §1821(d)).

5. The courts have also held that FIRREA's jurisdictional bar is not applicable to damage claims against assuming banks *for their own acts or omissions even if related to an asset transferred to them* by the FDIC. *See, e,g., American Nat' Ins. Co. v. F.D.I.C.*, 642 F.3d 1137, 1142 (D.C.Cir. 2011) (citing cases); *SunSouth Bank v. First NBC Bank*, 2014 WL 3767548 at *7 (Claim by participating bank that acquiring bank breached participation agreement by failing to fulfill terms of the assumed participation agreement not barred by FIRREA).

3

## Count I (Assumed Loan Commitment Claim)

5. Triad's breach of contract claim in Count I against FCB is not relegated to the pre-receivership actions of the failed bank or any actions of the FDIC. Instead, it involves the post-receivership actions and omissions of FCB. In his recommendations, the Magistrate disregards the independent obligations of FCB with respect to the assumed loan commitment and the independent breach of FCB in refusing to fund it. "Because [Triad's] suit is against a third party bank for its own wrongdoing, not against the depository institution for which the FDIC [was] receiver …, [its] suit is not a claim within the meaning of [FIRREA]." *SunSouth Bank v. First NBC Bank*, 2014 WL 3767548 at *7, quoting *American Nat' Ins. Co. v. F.D.I.C.*, 642 F.3d at 1142.

6. In obtaining the assets and liabilities of the failed bank from the FDIC, FCB entered into a Purchase and Assumption Agreement. In so doing, FCB assumed all the obligations and commitments of CCB to fund the subordinated loan referenced in the Loan Participation Agreements.[1] Specifically:

> **2.1. Liabilities Assumed by Assuming Institution.** The Assuming Institution [FCB] expressly assumes at Book Value (subject to adjustment pursuant to Article VIII) and agrees to pay, perform and discharge, all of the following liabilities of the Failed Bank [CCB] as of the Bank Closing

---

[1] FCB also assumed the obligation to repay Triad its participatory interest, and there has never been any dispute in this case that FCB is bound by that obligation. FCB has always acknowledged its obligation to pay Triad a pro rata share of all recoveries obtained under the participated loans. The dispute centers on FCB's post acquisition refusal to fund a loan underlying the participated loan and whether Triad, by virtue of its participatory interest, is entitled to share in recoveries under a Shared Loss Agreement with the FDIC based on language in the participation agreements that Triad is entitled to a pro rata share of funds recovered from "any source whatever." Implicit in the Magistrate's recommendation, however, is a finding that Triad would have no claim if FCB chose to entirely disregard its obligations under the participation agreements, because Triad did not assert an administrative claim to determine "whether its participating interest would be paid." *See* Recommendation at 9. Triad could not, of course, reasonably assert a claim for a breach that had not yet occurred, showing the fundamental flaw in the Magistrate's reasoning. There can be little question that if FCB suddenly decided to switch course and refuse to pay Triad its pro rata share of the funds collected on the participated loans that Triad would have a viable claim even though it never sought administrative relief. *SunSouth Bank v. First NBC Bank*, 2014 WL 3767548 at *7 (Claim by participating bank that acquiring bank breached participation agreement by failing to fulfill terms of the assumed participation agreement not barred by FIRREA).

> Date, except as otherwise provided in this Agreement (such liabilities referred to as "Liabilities Assumed"):  . . .
>
> (j)  liabilities, if any, for Commitments.

(2nd Am. Cmplt. ¶19).  The term "commitment" is defined as follows:

> "**Commitment**" means the unfunded portion of a line of credit or other commitment reflected on the books and records of [CCB] to make an extension of credit (or additional advances with respect to a Loan) that was legally binding on [CCB] as of the Bank Closing Date, other than extensions of credit pursuant to the credit card business and overdraft protection plans of [CCB], if any.

(*Id.* ¶20).

7.  FCB had an independent, post-receivership obligation under the loan commitment, and FCB made the independent, post-receivership decision not to provide such funding.  Claims against an assuming bank based on the assuming bank's own independent conduct do not fall under FIRREA's administrative exhaustion requirement.  *See American Nat'l. Ins. Co. v. F.D.I.C.*, 642 F.3d at 1142.  "The mere fact that [FCB] now owns the assets that [the failed bank] once owned does not render this suit one against or seeking a determination of rights with respect to those assets."  *Id.*

8.  Triad's claim arising out of FCB's continued failure to fund a commitment which it assumed is not barred.  The failure to fund the subordinated loan resulted in a failure to complete the underlying real estate development.  As a result, the borrower defaulted, and FCB foreclosed on and sold the collateral for far less than the outstanding loan balance, causing a loss to Triad on its Loan Participation Agreement.  (2nd Am. Cmplt. ¶26).  Had the subordinated loan been funded according to the commitment, sufficient funds would have been available to pay off the principal loan, though possibly not the subordinated loan.  (*Id.*).

