**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 11-cv-01220-RM-BNB

TRIAD BANK, a Missouri chartered bank,

     Plaintiff,

v.

FIRST-CITIZENS BANK & TRUST COMPANY, a North Carolina chartered commercial bank,

     Defendants.

---

## ORDER

---

     This diversity matter involves a contract dispute between two banks regarding the interpretation of several loan participation agreements.  Defendant First-Citizens Bank & Trust Company ("First-Citizens") has moved to dismiss Plaintiff Triad Bank's ("Triad") Second Amended Complaint (ECF No. 57, the "Complaint") pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  This matter is before the Court on U.S. Magistrate Judge Boyd N. Boland's recommendation (ECF No. 73, the "Recommendation") that this Court grant First-Citizens' motion and dismiss the case for lack of federal subject matter jurisdiction based on the jurisdictional bar contained in the Financial Institutions Reform, Recovery, and Enforcement Act ("FIRREA"), 12 U.S.C. § 1821(d)(13)(D).  Each party has filed timely objections (ECF Nos. 74, 75, 76, 77) to the Recommendation (together the "Objections").  For the reasons stated below, the Court (1) ADOPTS the Recommendation; (2) GRANTS First-Citizens' motion to dismiss; and (3) OVERRULES the parties' Objections.

## I.      LEGAL STANDARD

### A.      Review of the Magistrate Judge's Recommendation

When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule

of Civil Procedure 72(b)(3) requires that the district court judge "determine *de novo* any part of

the magistrate judge's [recommendation] that has been properly objected to."  In conducting his

review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive

further evidence; or return the matter to the magistrate judge with instructions."   Fed. R. Civ. P.

72(b)(3).  An objection to a recommendation is proper if it is filed timely in accordance with the

Federal Rules of Civil Procedure and specific enough to enable the "district judge to focus

attention on those issues – factual and legal – that are at the heart of the parties' dispute."  *United

States v. 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996) (quoting *Thomas v. Arn*, 474 U.S.

140, 147 (1985)).  In the absence of a timely and specific objection, "the district court may

review a magistrate's report under any standard it deems appropriate."  *Summers v. Utah*, 927

F.2d 1165, 1167 (10th Cir. 1991) (citations omitted); *see also* Fed. R. Civ. P. 72 Advisory

Committee's Note ("When no timely objection is filed, the court need only satisfy itself that there

is no clear error on the face of the record in order to accept the recommendation.").

### B.      Rule 12(b)(1) Motion

On a motion to dismiss pursuant to Rule 12(b)(1), the Court tests whether it has subject

matter jurisdiction to properly hear the case before it.  The party invoking the court's jurisdiction

bears the burden to establish that federal jurisdiction exists, and "since the courts of the United

States are courts of limited jurisdiction, there is a presumption against its existence."  *Basso v.*

*Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).  As articulated by the Tenth

Circuit, Rule 12(b)(1) motions generally take two forms:

> First, a facial attack on the complaint's allegations as to subject matter jurisdiction
> questions the sufficiency of the complaint. *Ohio Nat'l Life Ins. Co. v. U.S.*, 922
> F.2d 320, 325 (6th Cir. 1990) . . . .  Second, a party may go beyond allegations
> contained in the complaint and challenge the facts upon which subject matter
> jurisdiction depends.  *Id.*  When reviewing a factual attack on subject matter
> jurisdiction, a district court may not presume the truthfulness of the complaint's
> factual allegations.  *Id.*  A court has wide discretion to allow affidavits, other
> documents, and a limited evidentiary hearing to resolve disputed jurisdictional
> facts under Rule 12(b)(1).  *Id.*

*Holt v. U.S.*, 46 F.3d 1000, 1002-03 (10th Cir. 1995).  "When reviewing a factual attack on a

complaint supported by affidavits and other documents . . . the Court makes its own factual

findings and need not convert the motion to one brought pursuant to Fed. R. Civ. P. 56."

*Amazing Technologies, LLC v. Blacklodge Studios, LLC*, No. 10-cv-03077-WJM-KLM*, 2012

WL 683512, at *1 (D. Colo. Mar. 2, 2012); *Michelson v. Enrich Int'l Inc.*, 6 F.App'x 712, 716

(10th Cir. 2001) ("Where the resolution of the jurisdictional question is not intertwined with the

merits of plaintiff's case, a district court may consider evidence outside the pleadings and resolve

factual disputes without converting a Rule 12(b)(1) motion into a Rule 56 motion."); *Holt*, 46

F.3d at 1003.