## Count II ("Any Source Whatever Claim")

9. Triad's claim seeking its pro rata share of Loss Share recoveries received by FCB is not seeking to pursue "any claim or action for payments from" the assets of the failed institution (CCB). As such, the jurisdictional bar of 12 U.S.C. §1821(d)(13)(D)(i) is not applicable.

10. Triad is not complaining about "any act or omission of [the failed bank] or the [FDIC] as receiver." Triad is not claiming any misfeasance or malfeasance on the part of the FDIC in entering into the Shared-Loss Agreement. Indeed, Triad is not complaining about anything that CCB or the FDIC did or did not do. This makes 12 U.S.C. §1821(d)(13)(D) entirely inapplicable. *See, e.g., American Nat'l. Ins. Co. v. F.D.I.C.*, 642 F.3d at 1143 ("Where, as here, neither the failed depository institution nor the FDIC-as-receiver bears any legal responsibility for claimant's injuries, the claims process offers only a pointless bureaucratic exercise," and is inapplicable).

11. Triad merely seeks to recover its pro rata share of the proceeds received by FCB under the Shared-Loss Agreement in accordance with the unambiguous language of the Loan Participation Agreements. Under paragraph 8 of the Loan Participation Agreements, which this Court has determined is the applicable provision for determining Triad's rights of repayment (*see* March 25, 2013 Order and Opinion (Doc. 43) at 4), Triad is entitled to its pro rata share of *any* payment received by FCB after default "*from any source whatever.*" (emphasis added). Given its plain meaning and obvious intendment, the statement "from any source whatever" includes payments received by FCB from the FDIC under the Shared-Loss Agreement related to the loans underlying Loan Participation Agreements.

12. In fact, it makes no sense to contend that Triad should or could have pursued claims against the FDIC under FIRREA. Until the loans underlying the Loan Participation

6

Agreements went into default – which as to one of them did not occur until well after the FDIC takeover and after expiration of the administrative claims period – the certainty and extent of any loss on the loans, and any attendant shared-loss recovery,[2] was unknown. Nothing in the statute suggests that claimants must pursue un-ripened claims at peril of waiving them in the event they ripen down the road.

13. Although Triad's declaratory relief claim in Count II seeks to recover funds paid to FCB from FDIC under its Shared-Loss Agreement with the FDIC, the claim very clearly does not involve the actions of a failed bank or the FDIC. The tangential relationship between the FDIC and FCB and the fact that the FDIC is a "source" of funds paid to FCB in relation to the loans underlying the Participation Agreements does not invoke the administrative exhaustion requirement of FIRREA. FCB's motion to dismiss Count II on jurisdictional grounds should be denied.

14. In sum, both Count I and Count II assert claims that fall outside of FIRREA's administrative exhaustion requirement. Jurisdiction lies in this Court, and Triad should be allowed to proceed on such claims against FCB.[3]

## **CONCLUSION**

For all the above reasons, plaintiff Triad Bank respectfully requests that this Court overrule and reject the recommendations of the Magistrate.[4]

---

[2] In fact, FCB argued that its Shared-Loss recovery may not be determined until July 2019. (*See* Motion to Dismiss (Doc. 65) at 10).

[3] The Magistrate made no recommendation with respect to FCB's Fed.R.Civ.P. 12(b)(6) motion. To the extent this Court may choose to consider that motion, Triad incorporates by reference its Response (Doc. 68) and Sur-Reply (Doc. 72).

[4] Fed.R.Civ.P. 72(b)(2) requires the objecting party to promptly arrange for transcribing the record. Because the magistrate's recommendation and the underlying Fed.R.Civ.P. 12(b)(2) motion are based on a facial attack on the second Amended Complaint, the only matters of record pertinent to these objections are the Second Amended Complaint (Doc. 57); FCB's Motion to Dismiss (Doc. 65); Triad's Response to Motion to Dismiss (Doc. 68); FCB's Reply in Support of Motion to Dismiss (Doc. 69); and Triad's Sur-Reply in Support of Motion to Dismiss (Doc. 72).

Respectfully submitted,

By: s/ Joseph E. Martineau
    Joseph E. Martineau
    LEWIS, RICE & FINGERSH, L.C.
    600 Washington, Suite 2500
    St. Louis, Missouri  63101
    Tel: 314/444-7729;  Fax: 314/612-7729
    E-mail: jmartineau@lewisrice.com

    Geraldine A. Brimmer
    HOLLAND & HART, LLP
    One Boulder Plaza
    1800 Broadway, Suite 300
    Boulder, Colorado  80302
    Tel: 303/473-2733; Fax: 303/473-2720
    E-mail: gbrimmer@hollandhart.com

    ATTORNEYS FOR PLAINTIFF
    TRIAD BANK

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a copy of the above and foregoing document was served via the Court's electronic filing system, this 29th day of August, 2014, on:

Stuart N. Bennett
Aaron D. Goldhamer
**JONES & KELLER, P.C.**
1999 Broadway, Suite 3150
Denver, CO 80202
Telephone: 303/376-8410
E-mail:   sbennett@joneskeller.com
               agoldhamer@joneskeller.com

            By: /s/ Joseph E. Martineau