I agree with the Magistrate Judge's characterization of First-Citizens' motion to dismiss

as a factual challenge. (ECF No. 73 at 7).  Thus, it is proper for this Court to consider additional

evidence offered by First-Citizens in support of their Rule 12(b)(1) motion, and also any

additional evidence offered by Triad in opposition thereto.  *See Kosicki v. Mationstar Mortgage,

LLC*, 947 F.Supp.2d 546, 553 (W.D. Penn. 2013) (finding defendants asserted a "factual attack

under Rule 12(b)(1) by alleging that FIRREA bars this Court from adjudicating the claims asserted by Plaintiffs"); *Holt*, 46 F.3d at 1002-03 (same).

## II.     FACTUAL AND PROCEDURAL HISTORY

Triad filed its Second Amended Complaint (ECF No. 57, the "Complaint") on November 4, 2013 seeking contract damages and a declaratory judgment against First-Citizens relating to three loan participation agreements (the "Loan Participation Agreements"). Triad was a participant in real estate loans in which Colorado Capital Bank ("CCB") was the lead or agent bank. (ECF No. 57 at ¶¶1, 4, 10, 11, 15, 28, 29). CCB later failed, and the Federal Deposit Insurance Corporation (the "FDIC") took over as receiver of CCB on July 8, 2011. (*Id.* at ¶4). Under a "Purchase and Assumption Agreement" entered into between First-Citizens and the FDIC "immediately" after the FDIC was appointed receiver, First-Citizens acquired most assets and assumed CCB's obligations, including the Loan Participation Agreements at issue in this proceeding and the real estate loans underlying those participation agreements. (*Id.*).

In Count I of the Complaint, Triad seeks damages arising from First-Citizens' alleged breach of what Triad has labeled an "assumed agreement" to fund a subordinated real estate loan to a borrower. (ECF No. 68 at 2.) Triad and CCB originally entered into a Loan Participation Agreement relating to a real estate project financing valued at $2,700,000, for which Triad had agreed to purchase a $2,000,000 participation interest. (ECF No. 57 at ¶¶10-11.) The original borrower was unable to complete the project and the lending agreement was terminated at a point when only $1,855,000 of the loan had been funded. (*Id.* at ¶13.) After the original borrower defaulted or was in peril of defaulting, CCB arranged for a second borrower to take over and complete the underlying real estate project. (*Id.* at ¶¶13-14.) The second borrower required

4

additional funds to complete the project and CCB agreed to provide an additional loan of

$1,245,000 to the second borrower on a subordinated basis (the "Subordinated Loan

Commitment") for which Triad did not purchase a participation interest.  (*Id.* ¶14.)  Concurrently

with the execution of the Subordinated Loan Agreement, CCB and Triad entered into a new

Loan Participation Agreement (the "Maxwell Participation Agreement") to cover the outstanding

$1,855,000 loan that would become the obligation of the second borrower.  (*Id.* at ¶¶14-15.)  The

Maxwell Participation Agreement made reference to the Subordinated Loan Commitment.  (*Id.*)

Neither CCB nor First-Citizens ever funded the subordinated loan, the second borrower was

unable to complete the underlying real estate project, and Triad alleges that it is still owed

$1,150,000 on its participation interest under the Maxwell Participation Agreement.  (*Id.* ¶¶ 21-

26.)  Although Triad only has a participation interest (by virtue of the Maxwell Participation

Agreement) in the initial loan and not the subordinate loan, Triad alleges that First-Citizens

breached the Maxwell Participation Agreement by failing to fund the Subordinated Loan

Commitment.  (*Id.* ¶25.)

     Triad filed its initial complaint in this action against CCB prior to CCB being placed into

receivership with the FDIC (ECF No. 1) seeking a declaratory judgment of Triad's right to

payments with regards to the Maxwell Participation Agreement from CCB.  Count I of the

Complaint seeks contract damages against First-Citizens relating to the same Maxwell

Participation Agreement that was at issue in Triad's first complaint against CCB.  Triad has not

alleged that it attempted to pursue this claim through the administrative claims process outlined

in FIRREA.

In Count II, Triad seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 relating to all of the Loan Participation Agreements between First-Citizens and Triad.[1]  Triad alleges that under the Loan Participation Agreements, it is entitled to receive its pro rata share of funds received by First-Citizens through a "Shared-Loss Agreement" between First-Citizens and the FDIC.

The Shared-Loss Agreement was entered into between First-Citizens and the FDIC in conjunction with the Purchase and Assumption Agreement whereby First-Citizens acquired the CCB assets at issue, which in turn was executed on the same day that CCB was placed in receivership with the FDIC.  (*See* ECF Nos. 65-2 at 1, 57 at ¶ 4.)  Triad alleges that the Shared-Loss Agreement allows First-Citizens to recover from the FDIC 80% of any losses incurred on the assumed CCB loan portfolio, including losses incurred on the loans underlying the subject Loan Participation Agreements.  (*Id.* ¶32.)  Paragraph 8 of the Loan Participation Agreements each provide that Triad is entitled to its pro rata share of any payment related to the loans "from any source whatever."  (*Id.* ¶33.)  Triad claims that payments made to First-Citizens from the FDIC pursuant to the Shared-Loss Agreement would be considered a payment received "from any source whatever," and that Triad is therefore entitled to a pro rata share of those payments under the applicable Loan Participation Agreements.  (*Id.* ¶34.)  Triad alleges, upon "information and belief," that First-Citizens has received approximately $721,850.00 from the FDIC in shared loss recoveries related to the loans underlying the Loan Participation Agreements and that Triad

---

[1] Triad alleges that it is a party to three Loan Participation Agreements with Triad: (1) a September 29, 2008 Loan Participation Agreement under which Triad alleges to have purchased a $783,328.00 participation interest on a loan totaling $1,293,186.00; (2) an October 2, 2008 Loan Participation Agreement under which Triad alleges to have purchased a $1,216,672.00 participation interest on a loan totaling $2,008,588.00; and (3) the Maxwell Participation Agreement.

is entitled to its pro rata share of this recovery.  (*Id.* ¶¶36-37.)  Triad has not alleged that it

attempted to pursue this claim through the administrative claims process outlined in FIRREA.

On December 20, 2013, First-Citizens moved to dismiss the Complaint on two grounds.

(ECF No. 65).  First-Citizens argued that this Court lacks jurisdiction in light of FIRREA's

jurisdictional bar.  First-Citizens also asserted that Count II of the Complaint should be

dismissed pursuant to Rule 12(b)(6), Fed. R. Civ. P., for failure to state a claim upon which relief

can be granted.  Following a Response (ECF No. 68), a Reply (ECF No. 69), and a Surreply

(ECF No. 72), Magistrate Judge Boyd N. Boland issued his Recommendation (ECF No. 73) that

the Complaint be dismissed for lack of subject matter jurisdiction based on the jurisdictional bar

of FIRREA.

Both Triad and First-Citizens filed objections and responses to the Recommendation.

Triad objected to the Recommendation's application of FIRREA as "overly-broad" and argued

that the jurisdictional bar did not apply in this case.  (ECF Nos. 74, 77.)  First-Citizens objected

to the Recommendation's failure to address Triad's Rule 12(b)(6) motion with respect to Count

II and urges this Court to grant that aspect of its motion to dismiss as an additional and

alternative ground for dismissal with respect to Count II.

The Court will review the matter *de novo*.

## III.  ANALYSIS

Section 1821 (d)(13)(D) of FIRREA provides that no court shall have jurisdiction over:

(i) any claim or action for payment from, or any actions seeking a determination
of rights with respect to, the assets of any depository institution for which the
[FDIC] has been appointed receiver, including assets which the [FDIC] may
acquire from itself as such receiver; or

> (ii) any claim relating to any act or omission of such institution or the [FDIC] as receiver."

12 U.S.C. § 1821(d)(13)(D).  The only exception is found in Section 1821(d)(6)(A), which

provides that federal courts have jurisdiction over claims that have first been presented to the

FDIC under its administrative review process.  Read together, these provisions mandate that

"Federal courts may exercise jurisdiction only after a claimant has completed the administrative

claims process."  *In re George Love Farming, LC*, 420 F. App'x 788, 791 (10th Cir. 2011).

"Universally, the federal courts have broadly applied the exhaustion requirement to an extensive

variety of claims."  *FDIC v. Updike Bros., Inc.*, 814 F.Supp. 1035, 1039 (D. Wyo. 1993) (listing

cases providing various contexts where § 1821(d)(13)(D) was applied to bar federal suits).

When determining whether the jurisdictional bar of Section 1821(d) should apply, courts have

admonished that "[t]he determining factor in these cases is not the identity of the defendant or

when the complained-of acts occurred, but rather, the nature of the claim: are plaintiffs

challenging independent acts of a third party or are they seeking a determination of rights with

respect to an asset of a failed bank?"  *Westberg v. FDIC et al.*, 926 F.Supp.2d 61, 69 (D.D.C.

2013); *see also Tri-State Hotels, Inc. v. FDIC*, 79 F.3d 707, 713 n.9 (8th Cir. 1996) (When

applying the jurisdictional bar of § 1821(d), "courts should look to the underlying substance of

the challenged events.  If plaintiff brings an action against the assets of the failed institution, then

FIRREA's exhaustion requirement is applicable, regardless of how plaintiff styles its claim.").

"The primary purpose behind FIRREA's exhaustion scheme is to allow [the receiver] to

perform its statutory function of promptly determining claims so as to quickly and efficiently

resolve claims against a failed institution without resorting to litigation."  *Rosa v. Resolution

Trust Corp.*, 938 F.2d 383, 396 (3d Cir. 1991) (citing H.R.Rep. No. 101-54(I), 101st Cong., 1st

Sess., 418-19 (1989), *reprinted in* 1989 U.S.C.C.A.N. 86, 214-15).  Courts have interpreted Congress' intent that "the 'exhaustion requirement' was a key linchpin in achieving the legislative goal of resolving the 'bulk of claims against failed financial institutions expeditiously and fairly' through the administrative process 'without unduly burdening the District Courts.'" *Feise v. Resolution Trust Corp.* 815 F.Supp. 344, 348 (E.D. Cal. 1993) (quoting H.R.Rep. No. 101-54(I), 101st Cong., 1st Sess., 419 (1989), *reprinted in* 1989 U.S.C.C.A.N. 86, 215).

Although the statutory language of Section 1821(d)(13)(D) does not explicitly refer to claims against institutions that purchase the assets of a failed financial institution from the FDIC, courts have interpreted the statute to find that the acquiring institution essentially stands in the shoes of the FDIC as receiver when determining whether the exhaustion requirement applies. *See Westberg*, 926 F.Supp.2d at 67 ("The fact that a third party purchases an asset from the FDIC does not extinguish the jurisdictional bar for actions under FIRREA not first presented to the FDIC."); *Vill. of Oakwood v. State Bank & Trust Co.*, 539 F.3d 373, 386 (6th Cir. 2008) (concluding that to allow claimants to circumvent the provisions of FIRREA's jurisdictional bar by "bringing claims against the assuming bank would encourage the very litigation that FIRREA aimed to avoid") (citations and alterations omitted); *Am. First Fed., Inc. v. Lake Forest Park, Inc.*, 198 F.3d 1259, 1263 n. 3 (11th Cir. 1999) (finding that the acquiring bank, "having purchased the note from the RTC, stands in the shoes of the RTC and acquires its protected status under FIRREA"); *SunSouth Bank v. First NBC Bank*, No. 13-cv-379-WKW, 2014 WL 3767548, at *4 (M.D.Ala. July 31, 2014) ("Successors-in-interest to the FDIC which purchase the assets of failed banks stand in the shoes of the FDIC, and may assert as a defense that a party has failed to exhaust administrative remedies pursuant to FIRREA.") (citations omitted).

### A.     The Subordinated Loan Commitment

With respect to Triad's breach of contract claim relating to First-Citizens' alleged failure to fund the Subordinated Loan Commitment, First-Citizens argues that this Court lacks jurisdiction to decide this matter due to Triad's failure to exhaust all administrative remedies under FIRREA.  First-Citizens argues that Triad's ability to litigate these issues through an FDIC administrative claim is supported by the fact that its claim against First-Citizens is based on the "same core allegations" contained in Triad's original complaint that was filed against CCB (ECF No. 1) and is merely a recasting of that original claim.  First-Citizens argues that because the claim existed during the time that the assets were under FDIC receivership, it surely could have been brought before the FDIC for resolution and is thus barred by Section 1821(d)(13)(D).  First-Citizens relies primarily on *Westberg v. FDIC*, 926 F.Supp.2d 61, for the proposition that claims against a party that purchases an asset from the FDIC relating to the purchased asset are barred.

Triad responds that the statutory language of Section 1821(d)(13)(D), and case law applying its jurisdictional bar broadly to federal lawsuits, does not apply in the present context because FIRREA's jurisdictional bar is not applicable to claims against successor banks—such as the present claims against First-Citizens—for their own acts or omissions even if related to an asset transferred to them by the FDIC.  Triad argues that First-Citizens' jurisdictional argument disregards the independent obligations of First-Citizens with respect to the Loan Participation Agreements and the independent action taken by First-Citizens in refusing to fund the Subordinated Loan Commitment.  Triad argues that its claim therefore has nothing to do with CCB's breach by failing to fund the subordinated loan, but rather that Triad seeks to recover for First-Citizens' assumption of that same obligation and First-Citizens' independent breach when

it refused to fund the subordinated loan.  (ECF No. 68 at 7-8.)  Triad primarily relies on

*American National Insurance Co. v. FDIC,* 642 F.3d 1137 (D.C. Cir. 2011), and *SunSouth Bank*

*v. First NBC Bank*, 2014 WL 3767548, in support of this argument.

Neither party offers Tenth Circuit law in support of their arguments, and the Magistrate

Judge does not rely on any Tenth Circuit decisions in the Recommendation.  However, to the

extent Triad asserts that this matter involves post receivership conduct, the Tenth Circuit

addressed such conduct in one context in *Homeland Stores, Inc. v. Resolution Trust Corp*,[2] and

this Court begins its analysis by reviewing this case.  17 F.3d 1269 (10th Cir. 1994).[3]  In

*Homeland Stores*, the Resolution Trust Corporation (the "RTC"), as part of its receivership of

two failed financial institutions, took over management of Belmont Square shopping center.

Homeland Stores, a tenant in the shopping center that had executed its lease prior to the

receivership, was guaranteed in its lease that the anchor tenant of the center would be of a

specific character and would be "acceptable" to Homeland.  In selecting a new, impermissible

anchor tenant, RTC breached the lease agreement with Homeland Stores.  Despite Homeland

Stores' failure to exhaust its claims through the administrative claims process, the Tenth Circuit

held that Section 1821(d)(13)(D) did not bar Homeland Stores' claims because those claims

arose solely from RTC's management of the receivership asset subsequent to the RTC taking

over as receiver.  *Id.* at 1274-75.  The court reasoned that such claims, because they could arise

---

[2] "The powers delegated to the FDIC and the RTC are identical.  Thus, the case law does not distinguish between the two and neither will the Court." *FirsTier Bank Kimball Neb.* 935 F.Supp.2d at 1120 n.16 (quoting *Mile High Banks v. FDIC*, No. 11-cv-01417-WJM-MJW, 2011 WL 2174004, at *1 n.1 (D.Colo. June 2, 2011)).

[3] The facts in *Homeland Stores* differ in that the Tenth Circuit in that case had before it claims brought against the Resolution Trust Corporation, as opposed to claims brought against a subsequent purchaser who acquired assets from it as receiver.  However, this factual distinction does not create a significant legal difference that would render *Homeland Stores*, and other factually similar cases, inapposite to the present analysis.  Various cases have found that the statutory bar of Section 1821(d) applies to successor banks as they "step into the shoes" of the FDIC or Resolution Trust Corporation.  A case involving the Resolution Trust Corporation's ability to enforce FIRREA's exhaustion requirement would apply with equal force to a successor bank seeking to do likewise.

at any time after the RTC takes over as receiver (and possibly well after the claims bar date as

calculated under Section 1821(d)(3)(B)), were not susceptible to the standard administrative

review provided for by FIRREA. *Id.* at 1274-75. The court reasoned that to hold otherwise

would raise the potential for claims such as Homeland Store's to be barred from resolution in

federal court due to Section 1821(d) and, at the same time, time barred from the FIRREA claims

resolution process, a result that would raise constitutional concerns. *See id.* 1274-75, 1274 n.5.

In coming to this conclusion, the Tenth Circuit relied on decisions by the Ninth and First Circuits

where those courts found that the statutory bar of FIRREA did not apply where it would have led

to the plaintiff's claim being barred at inception both from the administrative forum provided

under Section 1821(d) as well as the federal court forum. *Id.* at 1274-75 (citing and quoting *RTC*

*v. Midwest Fed. Sav. Bank*, 4 F.3d 1490 (9th Cir. 1993); *Heno v. FDIC*, 996 F.2d 429 (1st Cir.

1993).

　　　Although *Homeland Stores* remains the law in this Circuit, it is considered a minority

view on the issue by other circuits and its holding has been narrowly interpreted by courts within

this jurisdiction. For example, in *FirsTier Bank Kimball Nebraska v. FDIC*, U.S. District Judge

Christine Arguello stated that

> there is ample reason to question whether *Homeland Stores* is still good law.
> Importantly, in carving out a jurisdictional exception to the exhaustion
> requirement, the Tenth Circuit explained that none of the reasons it provided
> "standing alone necessarily dictate[d] the outcome." Rather, the Tenth Circuit
> stated that the various factors, "taken together," led to its holding.

935 F.Supp.2d 1109, 1120-21 (D.Colo 2013) (internal citations omitted; alterations in original);

*DJS One, Inc. v. FDIC*, No. 14-cv-00980-REB-KMT, 2014 WL 8108483, at *4-5 (D.Colo. Dec.

31, 2014) (declining to apply the *Homeland Stores* exception). Judge Arguello noted that the

two decisions relied on by *Homeland Stores*, *Heno* and *Midwest Federal Savings Bank*, have both been overruled in their respective circuits. *Id.* She also pointed out that every circuit court to consider the issue since *Homeland Stores* has held that the exhaustion requirement does apply to post-appointment claims. *Id.* (citing *Vill. of Oakwood*, 539 F.3d at 387; *McCarthy v. FDIC*, 348 F.3d 1075, 1081 (9th Cir. 2003); *Stamm v. Paul*, 121 F.3d 635, 639-42 (11th Cir. 1997); *Home Capital Collateral, Inc. v. FDIC*, 96 F.3d 760, 763-64 (5th Cir. 1996); *Hudson United Bank v. Chase Manhattan Bank*, 43 F.3d 843, 848-49 (3d Cir. 1994)); *see also Rosa*, 938 F.2d at 396 (FIRREA's jurisdictional bar does encompass a claim arising from post receivership actions of the RTC). Judge Arguello concluded that *Homeland Stores* should be interpreted narrowly, taking it to mean only that "the exhaustion requirement in § 1821(d) does not apply when a plaintiff's claim arises *solely* from conduct that occurs after the FDIC is appointed as receiver." *Id.* at 1121 (emphasis added).

Here, Triad's breach of contract claim is distinguishable from the claims at issue in *Homeland Stores*. Triad alleges that First-Citizens' failure to fund the Subordinated Loan Agreement was a post-receivership, independent breach, although CCB first committed the very same breach by similarly declining to fund the Subordinated Loan Agreement prior to being placed into receivership with the FDIC. Indeed, Triad's initial complaint in this action was against CCB, not First-Citizens, and related to the same Maxwell Participation Agreement at issue in the Complaint. Although Triad's claims are currently asserted against First-Citizens, "the genesis of its claim is the prereceivership misconduct by [CCB]" and First-Citizens' actions "cannot be separated from" CCB's misconduct. *Tri-State Hotels*, 79 F.3d at 713; *FirsTier Bank Kimball Neb.*, 935 F.Supp.2d at 1121; *see also RTC v. Mustang Partners*, 946 F.2d 103, 106

(10th Cir. 1991) ("a thorough reading of the applicable provisions in FIRREA fails to produce any language which could be construed to support Mustang's argument that the claim procedures can be dispensed with in cases where suit was filed prior to the appointment of the receiver.").

Triad had ample opportunity to exhaust its contract claim through the administrative process before the FDIC. Applying the exhaustion requirement to Triad's claims would further the policy interests of FIRREA to "allow [the FDIC] to perform its statutory function of promptly determining claims so as to quickly and efficiently resolve claims against a failed institution without resorting to litigation." Rosa, 938 F.2d at 396. Conversely, "[p]ermitting [Triad] to recharacterize its claims as [claims relating to the independent acts of the successor bank] would . . . effectively eviscerate the claims process, because every plaintiff could (and would) simply challenge the [successor bank's] failure to reverse the failed bank's fraudulent actions rather than challenge the bank's fraudulent actions directly." *Tri-State Hotels, Inc*., 79 F.3d at 714 n.9.

Turning then to the core of Triad's objection, Triad relies upon *American National* and *SunSouth Bank* for the proposition that claims grounded in the independent actions of successor institutions are not subject to the jurisdictional bar of FIRREA. In both cases, however, the claims brought against the banks that purchased assets from the FDIC did not have their "genesis" in the prior breaches by the failed bank or the FDIC as here.

In *American National*, the claim was filed by bondholders of a failed savings and loan and asserted that defendant schemed to cause the savings and loan to fail as well as to obtain its assets from the FDIC for an undervalued price. The scheme involved allegations that defendant both engineered the fall of the failed institution and then exerted improper influence on the FDIC

14

to cause it to strip away and transfer the assets of the failed institution to defendant without a fair bidding process.  This litigation was significantly different from that before the Court. And the cause of action cannot be said to have had its genesis in some breach of contract by the failed financial institution or FDIC.

As for *SunSouth*, it is similarly distinguishable.  There, SunSouth sought recovery of monies under a participation agreement.  The funds which were the subject of the action were first collected and recovered only after receivership. Both before and during receivership, SunSouth had no claim.  In these circumstances, the district court allowed the claim to continue.  But the monetary claim there was different from that here.  In the case before this Court, the original contract obligation was one of CCB.  It existed prior to and during receivership. And First-Citizens' alleged "independent" breach has its origin in that earlier obligation.

I agree with Magistrate Judge Boland's description of Triad's claims as "essentially pre-receivership claims or [ones which] had their genesis in the pre-receivership conduct of CCB."  (ECF No. 73, at 9.)  In light of the failure to exhaust, the claims are barred.

**B.     The Shared-Loss Agreement**

First-Citizens argues that Triad's second claim for a declaratory judgment focuses on the FDIC's acts under the Shared-Loss Agreement that the FDIC entered into with First-Citizens during the FDIC receivership of CCB.  As such, the second claim is a "claim relating to any act" of the FDIC "as receiver," and should have been brought through the FIRREA administrative process at the time the Shared-Loss Agreement was executed. § 1821(d)(13)(D)(ii).  Alternatively, First-Citizens argues that Triad's request for a declaratory judgment is an "action seeking determination of rights with respect to . . . the assets of any depository institution for

which the FDIC has been appointed receiver" and would thus be barred by Section

1821(d)(13)(D)(i).  First-Citizens also argues that Triad's claim was ripe at the time that the

Shared-Loss Agreement was executed, prior to the expiration of the administrative claims period.

Triad argues that the jurisdictional bar of Section 1821(d)(13)(D)(i) does not apply

because "Count II is not seeking to pursue 'any claim or action for payments from' the assets of

the failed institution (CCB)" and that Section 1821(d)(13)(D)(ii) is likewise inapplicable because

Triad "is not complaining about anything that CCB or the FDIC did or did not do" in executing

the Shared-Loss Agreement, but rather seeks only a declaration of its rights under the Loan

Participation Agreements.  (ECF No. 68 at 4-6.)  Triad further argues that it was not required to

bring its declaratory judgment claim through an administrative proceeding because the loans

underlying the Loan Participation Agreements did not all go into default until after the FDIC

takeover, and at least one loan did not go into default until the expiration of the administrative

claims period.  As argued by Triad, the absence of default created uncertainty regarding potential

future recoveries that First-Citizens or Triad could recover on the Shared-Loss Agreement, and

"[n]othing in the statute suggests that claimants must pursue un-ripened claims at peril of

waiving them in the event they ripen down the road."  (*Id.* at 6.)

To the extent that Triad relies upon the language of the Loan Participation Agreements,

its characterization of the claim actually cuts against it.  Framing its claim as an interpretation of

the Loan Participation Agreements means that its "claim expressly seeks a determination of

rights with respect to [the underlying loans], and thus it falls squarely within the type of cases

covered by Section 1821(d)(13)(D)."  *Westberg*, 926 F.Supp.2d at 67.  As in *Westberg*, Triad's

declaratory judgment action "asks the Court to do nothing other than make pronouncements

about the rights and obligations of the parties to that loan" when it asks for a pronouncement about the rights and obligations of the parties to the Loan Participation Agreements. 926 F.Supp.2d at 67. It would thus be barred by Section 1821(d)(13)(D)(i).

Even if the Court were to find that Section 1821(d)(13)(D)(i) did not apply, this claim would still be barred by Section 1821(d)(13)(D)(ii) as it relies on the acts of the FDIC in entering into the Shared-Loss Agreement with First-Citizens and allegedly making payments to First-Citizens under that agreement. Triad's claim centers on its supposed entitlement to a share of alleged payments received by First-Citizens from the FDIC in connection with the Shared-Loss Agreement. The FDIC acted as receiver for CCB. (ECF No. 74 at ¶ 4.) In its capacity as receiver, the FDIC acted by entering into the Shared-Loss Agreement with First-Citizens, and further acted by allegedly making payments to First-Citizens under the Shared-Loss Agreement. (*Id.* at ¶¶36-37.) Triad now claims to be entitled to a portion of those alleged payments from the FDIC. (*Id.* at ¶34.) As such, the second claim is a "claim relating to any act" of the FDIC "as receiver," § 1821(d)(13)(D)(ii), and should have been brought through the FIRREA administrative process at the time the Shared-Loss Agreement was executed.

Triad's argument that its claims had not fully ripened prior to the expiration of the administrative claims period is also without merit. Triad has styled its claim as a declaratory judgment action, and so its damages would not need to be fully realized in order for its claim to become ripe for adjudication. Indeed, the whole point of the declaratory judgment is "to avoid accrual of avoidable damages to one not certain of his rights and to afford him an early adjudication without waiting until . . . after damage had accrued." *Travelers Ins. Co. v. Davis*, 490 F.2d 536, 543 (3d Cir. 1974) (quoting *E. Edelmann & Co. v. Tripe-A Specialty Co.*, 88 F.2d

852, 854 (7th Cir. 1937)).  The Shared-Loss Agreement was entered into between First-Citizens and the FDIC in conjunction with the Purchase and Assumption Agreement whereby First-Citizens acquired the CCB assets at issue.  (*See* ECF Nos. 65-2 at 1, 57 at ¶ 4.)  Triad's claim for a declaratory judgment was ready for resolution at the time that the Shared-Loss Agreement was executed, well before the administrative claims period had expired.  Triad's claim thus could have, and should have, been determined through the FIRREA administrative claims process.[4]

The *Homeland Stores* exception would not apply to Triad's declaratory judgment claim because Triad had the full opportunity to resolve its claim though an administrative proceeding before the FDIC.  Unlike the plaintiffs in *Homeland Stores* who were foreclosed from all means of redress, "[n]o such problem exists in the present case, where [Triad's] claims accrued upon the consummation of the [Shared-Loss Agreement]."  *Vill. of Oakwood*, 539 F.3d at 387-88 (holding that the *Homeland Stores* exception did not apply where the plaintiff claimed it was entitled to payments made by the FDIC to a successor bank that had purchased assets from the FDIC).  As in *Village of Oakwood*, Section 1821(d)(13)(D) must apply to bar Triad's claims because "all of [Triad's] claims against [First-Citizens] are directly related to acts or omissions of the FDIC as the receiver of [CCB]" when it entered into the Shared-Loss Agreement and allegedly made payments to First-Citizens in its capacity as receiver of CCB.  *Id.* at 387.

The Court thus declines to apply the exception to the administrative exhaustion requirement established in *Homeland Stores* to the present dispute.  Triad does not contend that it submitted any administrative claims to the FDIC.  Because Triad was required, but failed to

---

[4] Following Triad's argument to its logical conclusion, its declaratory judgment claim would not be ripe for resolution before this Court in the current proceeding since, as acknowledged by Triad, First-Citizens' Shared-Loss recovery may not be fully determined until July 2019. (ECF No. 74 at 7 n.2.)

exhaust its administrative remedies with the FDIC, this Court lacks jurisdiction to consider its claims against First-Citizens pursuant to FIRREA Section 1821(d)(13)(D).

C.      **The Court lacks jurisdiction to rule on First-Citizens' 12(b)(6) motion**

In its objection to the Recommendation, First-Citizens complains that the Recommendation does not address First-Citizens' alternative grounds for dismissal that the second claim for declaratory relief should be dismissed for failure to state a claim upon which relief can be granted.  (ECF No. 75.)  First-Citizens requests that this Court rule on these alternative grounds for dismissal "in the interest of creating a more complete record should any party appeal the Court's ultimate determination of the Motion to Dismiss." (*Id.* at 2.)  However, performing the additional analysis First-Citizens requests would be incompatible with the determination that this Court lacks subject matter jurisdiction over this case.  "Whether the complaint states a cause of action on which relief could be granted is a question of law[,] and just as issues of fact[,] it must be decided after[,] and not before[,] the court has assumed jurisdiction over the controversy." *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1167-68 (10th Cir. 2012) (quoting *Bell v. Hood*, 327 U.S. 678, 682 (1946)) (alterations in original, emphasis omitted)).  Because this Court holds that it lacks subject matter jurisdiction over this action, it lacks a jurisdictional basis on which to rule on First-Citizens' Rule 12(b)(6) motion to dismiss and declines to reach the merits of that part of First-Citizens' motion.

IV.    **CONCLUSION**

Based on the foregoing, it is ORDERED that:

1.  Plaintiff's objections to the Recommendation (ECF No. 74, ECF No. 77) are OVERRULED;

2.  Defendants' objections to the Recommendation (ECF No. 75, ECF No. 76) are

    OVERRULED;

3.  The Recommendation of the United States Magistrate Judge (ECF No. 73) is

    APPROVED and ADOPTED;

4.  Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (ECF No. 65) is

    GRANTED.

DATED this 30th day of March, 2015.

                                        BY THE COURT:

                                        _____
                                        RAYMOND P. MOORE
                                        United States District Judge